**Thomas Freedman Jr.** (OSB No. 080697) thomas@prllaw.com
**Pearl Law LLC**
552 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel:   (503) 295-6296 | Fax: (503) 295-6344

**Valentin Gurvits** (*pro hac vice*) vgurvits@bostonlawgroup.com
**Matthew Shayefar** (*pro hac vice*) matt@bostonlawgroup.com
**Boston Law Group, PC**
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:   (617) 928-1800 | Fax: (617) 928-1802

**Sean Ploen** (*pro hac vice*) sploen@ploen.com
**Ploen Law Firm, PC**
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Tel:   (651) 894-6800 | Fax: (651) 894-6801

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| **CALISTA ENTERPRISES LTD.**, a Republic of Seychelles company,<br><br>    Plaintiff/Counter-defendant,<br><br>- v. -<br><br>**TENZA TRADING LTD.**, a Cyprus company,<br><br>    Defendant/Counterclaimant. | Case No. 3:13-cv-01045-SI<br><br>**CALISTA ENTERPRISES LTD.'S MOTION TO STAY LITIGATION PENDING THE PETITION FOR CANCELLATION OF TRADEMARK REGISTRATION BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**<br><br>Oral Argument Requested |

<u>**LR 7-1 Certification**</u>

Pursuant to Local Rule 7-1, undersigned Counsel conferred in good faith with

defendant's counsel via telephone on October 7, 2013 to resolve the dispute and has been unable

to do so.

**Motion**

Plaintiff and Counter-defendant Calista Enterprises Ltd. ("Calista") files this Motion to Stay Litigation Pending the Petition for Cancellation of Trademark Registration Before the Trademark Trial and Appeal Board (the "Motion"), and respectfully requests the Court stay this litigation.

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

A number of unique circumstances in this lawsuit militate strongly in favor of a stay. A stay is especially appropriate in this case because Calista has filed a Petition for Cancellation of the U.S. registration for the PORNTUBE trademark at issue in this litigation (the "Putative Mark") before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB"). That petition was filed more than two (2) months before this lawsuit was filed. In addition, Calista was forced to file this lawsuit in order to retain control over the thirteen domain names (the "Domains") after an arbitration panel awarded the transfer of the Domains to Defendant and Counterclaimant Tenza Trading Ltd. ("Tenza") following an "adjudication lite" proceeding based almost solely upon the Putative Mark and without any consideration regarding the merely descriptive or generic nature of the Putative Mark. Accordingly, the Cancellation process is well underway, and is likely to result in cancellation or amendment of the Putative Mark's registration. In contrast, this litigation is in its infancy. There is no schedule in place and Tenza only served its initial discovery requests six business days ago. Finally, the special circumstances of this case, including the necessity for Calista to file this lawsuit simply to prevent the transfer of the Domains without proper adjudication, support a stay of the proceedings. Under these circumstances, Calista respectfully submits that all relevant

factors, including the "deciding" factor of efficiency, strongly favor granting a stay pending the Petition for Cancellation.

## II.     BACKGROUND

Calista operates numerous adult-themed websites at the Domains, which in turn drive Internet traffic to certain third-party streaming video websites, colloquially and commonly known as "porn tubes." Complaint, ¶ 16. These third party websites have entered into arrangements with Calista wherein the porn tubes pay Calista for driving users to their websites. *Id.* at ¶ 20. One such porn tube that Calista drove traffic to is the website owned and/or operated by Tenza at the domain name porntube.com (the "Porntube.com Website"). *Id.* at ¶ 25. From approximately January 3, 2011 through March 28, 2013, Calista and Tenza worked together to successfully drive millions of users from the Domains to the Porntube.com Website. *Id.* at ¶ 34. Tenza knew of, fostered, encouraged, rewarded and profited from Calista's services and from Calista's registration and use of the domains for over two years. *Id.* at ¶¶ 34-42.

On or about March 28, 2013, after approximately two years of successful affiliation and without any warning to Calista, Tenza filed a complaint against Calista under the Uniform Domain-Name Dispute-Resolution Policy (the "UDRP") to secure the transfer of the Domains from Calista to Tenza. *Id.* at ¶ 43. The UDRP has often been called "'adjudication lite' as a result of its streamlined nature and its loose rules regarding applicable law." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F. 3d 617, 624 (4th Cir. 2003). *See also NBC Universal, Inc. v. NBCUNIVERSAL.COM*, 378 F. Supp. 2d 715, 717 (E.D. Vir. 2005) (quoting *Barcelona.com*, *supra*); *General Media Communications, Inc. v. Crazy Troll, LLC*, 2007 WL 102988 (S.D.N.Y. Jan. 16, 2007) (same); *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1034 (C.D. Cal. 2010) (same); *Web-adviso v. Trump*, 927 F. Supp. 2d 32, 37

(E.D.N.Y. 2013) (same); *Migliore & Associates, LLC v. Kentuckiana Reporters, LLC*, 2013 WL 5323035 (W.D. Ky. Sept. 20, 2013) (same).  In the UDRP complaint, Tenza alleged that despite the longstanding, successful relationship between the parties wherein Tenza paid Calista for driving traffic to the Porntube.com Website, Calista was not operating a *bona fide* service at the Domains but instead had registered and was using the domains in bad faith.  Complaint, ¶ 44.

Calista was unaware of any dispute between the parties prior to the filing of the UDRP complaint.  *Id*. at ¶ 45.  Immediately after the initiation of the UDRP proceeding, Calista learned of the existence of the registration for the Putative Mark, and on April 10, 2013, Calista filed a petition for cancellation of that registration with the TTAB, on the grounds that the term "porn tube" is a generic designation for or is merely descriptive of the claimed services.  *Id*. at ¶ 58.  The Petition for Cancellation remains active and pending at the TTAB, which has assigned proceeding no. 92057048 to the proceeding.  *Id.* at ¶ 59.  On May 20, 2013, Tenza filed its answer to the Petition for Cancellation, denying the generic and/or merely descriptive nature of the term "porn tube."  *Id.* at ¶ 60.  Under the supervision of the TTAB, the parties are in the discovery phase of the cancellation proceeding and have been since June 21, 2013.

Despite Calista's arguments that the Putative Mark is a generic designation for or is merely descriptive of adult entertainment services provided via streaming video from a Website, and despite the pendency of the Petition for Cancellation, on June 11, 2013, the panel of three arbitrators in the UDRP proceeding issued a 2-1 decision directing that the Domains should be transferred to Tenza.  *Id.* at ¶ 48.  Calista's only option for preserving its valuable Domains from being transferred to Tenza pursuant to the "adjudication lite" UDRP decision was to file the instant action.  *See* Uniform Domain Name Dispute Resolution Policy, Paragraph 4(k), available at http://www.icann.org/en/help/dndr/udrp/policy.

Calista recognizes the usual nature of a Plaintiff requesting the stay of its own lawsuit, however, under the current circumstances, the request is not only reasonable, but prudent, because Calista was compelled under the UDRP's rules to file the present action quickly after the issuance of the UDRP decision so as to prevent the transfer of the Domains. Moreover, in light of the fact that the Petition for Cancellation was filed prior to both the issuance of the UDRP decision transferring the Domains and the filing of this lawsuit to prevent the transfer of the Domains, staying this lawsuit pending the TTAB proceedings will conserve the time and the resources of the Court and the parties, will potentially eliminate additional litigation expenses for the parties, and will allow the TTAB to simplify and resolve the issues in this case without creating any undue prejudice to Tenza.

### III.   THE LEGAL STANDARD

"A federal district court 'possesses the inherent power to control its own docket and calendar.'" *Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1115 (D. Oregon 2000) (quoting *Mediterranean Enterprises, Inc. v. Ssangyong Const. Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)). *See also*, *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("[A] trial court has the inherent power to control its own docket and calendar." (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936))). As part of this power, "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).

Pursuant to 15 U.S.C. § 1119, a District Court and the TTAB share concurrent jurisdiction over the cancellation of a trademark registration. *Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1285 (N.D. Cal. 1996) (citing *W & G Tenn. Imports, Inc. v. Esselte Pendaflex Corp.*, 769 F. Supp. 264, 266 (M.D. Tenn. 1991)). However, when courts face a

question requiring the exercise of administrative discretion, the appropriate federal administrative agency should be allowed to rule on the issue first whenever possible. *See, e.g.*, *W & G Tenn. Imports, Inc. v. Esselte Pendaflex Corp.*, 769 F. Supp. 264 (M.D. Tenn. 1991). Although there are contrasting holdings regarding whether a district court may stay its own proceedings pending a TTAB proceeding,[1] "these contrasting holdings merely reinforce the accepted canon that a decision to stay rests primarily within the district court's discretion . . . ." *Citicasters Co. v. Country Club Communications*, 1997 WL 715034 (C.D. Cal. July 21, 1997) (granting motion to stay pending cancellation proceeding before TTAB). *See also Realty Experts Inc. v. RE Realty Experts, Inc.*, 2012 WL 699512 (S.D. Cal. Mar. 1, 2012) (finding that "continued determination of registration by the TTAB is the most efficient course of action"). The Ninth Circuit has recognized that in certain circumstances, "it might make more sense to resolve the registration claims at the TTAB first." *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) (citing *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 853-54 (2d Cir. 1988)).

When considering whether to enter a stay pending a concurrent TTAB proceeding, "[t]he deciding factor should be efficiency." *Id*. (emphases added). Additionally, the Court may consider the stage of the pleadings and the potential harm to the parties. *See Citicasters*, *supra* at *1-2. *See also Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864-65 (9th Cir. 1978) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are

---

[1] S*ee*, *e.g.*, *Spring Air Co. v. Englander Licensing Ltd. Liab. Co.*, 2001 WL 1543510 (N.D. Ill. Nov. 29, 2001) (listing numerous holdings wherein courts granted a stay and numerous holdings wherein courts denied a stay pending TTAB proceedings)

judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

## IV.   ARGUMENT AND AUTHORITY

### A.   The "Deciding" Factor: A Stay Pending the Cancellation Proceeding Would Be Most Efficient

The controlling issue of this case is whether the Putative Mark is properly afforded any form of protection under the Lanham Act. However, where a putative trademark is generic or merely descriptive of the claimed services, the putative trademark cannot be enforced against other parties. *See*, *e.g.*, *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) ("Where the majority of the relevant public appropriates a trademark term as the name of a product (or service), the mark is victim of 'genericide' and trademark rights generally cease."); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985) ("Descriptive terms ordinarily are not protectable as trademarks." (citing 15 U.S.C. § 1052(e)(1))).

If the TTAB cancels the registration for the Putative Mark because "porn tube" is generic and/or merely descriptive of the claimed services, then all the issues in this case can be summarily decided. Calista's claims for declaratory and injunctive relief under the Anticybersquatting Consumer Protection Act (Count I) would be granted, because Tenza would have no colorable rights in the Domains containing the phrase "porn tube." Calista's claims for declaration of non-infringement (Count II) and no unfair competition (Count III) also would be decided, as they are wholly contingent upon Tenza's rights in the Putative Mark. And, Calista's request for cancellation of the registration for the Putative Mark (Count IV) would become moot, as the TTAB would have already cancelled the registration. Tenza's Counterclaims would be

similarly summarily decided should the TTAB cancel the registration. Each of Tenza's Counterclaims (including for trademark infringement, unfair competition, counterfeiting and cybersquatting) is explicitly contingent upon Tenza having exclusive rights in the Putative Mark, which rights would be nonexistent should the TTAB find the Putative Mark to be generic and/or merely descriptive.

The courts have recognized that the TTAB is better equipped to determine the validity of trademarks and trademark registrations as a result of their exclusive specialization in trademarks. *See*, *e.g.*, *CTF Dev., Inc. v. Penta Hospitality, LLC*, 2009 WL 2524476 (N.D. Cal. Aug. 17, 2009) ("[I]t may have been more efficient in this instance for the TTAB to rule on cancellation first, considering that the TTAB has the expertise, not the district court."); *Realty Experts Inc. v. RE Realty Experts, Inc.*, 2012 WL 699512 (S.D. Cal. Mar. 1, 2012) ("[T]he PTO is better equipped to handle the initial determination of trademark registration, as clearly indicated by the statutory scheme and foreseen in *Rhoades* . . . .").

It is clear that the most efficient course for the Court would be to allow the TTAB to consider the question of the validity of the Putative Mark and its related registration. If the TTAB cancels the registration for the mark by holding the term "porn tube" to be either generic or merely descriptive, the work of and in this Court can be summarily executed soon after the conclusion of the TTAB proceeding. And, if the TTAB does not cancel the registration, this Court and the parties will be provided with an in-depth opinion from an expert source – indeed, *the* expert source -- detailing the reasons why the registration for the Putative Mark is valid, allowing the Court and the parties to streamline the rest of the litigation. Because a stay of these proceedings pending the Petition for Cancellation before the TTAB would be the most efficient

way to handle the present dispute, the Court should allow the Motion and grant the stay.  *See*, *Rhoades*, 504 F.3d at 1165 ("[t]he deciding factor should be efficiency.").

**B.      The Remaining Factors Support a Stay of the Lawsuit**

A stay of the present proceeding would also be appropriate because this litigation is still in its infancy and because there would be no demonstrable harm or unfair prejudice to Tenza if the stay were granted.  *See Clinton v. Jones*, 520 U.S. 681, 706-08 (1997) (recognizing that a stay is acceptable when the court takes into account the effect of the delay and the stage of the proceedings); *Yong v. I.N.S.*, 208 F.3d 1116, 1121 (9th Cir. 2000) (considering the burden on the parties when granting or denying a stay).

As to the first of the secondary factors, it is unquestionable that the proceedings in this Court are essentially in their infancy.  Tenza filed its answer to the Complaint (including counterclaims) on August 21, 2013.  Neither party filed motions under 12(b), and neither party has indicated that it intends to file motions under 12(c).  The Court has not yet set a trial date, and the parties have not agreed on a schedule for discovery.   The parties have not even had a hearing before the Court.  Finally, although Tenza has served initial discovery requests, they were only served approximately six business days ago, on September 27, 2013.  In contrast, Calista filed its Petition for Cancellation nearly six (6) months ago, on April 10, 2013, and Tenza responded to that Petition over four (4) months ago on May 20, 2013; in the TTAB proceeding, the parties are months into their discovery period, although discovery has not yet been conducted.

Other than the obvious (and controlling) benefit of efficiency and judicial economy that would result from the stay, the stay would not unfairly burden either of the parties.  Both Calista and Tenza will have the opportunity to put forth their arguments regarding the validity of the

Putative Mark and its related registration before the judges of the TTAB in much the same manner as they would before this Court – that is, after extensive discovery, briefing, and if necessary, oral argument.  With regard to any possible delay in the resolution of the present dispute, if the TTAB finds that the Putative Mark is generic and/or merely descriptive, then (as explained above), this dispute can be summarily decided.  And, if the TTAB finds that the Putative Mark is deserving of continued registration and protection as a proprietary indicator of source, the case (and Tenza) can proceed but with the added benefit of a well-reasoned expert opinion from the TTAB regarding the validity of the Putative Mark.

Therefore, though the controlling factor of efficiency and judicial economy already dictates that this Court should grant a stay of these proceedings, the remaining factors also support a stay of the proceedings.

## C.    The Special Circumstances of this Case Also Support a Stay of the Proceeding

As detailed above, Calista and Tenza were operating in mutually beneficial harmony for two years until March 28, 2013, when Tenza filed the UDRP Complaint against Calista.  Complaint, ¶ 43.  Prior to the service of the UDRP complaint, Calista was unaware that there was a dispute between the parties and was unaware that Tenza claimed any exclusive rights in the Putative Mark.  Complaint, ¶ 45.  Promptly after it was notified of these issues by the filing of the UDRP Complaint, Tenza filed its Petition for Cancellation on April 10, 2013, even before it filed its response to the UDRP Complaint on May 2, 2013.  Complaint, ¶ 58; Exhibit B to Complaint.

The majority of the arbitration panel that adjudicated the UDRP proceedings underwent no independent inquiry as to the generic and/or merely descriptive nature of the Putative Mark, effectively ignoring the lengthy and detailed arguments submitted by Calista in its filings in that

proceeding. *See* Exhibit E to Complaint, pp. 9-13. The majority opinion of the arbitration panel also gave no analysis or recognition of the fact that Calista and Tenza had worked together for years prior to the filing of the Complaint and the fact that Tenza had explicitly rewarded Calista for the work it was doing for Tenza on the Domains, effectively ignoring the important and potentially dispositive issues of license and laches. *Id.*

It also should be noted that the dissenting opinion in the UDRP panel's decision held that the panel <u>should</u> suspend the UDRP proceedings pending the resolution of the Petition for Cancellation. *See* Exhibit E to Complaint, pp. 14-17. Believing that the Panel's decision should be deferred until the TTAB issues its decision on the Petition for Cancellation, the dissenting opinion explained as follows:

> [Calista's] Petition, as well as its UDRP papers, set out several arguments which support the position that [Tenza] lacks trademark rights in the [Putative Mark] because such mark is wholly generic or descriptive, despite the mark also being registered with several registries outside the United States. <u>[Calista's] contentions seem genuine, are reasonable and there is no indication that [Calista] filed its Petition merely to delay the instant proceeding. Importantly, whether or not [Tenza] has rights in the [Putative Mark] is a crucial consideration in deciding the case now before the Panel</u>.

Exhibit E to Complaint, pp. 15-16 (emphasis added). However, despite the dissenting panel member's well-reasoned opinion, the two other panel members decided to side-step the admittedly complex issue of the validity of the Putative Mark and ordered Calista's domain name registrar to transfer the Domains to Tenza. Complaint, ¶ 48.

It was only in order to prevent the immediate and unwarranted transfer of the Domains pursuant to the "adjudication lite" of the UDRP proceeding that Calista filed the present action. Calista would have been irreparably and unfairly damaged if the Domains were forcibly taken away from it without a proper adjudication of its rights and of Tenza's rights (if any) in the

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**  
825 Beacon Street, Suite 20 | Newton Centre, MA 02459  
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **11**  
Plaintiff's Motion To Stay

Putative Mark.  Accordingly, the only way that Calista could prevent the transfer of its Domains following the UDRP decision and pending the Petition for Cancellation was to file this action in the District of Oregon.  *See* Uniform Domain Name Dispute Resolution Policy, ¶ 4(k), available at http://www.icann.org/en/help/dndr/udrp/policy.

It should be noted that Oregon is home to neither Tenza (a Cypriot company) nor Calista (a Seychellois company), but is only home to the domain name registrar for the Domains, Moniker Online Services, LLC.  Thus, Calista has now been forced to undertake two legal proceedings in a foreign jurisdiction to prevent the taking of its property without proper legal adjudication.  Although Calista voluntarily filed its Petition for Cancellation before the TTAB, its Complaint in this action was necessary to stay the hand of the UDRP panel.

This background of the dispute clearly distinguishes it from the Ninth Circuit's holding in *Rhoades v. Avon Products, Inc.*, which vacated a stay by the District simply because the litigation involved a question of infringement in addition to a question of invalidity.  504 F.3d 1151, 1165 (9th Cir. 2007).  Admittedly, Tenza has filed counterclaims for infringement against Calista.  However, these counterclaims would not have been filed if Calista had not filed its Complaint, which in turn never would have been filed if the UDRP panel did not order the transfer of the Domains despite the obvious and substantial issues regarding the validity of the Putative Mark and its related registration.

Moreover, this case is distinguished from *Rhoades* and its sister cases from the First and Second Circuits, *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75 (1st Cir. 1996) and *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848 (2d Cir. 1988), because the pending proceeding before the TTAB is a Petition for Cancellation filed by Calista.  Both *Rhoades* and

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **12**
Plaintiff's Motion To Stay

*Goya Foods* involved pending application proceedings, and *PHC* involved a cancellation proceeding filed by the party claiming infringement.

More importantly, however, this case is distinguished from *Rhoades*, *PHC* and *Goya* because those cases were decided on the grounds of the "primary jurisdiction" doctrine, which the courts have rejected in the context of pending TTAB proceedings. "The primary jurisdiction doctrine provides: When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." *Rhoades*, 504 F.3d at 1162 (quoting *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003)).

In contrast, this Motion does not argue that the TTAB *must* decide the validity of the Putative Mark and its related registration prior to the instant litigation. Calista argues only that, in following the *Rhoades* holding that, because efficiency is paramount and because Calista has been placed in an unfair position as a result of the UDRP decision, Calista should be allowed to proceed with the cancellation of the registration for the Putative Mark before the TTAB.

V.   CONCLUSION

In light of these considerations and the foregoing issues herein discussed, Calista believes that a stay of this litigation pending the resolution of the Petition for Cancellation before the TTAB will conserve the time and expenses of the Parties and the Court and will allow the TTAB to simplify the issues in this case without resulting in any undue prejudice to Tenza. Moreover, equitable considerations arising from the unfair position that Calista has been placed in further support a stay of this proceeding. In the event that the Court grants a stay of the proceeding,

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **13**
Plaintiff's Motion To Stay

Calista, in cooperation with Tenza, will submit to the Court joint reports regarding the status of the cancellation proceeding through the conclusion of that proceeding.

For the foregoing reasons, Calista respectfully requests that the Court grant its Motion to Stay Litigation Pending the Petition for Cancellation of Trademark Registration before the Trademark Trial and Appeal Board and other such relief as the Court may see fit.

Dated:  October 7, 2013

>Respectfully Submitted,
>Plaintiff/Counter-defendant
>Calista Enterprises Ltd.
>By its Attorneys,
>
>/s/ Matthew Shayefar
>Matthew Shayefar (*pro hac vice*)
>Valentin Gurvits (*pro hac vice*)
>Boston Law Group, PC
>825 Beacon Street, Suite 20
>Newton Centre, Massachusetts 02459
>Tel:   (617) 928-1800
>Fax:   (617) 928-1802
>matt@bostonlawgroup.com
>vgurvits@bostonlawgroup.com
>
>/s/ Thomas Freedman Jr.
>Thomas Freedman Jr. (OSB No. 080697)
>Pearl Law LLC
>552 SW 5th Avenue, Suite 1100
>Portland, Oregon 97204
>Tel:   (503) 295-6296
>Fax:   (503) 295-6344
>thomas@prllaw.com
>
>/s/ Sean Ploen
>Sean Ploen (*pro hac vice*)
>Ploen Law Firm, PC
>100 South Fifth Street, Suite 1900
>Minneapolis, MN 55402
>Tel:   (651) 894-6800
>Fax:   (651) 894-6801
>sploen@ploen.com