**Paul N. Tauger** (*Admitted pro hac vice* – CA Bar No. 160552)
Email: pnt@eclipsegrp.com
**Anna M. Vradenburgh** (*Admitted pro hac vice* – CA Bar No. 163212)
Email: amv@eclipsegrp.com
THE ECLIPSE GROUP LLP
2020 Main Street, Suite 600
Irvine, CA 92614
Telephone: 949-851-5000 ext. 110
Facsimile: 949-851-5051

**Devon Zastrow Newman**, OSB #014627
Email: dnewman@schwabe.com
**Catherine B. Brinkman**, OSB #002134
Email: cbrinkman@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

Attorneys for Defendant and Counterclaimant Tenza Trading Ltd.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CALISTA ENTERPRISES LTD,** a Republic of Seychelles Company**,**<br><br>Plaintiff,<br><br>vs.<br><br>**TENZA TRADING LTD.,** a Cyprus Company**,**<br><br>Defendant. | Case No. 3:13-cv-01045-SI<br><br>Defendant and Counterclaimant's Opposition to Plaintiff's Motion to Stay its Own Action |

Page 1 -   DEFENDANT AND COUNTERCLAIMANT'S
           OPPOSITION TO PLAINTIFF'S MOTION TO STAY



## I. Introduction

In a classic example of understatement, Plaintiff and Counter-defendant Calista describes its motion to stay its own lawsuit as, "unusual." The motion is, indeed, "unusual" in that the relief it seeks is specifically precluded by the controlling precedent of this Circuit which Calista simply distorts or ignores.

Calista expressly admits that the reason it filed its complaint, which it failed to serve for almost three months, was not to obtain a judicial determination of rights, but for the sole purpose of thwarting the transfer of internet domains that have already been adjudicated as being registered in bad-faith by Calista and infringing Tenza's federally-registered U.S. trademark. Having effected a stay of the transfer by filing the instant lawsuit, Calista now argues that its own lawsuit shouldn't proceed until a TTAB proceeding that it also had initiated (and then left dormant after the UDRP panel rejected Calista's identical request to stay proceedings in that forum) can hear its claim that Tenza's trademark registration should be cancelled as being generic or descriptive. The U.S. Patent and Trademark Office and an ICANN UDRP proceeding have held otherwise, the former by issuing the registration without objection, and the latter having expressly rejected Calista's specific substantive contention after consideration of both parties' presentation of evidence and legal authority.

Calista claims it is more "efficient" to stay this action in favor of the TTAB proceeding. However, the TTAB can only address Tenza's registration, and not the transfer of the domain names, Tenza's federal infringement, unfair competition, counterfeiting and cybersquatting claims, or its supplemental Oregon state law claims. Moreover, the TTAB's decision with respect to validity of the registration is neither final nor dispositive; regardless of how the TTAB rules, this Court will ultimately have to decide <u>all</u> of the claims at issue, including the validity of

Page 1 -    DEFENDANT AND COUNTERCLAIMANT'S
            OPPOSITION TO PLAINTIFF'S MOTION TO STAY



Tenza's registration.

Calista claims that Tenza wouldn't have brought its counterclaims if Calista hadn't filed this action. In this regard, Calista is more-or-less correct – had Calista complied with the UDRP's order and transferred the infringing domains to Tenza, Calista's infringement of Tenza's trademark would have ceased, mitigating the need for further relief. Instead, Calista has engaged in an expressly admitted attempt to retain and exploit the infringing domains for as long as it possibly can, all the while causing Tenza actual harm from the unauthorized use of its trademark, harm that is, as a matter of law, irreparable.

Calista's demand that this litigation be stayed is not justified by fact and expressly precluded by the law of the Ninth Circuit. For these reasons, as explained herein, Tenza respectfully requests that the Court deny the instant motion.

## II.    Factual and Procedural Background

### A. The Trademark Owner: Defendant and Counterclaimant Tenza

Tenza owns a commercial adult entertainment website at www.porntube.com that features photographs, videos, related film clips and other media material (hereafter, "PornTube®"). Counterclaim, ¶ 7. Contrary to Calista's insistence (and its intentionally incorrect usage throughout its sundry pleadings), and as confirmed by the UDRP panel and the PTO, there is no such thing as, "a porntube." PORNTUBE is a federally-registered United States Trademark, No. 3,936,197, that is owned by Tenza. *Id.* at ¶ 9. Tenza's registration reflects a first use in commerce of May, 2005, when the PornTube® site first opened to the public, was filed on October 29, 2008, and issued on March 29, 2011, before Calista registered and began using its infringing domains. *Id.*

PornTube® is relatively unique among adult entertainment websites in that everything

Page 2 -    DEFENDANT AND COUNTERCLAIMANT'S
            OPPOSITION TO PLAINTIFF'S MOTION TO STAY



on its website is uploaded by professional producers of the material that it hosts. *Id.* at ¶ 7. Tenza earns the bulk of its income from PornTube® by selling advertising on the site; the more visitors to its site, the more advertising it can sell and the higher the rates it can charge its advertisers. *Id.* at ¶ 9.

Tenza uses an affiliate program to increase the number of visitors to its site. Participants in the affiliate program are operators of other adult entertainment websites who include links on their webpages to PornTube® with the expectation that their visitors will click on them and be directed to Tenza's site. *Id.* Tenza tracks each such "click-through" from a participating affiliate and compensates the affiliate on a per-click-through basis. *Id.* Throughout its history, well over one thousand different website operators, including Calista, have participated in the PornTube® affiliate program. *Id.* At present, there are approximately two hundred active website operators who participate. *Id.* Each of these website operators may own and/or control many different domains and websites that link to Tenza's PornTube® site. *Id.* Tenza does not track the names of domains owned or controlled by participating website operators; their click-through-referrals are logged through a code, provided by Tenza to each affiliate operator, which is embedded in the referral data transmitted to the PornTube® website when a visitor clicks through.

**B. The Trademark Infringer, Counterfeiter and Cybersquatter: Plaintiff and Counter-defendant Calista**

Calista operates a number of internet websites that it uses to drive visitors to other adult entertainment websites that maintain affiliate programs similar to Tenza's PornTube® website. Complaint, ¶¶ 2 & 3. For a period of approximately two years, Calista participated in Tenza's PornTube® affiliate program. *Id.* at ¶ 5. However, unknown to Tenza at this time, Calista had registered and was operating thirteen domain names that consisted of Tenza's federally-



registered PORNTUBE mark in combination with a single common word, e.g. largeporntube.com, goldporntube.com, kissporntube.com, etc. Counterclaim at ¶ 11. These domains were registered well after the PORNTUBE registration was granted to Tenza's predecessor-in-interest. *See*, Exhibit Exhibit B to the Declaration of Paul N. Tauger in Support of Defendant and Counterclaimant's Opposition to Plaintiff's Motion to Stay its Own Action (hereafter, the "Tauger Decl."), National Arbitration Forum UDRP Decision, "Registration and Use in Bad Faith."

In addition to displaying adult entertainment material reproduced from other websites, each of the websites at these domains also contain a list of hyperlinks that identify other adult entertainment websites, some owned by Calista, and others by third parties. *Id.* at ¶ 14. These hyperlinks identify the name of the linked website and, when clicked by a visitor, redirect the visitor to the third-party site, or to one of thirteen Calista-owned sites identified by Tenza's registered PORNTUBE trademark. Additionally, Calista's websites also included a link labeled only as "Porn Tube" that, when clicked on, directed visitors to one of the Calista-owned infringing sites. Complaint, ¶ 16.

### C. Tenza's Uniform Dispute Resolution Procedure Complaint

Upon Tenza's discovery of the Calista domains that used its trademark, Tenza promptly, on March 25, 2013, initiated a UDRP complaint with the National Arbitration Forum. The UDRP is the process mandated by the International Corporation for Assigned Names and Numbers ("ICANN"), an international non-profit corporation that administers top-level domains, e.g. .net, .com and .org. Tauger Decl., ¶ 2.

After considering the parties' pleadings and evidence of record, the UDRP panel issued an extensive finding, as well as an order that the thirteen domain names at issue be transferred to

Page 4 -   DEFENDANT AND COUNTERCLAIMANT'S
            OPPOSITION TO PLAINTIFF'S MOTION TO STAY



Tenza. *Id*. at ¶ 3. As a courtesy to the Court, a copy of the UDRP Decision is attached as Exhibit B to the Tauger Decl.

Among the findings of the UDRP panel were the following:

- "Respondent [Calista] asserts that the Complainant [Tenza]'s PORNTUBE mark consists of generic and descriptive designations for websites offering streaming adult-themed video content. . . [and] that Complainant [Tenza] engages in Reverse Domain Name Hijacking."

- "While acknowledging the Respondent's Petition for cancellation of the U.S. Registration . . . the Panel notes that the U.S. Registration is on the principal Register; this is at the least an indication that the USPTO, at the time of registration, did not consider the PORNTUBE mark to be descriptive. . . Furthermore, that Petition does not dismiss the Complainant's established common law rights in the PORNTUBE mark, acquired through use since at least 2005."

- "For the reasons set out below, the majority of Panel . . . is of the opinion that the disputed domains should be transferred in favor of Complainant [Tenza]."

- "[T]he disputed domain names are confusingly similar to the Complainant's [PORNTUBE] trademark."

- "Complainant has made a *prima facie* case that Respondent [Calista] lacks rights and legitimate interest in the disputed domain names."

- "It is difficult to find a *bona fide* offering [of goods or services] when the Respondent uses without permission a domain name confusingly similar to a competitor's mark."

- "The Respondent [Calista]'s registration and use of the disputed domain names are in bad faith for two reasons. . . Respondent registered the disputed domain names in bad



>   faith . . . as shown by its actual knowledge of Complainant's rights in the PORNTUBE mark.  The evidence reveals that the Respondent was aware of the Complainant's mark. . . Moreover, the Respondent uses the disputed domain names to confuse consumers and to attract internet traffic to its website, in order to receive commercial profit from third parties whose websites are linked to the Respondent's domain names."

- "Complainant [Tenza] has not engaged in reverse domain hijacking."

As Calista has noted, the UDRP panel's decision represents a 2 to 1 majority.[1]  However, Calista has neglected to inform this Court that the basis for the lone dissent was <u>not</u> an objection to the substantive legal and factual findings of the majority.  The dissenting panelist stated, "I do not argue with the Majority regarding their finding that Complainant's various trademark registrations are sufficient to support a conclusion that Complainant has rights in a mark for the purposes of [ICANN policy]."  Rather, it was the panelist's belief that Calista's later-filed cancellation petition should be given priority before the Panel rendered a decision: "[W]hen during the pendency of a UDRP proceeding there is ongoing litigation that considers an essential UDRP issue, the UDRP case should be suspended or terminated."  It should be noted, however, that the only UDRP precedent the dissenting panelist could provide involved suspensions due to pending <u>federal court litigation</u>, and not TTAB proceedings.  Clearly, the panel majority disagreed with the lone dissenter.  The UDRP decision and transfer order was issued on June 11, 2013.

/ / /

---

[1] Pursuant to ICANN's Rules for Uniform Dispute Resolution Policy 15(c), "In the case of a three-member Panel, the Panel's decision shall be made by a majority."

Page 6 -    DEFENDANT AND COUNTERCLAIMANT'S
            OPPOSITION TO PLAINTIFF'S MOTION TO STAY



### D.  Calista's Dormant TTAB Cancellation Petition

On April 10, 2013, barely two weeks after Tenza had filed its UDRP complaint, Calista filed a cancellation petition with the Trademark Trial and Appeal Board ("TTAB").  Calista then filed a request to stay the UDRP, predicated upon the same grounds as its instant motion.  The UDRP panel denied Calista's request.  Tauger Decl., ¶ 3, Exhibit A to the Tauger Decl.

The TTAB issued a scheduling order which included, *inter alia,* the following deadlines:

| | |
|---|---|
| Deadline for Discovery Conference | 6/21/2013 |
| Discovery Opens | 6/21/2013 |
| Initial Disclosures Due | 7/21/2013 |
| Expert Disclosures Due | 11/18/2013 |
| Discovery Closes | 12/18/2013 |

*See,* Exhibit C to the Tauger Decl.

Calista held the Discovery Conference on June 23, 2013, two days after the TTAB-imposed cut-off.  Tauger Decl., ¶ 6.  Though Tenza served its Initial Disclosures on July 21, 2013, as ordered, Calista didn't serve its own Initial Disclosures until October 2, 2013, <u>102 days after they were due</u>, and shortly after Tenza waived service by answering and counterclaiming in the instant action.  Tauger Decl., ¶ 7.  Other than its untimely service of its Initial Disclosures, Calista has done <u>absolutely nothing</u> to advance its cancellation petition; no discovery has been served, and no depositions have been noticed.  Tauger Decl. ¶ 8.  Moreover, after it filed the instant motion to stay, Calista advised Tenza that it will also seek an extension of the TTAB's discovery cut-off of November 18, 2012; Calista has offered no explanation or excuse for its failure to do anything to advance the TTAB proceeding, which it has represented to this Court is more "efficient" than proceeding with this litigation.  Tauger Decl., ¶ 9; Exhibit D to the Tauger

Page 7 -   DEFENDANT AND COUNTERCLAIMANT'S
           OPPOSITION TO PLAINTIFF'S MOTION TO STAY



Decl.

Tenza has since filed its own Motion to Stay the TTAB cancellation proceeding in favor of the present litigation. The TTAB has not yet ruled on that motion. Tauger Decl., ¶10.

### E.  Calista's Use of the Federal Judicial Process to Harm Tenza: The Instant Litigation

Despite the pendency of its own TTAB cancellation petition, Calista filed the instant action on June 21, 2013,. Tauger Decl., ¶ 11. As with its UDRP petition, Calista did nothing whatsoever after the lawsuit was filed. It did not serve Tenza with its Complaint, nor was a courtesy copies of the Complaint transmitted to Tenza's TTAB counsel. All Calista did was ask, at the June 23, 2013 TTAB Discovery Conference, if Tenza's counsel would accept service of process of the Complaint. Tauger Decl., ¶ 12.

Because Calista appeared to have no intention of pursuing its federal action, Tenza wrote to Calista's Internet Service Provider and requested that it comply with the UDRP transfer order; Calista immediately responded with contrary instructions to the ISP (and a copy of its Complaint), and the ISP refused to effect the transfer. At that point, Tenza decided to waive service and filed its Answer and Counterclaims in this action. Tauger Decl., ¶ 13.

The parties conducted a Rule 26(f) conference on September 12, 2013, which was completed the following week. Tauger Decl., ¶ 14. As provided by the Federal Rules, Tenza then served written discovery consisting of Interrogatories, Requests for Production of Documents and Requests for Admission. *Id.* Tenza also advised Calista that it wished to schedule the FRCP 30(b)(6) deposition of Calista for early November and requested available dates, a request Tenza subsequently reiterated at least two more times, but without any response from Calista other than confirmation that such deposition would have to proceed in the Seychelles, were Calista is located. Tauger Decl., ¶ 15.

Page 8 -   DEFENDANT AND COUNTERCLAIMANT'S
            OPPOSITION TO PLAINTIFF'S MOTION TO STAY



In mid-October, in the course of giving Tenza notice of the instant motion, Calista's counsel also advised Tenza that all three of Calista's named counsel would be "tied up for a few months" because of a trial during the "second and third week of December," and could not appear for a November deposition. Ultimately, Tenza was advised that, because the only attorney capable of defending Calista's deposition, Valentin Gurvitz, would be taking a vacation in December and January, the earliest that a deposition could be taken was February, 2014.[2] *Id.*

Subsequently, Calista's trademark counsel, attorney Sean Ploen (who is also one of the three counsel of record for the instant litigation), advised that Calista would be seeking an extension of the discovery December 18, 2013, cut-off in the TTAB proceeding and, moreover, would not agree to in-person deposition of its client, i.e. Tenza may only depose Calista on written questions and without the ability to ask follow-up questions or engage in any kind of re-direct examination. Tauger Decl., ¶ 9, Exhibit D.

### III. There is No Basis in Law for Granting a Stay

Calista does not cite, nor could Tenza find, a single case in which a plaintiff sought to stay its own declaratory relief action pending determination of its own cancellation proceeding brought before the TTAB. Indeed, Calista could not find a single reported decision in which a plaintiff attempted, unilaterally, to stay its own lawsuit of any kind. However, even in the standard context of a motion brought by a party adverse to the initial lawsuit filing, the law of this Circuit clearly and unambiguously precludes granting a stay.

/ / /

/ / /

---

[2] Recently, Calista's counsel indicated that it might be possible for Tenza to take the deposition the final week of January, 2014.

Page 9 -    DEFENDANT AND COUNTERCLAIMANT'S
             OPPOSITION TO PLAINTIFF'S MOTION TO STAY

ECLIPSE GROUP LLP ATTORNEYS AT LAW
2020 Main Street, Suite 600
Irvine, CA 92614
t: 949.851.5000
f: 949.851.5051

### A. The Law of the Ninth Circuit Recognizes the District Court, and not the TTAB, as the Appropriate Venue for Resolving Trademark Infringement Issues

Calista is correct in stating that grant or denial of a request to stay is committed to the discretion of the Court. However, Calista fails to mention that the exercise of that discretion is subject to specific guidelines that are set out in the seminal case of *Rhoades v. Avon Products*, 504 F.3d 1151 (9th Cir. 2007). *Rhoades* provides the controlling authority with respect to whether a declaratory relief action, such as the one brought by Plaintiff, should be deferred in favor of a TTAB cancellation proceeding. Though, in *Rhoades*, at issue was a dismissal of a declaratory judgment complaint, rather than a stay, the Appellate Court identified the central question before it as follows:

> We have never addressed whether a district court should defer, on primary jurisdiction grounds, a trademark declaratory relief action pending the completion of related TTAB proceedings. The First and Second Circuits have both addressed similar circumstances, however, and have held that the primary jurisdiction rationale does not justify deferral. We agree.
>
> *Id.* at 1162

As discussed, *infra*, *Rhoades* and its 9th Circuit progeny, which are controlling authority in this Court, preclude staying the instant action.

### 1. The TTAB Proceeding Addresses Only the Availability of Registration and Will Not Decide Any of the Causes of Action at Issue in This Litigation

As a threshold matter, the only question before the TTAB is the availability of registration for Tenza's trademark; the TTAB does not, as a matter of law, determine trademark rights. *Dita, Inc. v. Mendez*, 2010 U.S. Dist. LEXIS 135856, 11, 2010 WL 5140855 (C.D. Cal.

Page 10 -   DEFENDANT AND COUNTERCLAIMANT'S
             OPPOSITION TO PLAINTIFF'S MOTION TO STAY



Dec. 14, 2010), *citing, Estate of Coll-Monge v. Inner Peace Movement*, 524 F.3d 1341, 1347, 381 U.S. App. D.C. 28 (D.C. Cir. 2008) ("Although a federal registration will give the owner of a mark important legal rights and benefits, the registration does not create the trademark. . . [T]he absence or cancellation of a registration does not invalidate the trademark. It is the use of the mark to identify a single source which creates exclusive trademark rights.").

Accordingly, the TTAB lacks any ability to decide any of the matters that are currently pending before this Court and raised as causes of action in the Complaint and Counterclaim. *FreecycleSunnyvale v. Freecycle Network, Inc.*, 2006 U.S. Dist. LEXIS 20099, 2006 WL 870688 ("The PTO cannot decide issues of trademark infringement; this is a matter that must be decided in a court."); *Dita, Inc. v. Mendez, supra,* ("The powers of the TTAB are limited to determin[ing] and decid[ing] the respective rights of [trademark] registration. 15 U.S.C. § 1067(a); see also 15 U.S.C. §§ 1063(a), 1064. In contrast, a federal district court may — in addition to determining registration rights, see 15 U.S.C. § 1119 — also adjudicate claims of trademark infringement, see id. § 1114, and award either injunctive relief, see id. § 1116, or damages, see id. § 1117.").

The limited role of the TTAB was confirmed by the pre-*Rhodes* Northern District Court case, *Apple Computer, Inc. v. Podfitness, Inc.*, 2007 U.S. Dist. LEXIS 36347 (N.D. Cal. 2007), *quoting Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848 (2nd Cir. 1988):

> If a district court action involves *only* [emphasis original] the issue of whether a mark is entitled to registration . . . the doctrine of primary jurisdiction might be applicable. But where, as in the pending case, a district court suit concerns infringement, the interest of prompt adjudication far outweighs the value of having the views of the PTO. Whether a litigant is seeking to halt an alleged infringement or, as in this case, seeking a declaration of non-infringement, it is entitled to have the infringement issue



resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights.

*Apple Computer* at *7, quoting *Goya Foods* at 854-55.

In denying the motion to stay, the *Apple* Court concluded, "The present case . . . concerns other legal issues [besides registration], in addition to trademark infringement, that cannot be determined by the TTAB, such as dilution, unfair competition and false advertising." Calista cites *Rhoades* for the proposition that, "in certain circumstances, 'it might make more sense to resolve the registration claims at the TTAB first.'" However, Calista has omitted the first half of the quoted sentence: "<u>Specifically, where the district court action involves only the issue of whether a mark is entitled to registration</u>, it might make more sense to resolve the registration claims at the TTAB first." *Rhoades* at 1165. With a deft editorial amputation, Calista has presented to this Court a proposition that is the exact opposite of the 9th Circuit rule articulated by *Rhoades*. It is precisely because this litigation <u>does not</u> "involve only the issue of whether a mark is entitled to registration," it <u>does not</u> "make more sense to resolve the registration claim at the TTAB first."

### 2. TTAB Findings are Neither Dispositive Nor Conclusive

Moreover, any finding by the TTAB as to the availability of registration for a mark is neither binding, dispositive, nor final. As the 9th Circuit Appellate Court explained in *Rhoades*, "[T]he TTAB is <u>not</u> an ordinary administrative agency whose findings control unless set aside after court review under a highly deferential standard [emphasis added]. Under the Lanham Act, where a contested Board proceeding has already addressed the validity of the mark, the Board's findings can be challenged in a civil action in district court through new evidence, and, at least to a large extent, the issues can be litigated afresh." *Rhoades, supra,* at 1162. Though the TTAB



provides a forum to address registration issues, "Congress ha[d] not installed the Patent and Trademark Office (PTO) as the exclusive expert in the field . . . federal courts are particularly well-suited to handle [infringement lawsuits] so that parties quickly could obtain determination of their rights without accruing potential damages." *Dita, Inc. v. Mendez*, supra, citing *Rhoades* at 1164 ("Congress has not installed the PTO as the exclusive expert in the field").

It should be noted that the authority cited by Calista to the contrary, *Citicasters Co. v. Country Club Communications*, 1997 WL 715034 (C.D. Cal. 1997), was decided well before both *Rhoades* and *Dita*, and, clearly, does not state the current law of either the Northern District of California or the 9th Circuit.[3] On the contrary, even if the TTAB were to determine that Tenza's mark should not be registered, this Court will ultimately have to make that determination when the litigation is resumed, and it is not bound to follow the TTAB's findings in that regard.

### 3. The Court Should Not Stay the Instant Action Because it Results in Irreparable Harm to Tenza

The most extraordinary claim by Calista is that a stay in this matter will, "resolve the issues in this case without creating any undue prejudice to Tenza." Motion, p.5. Notwithstanding the fact that the TTAB cancellation proceeding will resolve no claim pending in

---

[3] Of particular note is the fact that, in *Rhoades*, the 9th Circuit Court of Appeals specifically addressed the *Citicasters* decision: "[Movant] relies heavily on a [CD Cal.] district court case, *Citicasters Co. v. Country Club Commc'ns,* [citation omitted], for its argument that district courts should 'defer to the TTAB in cases where that would be the most efficient course of action.' In the first place, no one contests that assertion; **the question is whether, in this case, deferring to the TTAB would in fact be the most efficient course. More importantly, however, besides lacking precedential value, it is not clear that *Citicasters* involved any of the noteworthy factors present here. Citicasters does not explain whether the federal court proceedings there involved a claim for declaratory relief, nor is there any indication that the federal case involved an infringement action**. [emphasis added]" *Rhoades* at 1164, fn. 13.

Page 13 -   DEFENDANT AND COUNTERCLAIMANT'S
            OPPOSITION TO PLAINTIFF'S MOTION TO STAY



this case, it is black-letter law that trademark infringement results in a presumption of irreparable harm. *International Jensen, Inc v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 826 (9th Cir. 1993); *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993); *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987); *Sony Computer Entm't Am., Inc. v. GameMasters*, 87 F. Sup.2d 976, 984 (N.D. Cal 1999). Calista has already been adjudicated an infringer of Tenza's rights in both its domain and trademark by the UDRP panel, which is specific entity invested with both jurisdiction and authority by ICANN. The express rules of that entity specify a <u>court</u> of competent jurisdiction, and only a court, as the sole venue in which that adjudication can be attacked.[4] Calista is quite candid that it filed the instant action only to block the ordered transfer of its infringing domains to Tenza. Neither UDRP policy nor the controlling authority of the 9th Circuit contemplates an immediate stay after obtaining the benefit of a "court-filed law suit" for the purpose of a non-dispositive administrative action at the TTAB. Again, it should be noted that the UDRP panel expressly <u>declined</u> to stay its determination pending resolution of the TTAB action; clearly, it was not the intent of the panel to countenance Calista's tactic designed to achieve the identical result.

If this Court grants a stay, Calista's infringement will continue unabated, resulting in both actual and presumed harm to Tenza that, as a matter of law, <u>is irreparable</u>. Moreover, Calista's

---

[4] Section 3.5 of ICANN's Registrar Transfer Dispute Resolution Policy provides, in pertinent part: "The procedures set forth above shall not prevent a Registrar from submitting a dispute to a court of competent jurisdiction for independent resolution before such an administrative proceeding is commenced or after such proceeding is concluded. If a Registry Operator decides a domain name registration should be transferred (either to the Gaining Registrar, or alternatively, back from the Gaining Registrar to the Registrar of Record), the Registry will wait fourteen (14) calendar days after it is informed of the decision before implementing that decision. The Registry will then implement the decision unless it has received during that fourteen (14) calendar day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that a lawsuit has commenced with respect to the impacted domain name(s)."

Page 14 -   DEFENDANT AND COUNTERCLAIMANT'S
              OPPOSITION TO PLAINTIFF'S MOTION TO STAY

ECLIPSE|GROUP
2020 Main Street   t: 949.851.5000
Suite 600          f: 949.851.5051
Irvine, CA 92614

infringement will not be resolved, or even addressed, by the TTAB; if the TTAB rules against Tenza, the instant case will resume and this Court will then have to decide the infringement issues while reviewing the registration question *de novo*. However, in the far more likely event that Calista's arguments will be rejected by the TTAB, just as they were rejected by the UDRP panel, Calista will simply return to this Court for a third bite of the apple.

### IV.     Conclusion: Neither Controlling 9th Circuit Authority, Efficiency nor Justice Favor Calista's Attempt to Stay this Litigation

The law of the Ninth Circuit states, clearly and unambiguously, that deferral of an action in favor of a TTAB proceeding is appropriate only where the sole issue is availability of a trademark registration. When, as here, other issues, including trademark infringement, cybersquatting, counterfeiting and supplemental state claims, are at issue, the federal court should retain jurisdiction. As the 9th Circuit Court of Appeals instructed when denying an application and argument identical to Calista's, "Congress has not installed the PTO as the exclusive expert in the field." *Rhoades*, *supra*, at 1164.

Calista correctly defines "efficiency" as a significant factor to be evaluated. However, staying this action in favor of the TTAB proceeding would be most inefficient. First, as noted, the TTAB cannot and will not reach everything in dispute in this litigation; both parties can, and will, continue their respective lawsuits, regardless of the TTAB's finding. Obviously, this will entail substantial duplication of effort by both parties. As the TTAB's inquiry is limited solely to registration, any discovery conducted by Tenza will have to be limited as well. Tenza will thus have no choice but to serve new discovery and conduct new depositions.

Moreover, Calista's unsupported claim that it is, somehow, "efficient" to obtain a non-binding and non-dispositive ruling from the TTAB prior to litigating this matter, ignores the



manifest and considerable harm that results to Tenza.  The UDRP panel found Calista to be an intentional infringer *and* in bad-faith in its registration and use of the infringing domains.  For those reasons, the UDRP panel ordered the immediate transfer of the infringing domains to Tenza.  The UDRP process recognizes that a court is a proper venue to review a UDRP decision, and expressly provides that initiating litigation will stay a transfer order.   It does not provide a similar provision for a TTAB challenge to a registration, and the UDRP panel expressly refused to stay its review of Calista's improper conduct in favor of its hastily-filed-and-then-abandoned TTAB petition.  Tenza is thus an adjudicated victim of trademark infringement, a tort that, by definition, results in irreparable injury.  Though it is certainly "convenient" for Calista to avoid the consequences of its illegal actions for as long as possible, it is not "efficient" for Tenza, who would incur on-going, irreparable injury until this court, and only this court, enters a final determination on the merits.

Finally, in determining how to exercise its discretion in this matter, the Court should consider Calista's tactics that underlie this motion.  Tenza has only addressed these peripherally, in the context of application of relevant law to the facts; it will now address them directly.  As noted, Calista has admitted that it filed this lawsuit to block transfer of the infringing domains.  This is not a rhetorical justification for the purposes of pleading, but its actual motivation.[5]  Fed. R. Civ. P.  11 expressly precludes presenting filings, "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Tenza respectfully submits that is exactly what Calista has done by presenting the instant motion.  As already noted,

---

[5] Calista's counsel made the same admission in email correspondence sent to Tenza's counsel, and attached as Exhibit E to the Tauger Decl., filed concurrently herewith.  In that email, dated October 14, 2013,  Calista's counsel, Mr. Gurvits, stated, "We had to file the present action to avoid the transfer of the disputed domains."

Page 16 -   DEFENDANT AND COUNTERCLAIMANT'S
             OPPOSITION TO PLAINTIFF'S MOTION TO STAY



Calista attempted, unsuccessfully, to use its TTAB petition as grounds for delaying the UDRP proceeding. When the UDRP panel rejected the attempt, Calista simply abandoned the TTAB petition, doing nothing whatsoever to move it forward. If this Court were to grant the instant motion, Calista will, of necessity, have to move the TTAB to extend discovery cutoff <u>because it has done nothing</u>. Similarly, upon filing the instant lawsuit, it made no effective effort to serve it; its goal was accomplished by the filing, which stopped the UDRP-ordered transfer of the infringing domains. Even the instant motion was filed, not after Tenza answered and counterclaimed, but only after Tenza had served written discovery and demanded identification of timely dates for deposition.

Calista doesn't explain any of this conduct, and offers as justification for the instant motion only that a non-binding, non-dispositive and limited decision from the TTAB might be "helpful" to this Court. Tenza respectfully contends that the intent behind Calista's actions is apparent and obvious. Tenza therefore respectfully requests that the Court deny Calista's ill-taken and improper Motion to Stay.

Date: October 16, 2013

Respectfully submitted,

_[signature]_

Paul N. Tauger, Admitted *Pro Hac Vice*
Anna M. Vradenburgh, Admitted *Pro Hac Vice*
THE ECLIPSE GROUP LLP
Telephone: 949-851-5000 ext. 110
Facsimile: 949-851-5051

Devon Zastrow Newman, OSB #014627
Catherine B. Brinkman, OSB #002134
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone: 503-222-9981
Facsimile: 503-796-2900

Attorneys for Defendant Tenza Trading Ltd.

Page 17 -   DEFENDANT AND COUNTERCLAIMANT'S
            OPPOSITION TO PLAINTIFF'S MOTION TO STAY



ECLIPSE GROUP LLP ATTORNEYS AT LAW
2020 Main Street Suite 600 Irvine, CA 92614
t: 949.851.5000 f: 949.851.5051