**Paul N. Tauger** (*Admitted pro hac vice* – CA Bar No. 160552)
Email: pnt@eclipsegrp.com
**Anna M. Vradenburgh** (*Admitted pro hac vice* – CA Bar No. 163212)
Email: amv@eclipsegrp.com
THE ECLIPSE GROUP LLP
2020 Main Street, Suite 600
Irvine, CA 92614
Telephone: 949-851-5000 ext. 110
Facsimile: 949-851-5051

**Devon Zastrow Newman**, OSB #014627
Email: dnewman@schwabe.com
**Catherine B. Brinkman**, OSB #002134
Email: cbrinkman@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

Attorneys for Defendant and Counterclaimant Tenza Trading Ltd.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CALISTA ENTERPRISES LTD,** a Republic of Seychelles Company**,**<br><br>Plaintiff,<br><br>vs.<br><br>**TENZA TRADING LTD.,** a Cyprus Company**,**<br><br>Defendant. | No. 3:13-cv-01045-SI<br><br>Declaration of Paul N. Tauger in Support of Defendant and Counterclaimant's Opposition to Plaintiff's Motion to Stay its Own Action |

Page 1 -    DECLARATION OF PAUL N. TAUGER IN SUPPORT
OF DEFENDANT AND COUNTERCLAIMANT'S
OPPOSITION TO PLAINTIFF'S MOTION TO STAY



I, Paul N. Tauger, declare as follows:

1.  I am an attorney, licensed to practice before the federal and state courts of the State of California, and admitted to practice *pro hac vice* before this Court.  I am employed by the Eclipse Group LLP, counsel of record for Defendant and Counterclaimant Tenza Trading Ltd. ("Tenza") in this action.  I have personal knowledge of the facts stated herein, except where indicated as on information and belief and, as to those, I believe they are true.  If called upon to do so, I could and would testify to the truth thereof.

2.  After discovering that Plaintiff and Counter-defendant Calista Enterprises Ltd. ("Calista") had registered, and was using, internet domains that included Tenza's federally-registered PORNTUBE trademark as part of their names, my firm promptly initiated a UDRP complaint with the National Aribtration Forum.  The UDRP ("Uniform Dispute Resolution Procedure") is the process mandated by the International Corporation for Assigned Names and Numbers ("ICANN"), an international non-profit corporation that administers top-level domains, e.g. .net, .com and .org, and oversees administrative disputes regarding rights in the domains through arbitration by 3-member panels.

3.  After Tenza initiated its UDRP complaint, Calista filed its TTAB cancellation petition and then requested that the UDRP proceeding by terminated or suspended because of the pendency of the TTAB action.  A true and correct copy of Calista's Request for Termination or Suspension is attached hereto as Exhibit A.  Calista's request was denied by the UDRP panel as part of their final decision, a true and correct copy of which is attached hereto as Exhibit B.

4.  The UDRP proceeding required that the parties submit briefing, with supporting

DECLARATION OF PAUL N. TAUGER IN SUPPORT
OF DEFENDANT AND COUNTERCLAIMANT'S
OPPOSITION TO PLAINTIFF'S MOTION TO STAY



evidence, which both Calista and Tenza did.  After consideration of all submitted

pleadings, the UDRP panel issued a decision, a true and correct copy of which is attached

hereto as Exhibit B.

5. According to the on-line docket maintained by United States Patent and Trademark

Office Trademark Trial and Appeal Board ("TTAB"), Calista filed its petition to cancel

Tenza's trademark registration for PORNTUBE on April 10, 2013.  Calista requested that

the UDRP panel suspend Tenza's proceeding due to its filing of the cancellation petition

with the TTAB.  The UDRP panel declined to do so.  The TTAB issued a scheduling

order, a true and correct copy of which is attached hereto as Exhibit C.

6. On June 23, 2013, a TTAB-mandated discovery conference was conducted

telephonically.  I participated in that conference along with attorney Anna M.

Vradenburgh of my office, who is counsel of record for the TTAB cancellation

proceeding.

7. My office served its mandated Initial Disclosures in the TTAB action on July 21, 2013.

Calista, however, neither filed nor served its mandatory disclosures until October 2, 2013.

8. As of the date of this Declaration, Calista has done absolutely nothing in the TTAB

proceeding, other than to file and serve its mandatory Initial Disclosures 102 days after

they were due.  It has served no discovery and noticed no depositions.

9. I had several telephone conversations and exchanged emails with all three of Calista's

attorneys of record in this matter.  In an email exchange with attorney Sean Ploen, who is

counsel of record for Calista's TTAB petition, on October 17, 2013, stated the following:

    In addition to opposing the motion to stay the TTAB proceeding, we will move the

    Board to extend the discovery period, and will note your unwillingness to agree to



any extension whatsoever, even given the foregoing facts.  I expect that the discovery

extension motion will be submitted next week; in the event your position on this issue

changes, please let me know by no later than next Monday.

A true and correct copy of the entire email exchange is attached hereto as Exhibit D.

10. In response to the instant motion, as well as Mr. Ploen's confirmation that Calista would

be seeking an extension of discovery cut-off in the TTAB action, Tenza filed a motion to

stay the TTAB proceeding.  The TTAB has yet to rule on that motion.

11. The UDRP rules provide that an ordered transfer will be stayed if the non-prevailing

party, within 14 days of issuance of a transfer order, files a lawsuit to review the UDRP

panel's decision. ICANN Transfer Dispute Resolution Policy 3.5.  Calista's lawsuit was

filed on June 21, 2013, which was the last day Tenza could have prevented the transfer by

filing a legal action.  Tenza learned that Calista filed the instant lawsuit the day before a

TTAB-mandated Discovery Conference held on June 23, 2013

12. At the TTAB Discovery Conference, Calista's counsel asked if Tenza's counsel was

authorized to accept service of process.  I responded that we were not.  Calista's counsel

requested that I, "let them know if that changes."  Aside from that inquiry, and a

subsequent inquiry by email, on information and belief, Calista did absolutely nothing to

serve its complaint.  My understanding of the Hague Convention governing international

service of process, as well as my actual experience from having served a number of

foreign entities in federal actions, is that, unless a Hague signatory has specific provisions

to the contrary, service on a foreign entity may be effect either through the foreign

nation's Judicial Authority, or through other means, including, but not limited to, those

methods authorized by the forum state.  Accordingly, Calista could have simply mailed

Page 4 -    DECLARATION OF PAUL N. TAUGER IN SUPPORT
OF DEFENDANT AND COUNTERCLAIMANT'S
OPPOSITION TO PLAINTIFF'S MOTION TO STAY


ECLIPSE GROUP
2020 Main Street
Suite 600
Irvine, CA 92614
t:949.851.5000
f:949.851.5051

the Complaint to Tenza or, in an abundance of caution, "personally served" Tenza through delivery by Federal Express or DHL.  To my knowledge, however, Calista did nothing – it did not mail the Complaint, did not attempt service through an express delivery company, and certainly did not request Letters Rogatory from this Court addressed to the Judicial Authority of Cyprus, which is where Tenza is located.

13. When it became apparent that Calista was not going to serve its Complaint, my office sent a letter to Calista's ISP demanding that the domain names be transferred pursuant to the UDRP order.  We, of course, copied Calista's counsel on the letter.  Calista responded by sending a copy of the Complaint to their ISP and instructing them that they could not transfer the domains due to the pendency of the action.  At that point, it became clear that Calista had filed the instant litigation solely to prevent transfer of the domain names, and Tenza determined that it would file its answer and counterclaims without waiting to be served.

14. The parties conducted a telephonic FRCP 26(f) conference on September 12, 2013, but had to conclude it the following week due to mutual time constraints.  The conference took longer than expected because of Calista's insistence on what I deem to be an unnecessarily protracted discovery schedule.  Moreover, though I was willing to compromise on some of the cut-off dates, Calista's counsel indicated that they could not do so, "without their client's consent."  We were able to conclude the conference only by agreeing that our inability to arrive at a mutually-agreeable discovery schedule should be resolved by a FRCP 16 conference before Judge Simon.  Upon the conclusion of the Rule 26(f) conference, I prepared and served written discovery consisting of Requests for Admission, Requests for Production of Documents and Interrogatories.

Page 5 -     DECLARATION OF PAUL N. TAUGER IN SUPPORT
OF DEFENDANT AND COUNTERCLAIMANT'S
OPPOSITION TO PLAINTIFF'S MOTION TO STAY




ECLIPSE GROUP
2020 Main Street
Suite 600
Irvine, CA 92614
t: 949.851.5000
f: 949.851.5051

15. Both at the Rule 26(f) conference, and subsequently, I requested that Calista's counsel

identify dates when I could depose their client pursuant to FRCP 30(b)(6).  This request

was made several times, both verbally and in writing.  Calista's counsel advised that the

deposition would have to proceed in the Seychelles, where Calista was located.  Calista's

counsel also advised that they were in trial in the middle of December, and that attorney

Valentin Gurvits, represented as the only attorney on the matter capable of defending the

deposition, would be on vacation from late December to mid-January, and a deposition

could not take place before February, 2014.  Subsequently, Calista's counsel advised that

a deposition could proceed, "the last week of January."  I advised that deposing Calista in

the Seychelles posed no problem, and I would take the deposition in mid- to late

November, so as to avoid any conflict with Calista's counsel's trial.  I also expressed

surprise that, with three attorneys of record (not counting local counsel), one of them

could not be available to defend their client's deposition.  Nonetheless, Calista's counsel

refused to provide a date in November.  These discussions are documented in detail in the

email exchange attached as Exhibit E.


I swear under penalty of perjury pursuant to the laws of the United States and the states of

Oregon and California that the foregoing is true and correct.  Executed this 24th day of October,

2013, at Irvine, California.




Paul N. Tauger



ECLIPSE GROUP
2020 Main Street
Suite 600
Irvine, CA 92614
t:949.851.5000
f:949.851.5051

**Exhibit A**

ECLIPSE GROUP
2020 Main Street    t:949.851.5000
Suite 600    f:949.851.5051
Irvine, CA 92614



NATIONAL ARBITRATION
**FORUM**

Tenza Trading Ltd.
Ioanni Stylianou 6
2nd Floor, Flat 202
Nicosia, Cyprus 2002
**Complainant**

  v.

Calista Enterprises Ltd.
Global Gateway 1749
Rue de la Perle, Providence
Mahe Island, Seychelles
**Respondent**

**Domain Names in Dispute:**
largeporntube.com; goldporntube.com;
kissporntube.com; boxporntube.com;
pipeporntube.com; 69porntube.com;
royalporntube.com; bookporntube.com;
cubeporntube.com; freshporntube.com;
lustporntube.com; bonusporntube.com;
directporntube.com

**File Number:**
FA1303001491515

## REQUEST TO TERMINATE OR, IN THE ALTERNATIVE, SUSPEND ADMINISTRATIVE PROCEDURES PENDING LEGAL PROCEEDINGS

Respondent Calista Enterprises Ltd., having been advised that a Panel has not been appointed, and that the Decision in this matter has not been published, hereby requests that the Administrative Proceedings for the above reference Complaint be terminated, or in the alternative, suspended pending the outcome of the Petition for Cancellation of the Complainant's PORNTUBE mark (Reg. No. 3,936,197) filed by Respondent with the United States Patent and Trademark Office before the Trademark Trial and Appeal Board (ESTTA531542), pursuant to UDRP Rule 18(a).

As grounds for this request, the Respondent states as follows:

1.     Respondent filed a Petition with Cancellation of the PORNTUBE mark, attached hereto as <u>Annex 1</u>, before the PTO TTAB (ESTTA531542).

2.     As detailed in the Petition for Cancellation, Complainant has no rights in the marks PORNTUBE or PORN TUBE, the purported rights in which are the basis of its UDRP Complaint.

3.     The resolution of the Petition for Cancellation legal proceedings will be determinative for the issues being arbitrated in these Administrative Proceedings.

4.      Given that 11 out of the 13 domain names at issue were registered and the websites thereon were operating prior to the Complainant's registration of its purported trademark on April 29, 2011, the Complainant will not be materially prejudiced by the termination or suspension of the Administrative Proceedings pending the resolution of the Petition for Cancellation legal proceedings.

**5.      Given that, by Complainant's own admissions in its Complaint, Complainant worked with, fostered a relationship with, compensated and (as will be proven in Respondent's Response) explicitly rewarded Respondent for Respondent's activities on the disputed domain names for nearly <u>two years</u> without any objection, Complainant will not be materially prejudiced by the termination or suspension of the Administrative Proceedings pending the resolution of the Petition for Cancellation legal proceedings.**

Respectfully Submitted,

Respondent Calista Enterprises Ltd.
By its Attorney,


/s/ Matthew Shayefar
Matthew Shayefar, Esq.
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
617-928-1806
matt@bostonlawgroup.com

**Exhibit B**

ECLIPSE GROUP
2020 Main Street
Suite 600
Irvine, CA 92614
t:949.851.5000
f:949.851.5051



NATIONAL ARBITRATION FORUM

DECISION

Tenza Trading Ltd. v. Calista Enterprises Ltd.
Claim Number: FA1303001491515

## PARTIES

Complainant is **Tenza Trading Ltd.** ("Complainant"), represented by **Anna M. Vradenburgh** of **The Eclipse Group, LLP**, California, USA.  Respondent is **Calista Enterprises Ltd.** ("Respondent"), represented by **Matthew Shayefar** of **Boston Law Group, PC**, Massachusetts, USA.

## REGISTRAR AND DISPUTED DOMAIN NAMES

The domain names at issue are **<largeporntube.com>**, **<goldporntube.com>**, **<kissporntube.com>**, **<boxporntube.com>**, **<pipeporntube.com>**, **<69porntube.com>**, **<royalporntube.com>**, **<bookporntube.com>**, **<cubeporntube.com>**, **<freshporntube.com>**, **<lustporntube.com>**, **<bonusporntube.com>**, and **<directporntube.com>**, registered with **Moniker Online Services LLC.**

## PANEL

The undersigned certify that they have acted independently and impartially and to the best of their knowledge have no known conflict in serving as Panelists in this proceeding.

Hugues G. Richard, David P. Miranda, and Paul DeCicco as Panelists.

PROCEDURAL HISTORY

Complainant submitted a Complaint to the National Arbitration Forum electronically on March 25, 2013; the National Arbitration Forum received payment on March 25, 2013.

On March 27, 2013, Moniker Online Services LLC confirmed by e-mail to the National Arbitration Forum that the **<largeporntube.com>**, **<goldporntube.com>**, **<kissporntube.com>**, **<boxporntube.com>**, **<pipeporntube.com>**, **<69porntube.com>**, **<royalporntube.com>**, **<bookporntube.com>**, **<cubeporntube.com>**, **<freshporntube.com>**, **<lustporntube.com>**, **<bonusporntube.com>**, and **<directporntube.com>** domain names are registered with Moniker Online Services LLC and that Respondent is the current registrant of the names.   Moniker Online Services LLC has verified that Respondent is bound by the Moniker Online Services LLC registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On April 12, 2013, the Forum served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of May 2, 2013 by which Respondent could file a Response to the Complaint, via e-mail to all entities and persons listed on Respondent's registration as technical, administrative, and billing contacts, and to postmaster@largeporntube.com, postmaster@goldporntube.com, postmaster@kissporntube.com, postmaster@boxporntube.com, postmaster@pipeporntube.com, postmaster@69porntube.com, postmaster@royalporntube.com, postmaster@bookporntube.com, postmaster@cubeporntube.com, postmaster@freshporntube.com, postmaster@lustporntube.com, postmaster@bonusporntube.com, postmaster@directporntube.com.  Also on April 12, 2013, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response was transmitted to

Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

Respondent submitted a Response, which was determined to be complete on May 2, 2013.

Complainant submitted an Additional Submission, which was determined to be complete on May 7, 2013.

On May 21, 2013, pursuant to Respondent's request to have the dispute decided by a three-member Panel, the National Arbitration Forum appointed Hugues G. Richard, David P. Miranda, and Paul DeCicco as Panelists.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the National Arbitration Forum has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2.

## RELIEF SOUGHT

Complainant requests that the domain names be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

A. Complainant

Policy ¶ 4(a)(i)

The Complainant holds the following trademark registrations for the PORNTUBE mark:

    i.   United States Patent and Trademark Office ("USPTO") (Reg. No. 3,936,197 filed October 29, 2008, registered March 29, 2011).

    ii.   Canadian Intellectual Property Office ("CIPO") (Reg. No. TMA779,803 filed March 19, 2009, registered October 12, 2010).

    iii.   European Union Office for Harmonization in the Internal Market ("OHIM") (Reg. No. 8,725,401 filed October 29, 2008, registered June 2, 2010).

The PORNTUBE mark was assigned to the Complainant on February 16, 2011. Prior to that, it was continuously and consistently used by EMC Ideas, Inc. from May 2005 through early 2011. The PORNTUBE mark has been used by the Complainant since the assignment.

Therefore, the Complainant states that the Respondent's domain names are confusingly similar to Complainant's PORNTUBE mark.

Policy ¶ 4(a)(ii)

The disputed domain names were registered well after the PORNTUBE mark was granted trademark rights through Complainant's (and its predecessor in title) consistent and continuous use, and after the original filing date with the USPTO in 2008. Complainant registered the <porntube.com> domain name in 2004.

The Respondent is not commonly known by any of the disputed domain names. Respondent operates via an affiliate program through Complainant's business, and improperly registered the disputed domain names using Complainant's mark

without Complainant's permission. Respondent cannot demonstrate any legitimate noncommercial or fair use of the domain names. The resolving website offers listings of third party hyperlinks directing to adult entertainment services, of which Complainant was unaware.

Policy ¶ 4(a)(iii)

The Complainant asserts that the Respondent uses the disputed domain name strictly for commercial gain with the intent to divert consumers, since the Respondent was registered with Complainant's affiliate marketing program. From this, the Complainant argues that the Respondent attempts to link Internet users to different websites that feature services substantially similar or identical to Complainant's services under the PORNTUBE mark, and features links to unrelated adult websites throughout the Internet.

In any event, the Complainant states that the Respondent was well-aware of Complainant's rights in the PORNTUBE trademark, yet intentionally registered thirteen domain names using the PORNTUBE mark.

B. Respondent

Policy ¶ 4(a)(i):

The Respondent asserts that the Complainant's PORNTUBE mark consists of generic and descriptive designations for websites offering streaming adult-themed video content. To this extent, the Respondent has filed a petition for cancellation of the registration with the USPTO. The Respondent states that its domain names are not confusingly similar to Complainant's mark.

Moreover, the Respondent relies on the Complainant's agreement with the owner of the PORNOTUBE trademark where it was agreed that there would be no confusion between the marks PORNTUBE and PORNOTUBE. If there is no confusion between the trademarks subject to that agreement, the Respondent argues that the disputed domain names achieve the same result.

Policy ¶ 4(a)(ii):

Prior to the current dispute, Respondent operated websites that drove traffic to third party "porn tubes," including to Complainant's website through an affiliate marketing program. The Respondent explains that the Complainant's own explicit invitation compelled Respondent to join Complainant's affiliate program, and Respondent was responsible for more than 8% of the traffic visiting Complainant's website through the affiliate program. The Respondent states that this constitutes a *bona fide* offering of services.

Policy ¶ 4(a)(iii):

The Respondent asserts that it does not engage in bad faith by forwarding users to other porn tube websites. The website to which the disputed domain name redirects belongs to Complainant, and even if it did not, the use would not demonstrate an illegitimate service.

Moreover, the Respondent states that it does not disrupt Complainant's business by its use of the disputed domain names and is not a direct competitor of Complainant. Respondent does commercially benefit from its relationship with Complainant, although not as a result of consumer confusion.

Reverse Domain Name Hijacking:

Complainant engages in Reverse Domain Name Hijacking, as it cannot satisfy a single factor under the Policy.

C. Additional Submissions

Complainant

Complainant has established its rights in the PORNTUBE mark through trademark registrations in three different jurisdictions, and Respondent's petition to cancel the registration does not negate Complainant's rights. Complainant's PORNTUBE mark is inherently distinctive.

Therefore, the disputed domain names are confusingly similar to Complainant's mark, which Respondent admits in its Response.

The Complainant asserts that the Respondent is not known by any of the disputed domain names. The Complainant was not aware of the list of domain names that Respondent owned. The Complainant states that it did not own the PORNTUBE trademark prior to February of 2011, therefore any discussion between the operator of the <porntube.com> mark and Respondent is irrelevant.

With regard to the allegation of reverse domain name hijacking, the Complainant states that the Respondent's reverse hijacking claim was brought in bad faith, as Complainant owns three registered trademarks for the PORNTUBE mark.

The Complainant also provides that the Petition for Cancellation taken by the Respondent should not be determinative for the issues of the current proceedings.

Respondent

The Respondent reinforces its argument as to the fact that the Complainant knew of, fostered, encouraged, rewarded and profited from the Respondent's use of the disputed domain names for years.

The Respondent also argues that the Complainant's claim is barred by the doctrine of laches. In this regard, the Respondent emphasizes that this argument should not be mistaken as an admission that the Respondent has engaged in any wrongdoing.

The Respondent then purports to provide a point form list of contentions against the issues raised by the Complainant's additional submissions.

## FINDINGS BY THE MAJORITY OF THE PANEL

The Complainant Tenza Trading Ltd owns and operates an adult entertainment website under the domain name <www.porntube.com>. The Respondent owns and operates the thirteen (13) domain names at issue in the matter at bar.

Complainant uses the PORNTUBE mark to provide entertainment services, including adult entertainment in the form of photographs, videos, film clips, and other multimedia materials. Complainant (or its predecessor in title) first used its mark in interstate commerce in May of 2005, when its predecessor in interest marketed and advertised the services under the mark, and since that time Complainant's marketing efforts have resulted in worldwide sales of services using the PORNTUBE mark.

Complainant's website at its <porntube.com> domain name gets approximately 1.8 million unique visitors per day, and prior to its filing date, Complainant's commissions on sales were more than $2.7 million. One year later, in 2009,

Complainant's commissions on sales exceeded $5 million, and the number of unique visitors to its website nearly doubled.

Complainant's services under the PORNTUBE mark were well-known and well accessed by consumers.

The Complainant operates an affiliate marketing program in association with its trademark and websites, wherein affiliates earn money for traffic directed to the <porntube.com> website. Complainant pays webmasters approximately $80,000 per month, resulting to about 47 million visitors per month. Complainant has paid Respondent in excess of $132,140 over a period of 20 months for its services through the affiliate program.

For the reasons set out below, the majority of Panel (Hugues G. Richard and David P. Miranda) is of the opinion that the disputed domain names should be transferred in favor of the Complainant.

## DISCUSSION BY THE MAJORITY OF THE PANEL

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(2) Respondent has no rights or legitimate interests in respect of the domain name; and

(3) the domain name has been registered and is being used in bad faith.

<u>Identical and/or Confusingly Similar</u>

As provided for above, the Complainant owns numerous trademarks in multiple jurisdictions with regard to the PORNTUBE mark (U.S. Registration No. 3,936,197; Canadian Registration No. TMA 779,803; Community Trademark Registration No. 008,725,401). From the evidence, it is also clear that the Complainant has established common law right with regard to the PORNTUBE mark.

The Respondent has filed a Petition for Cancellation (*Calista Enters., Ltd v. Tenza Trading Ltd.*, cancellation proceeding no. 92057048 (TTAB Apr. 10, 2013). The Respondent also intends to pursue similar proceedings with regard to the Complainant's other trademark registrations of the PORNTUBE mark. Having regard to that Petition, the majority of the Panel notes that it has the discretion pursuant to Paragraph 18(a) of the *Rules for Uniform Domain Name Dispute Resolution Policy* to suspend or terminate the present proceeding, or proceed to a decision.

In consideration of the Complainant's rights in the PORNTUBE mark, the majority of the Panel will proceed to a decision.  While acknowledging the Respondent's Petition for cancellation of the U.S. Registration, the majority of the Panel notes that the U.S. Registration is on the principal Register; this is at the least an indication that the USPTO, at the time of registration, did not consider the PORNTUBE mark to be descriptive. Moreover, the trademark registrations in Canada and Europe, where similar legislation with regard to descriptiveness exists, are deemed valid. Even if the U.S. Petition for Cancellation was to be successful, this would not affect the validity of the Canadian and Community registrations. Furthermore, that Petition does not dismiss the Complainant's

established common law rights in the PORNTUBE mark, acquired through use since at least 2005. In any event, complainant's numerous trademark registrations were held to be sufficient to demonstrate Complainant's rights under the Policy. See *Honeywell Int'l Inc. v. r9.net*, FA 445594 (Nat. Arb. Forum May 23, 2005).

The majority of the Panel finds that the disputed domains names are confusingly similar to the Complainant's trademark. The PORNTUBE mark is readily apparent in the disputed domain names. The addition of an ordinary descriptive term does not detract from the overall impression of the use of the PORNTUBE mark in the disputed domain names. *See Sony Kabushiki Kaisha v. Inja, Kil*, D2000-1409 (WIPO Dec. 9, 2000) (finding that "[n]either the addition of an ordinary descriptive word . . . nor the suffix '.com' detract from the overall impression of the dominant part of the name in each case, namely the trademark SONY" and thus Policy ¶ 4(a)(i) is satisfied); *see also Am. Online Inc. v. Chinese ICQ Network*, D2000-0808 (WIPO Aug. 31, 2000) (finding that the addition of the numeral 4 in the domain name <4icq.com> does nothing to deflect the impact on the viewer of the mark ICQ and is therefore confusingly similar). Therefore, Policy ¶ 4(a)(i) is met in favor of the Complainant.

## Rights or Legitimate Interests

The majority of the Panel finds that the Complainant has made a *prima facie* case that the Respondent lacks rights and legitimate interest in the disputed domain names under Policy ¶ 4(a)(ii). The burden now shifts to the Respondent to show it does have rights or legitimate interest in the domain names. *See Hanna-Barbera Prods., Inc. v. Entm't Commentaries*, FA 741828 (Nat. Arb. Forum Aug. 18, 2006).

In consideration of the evidence, the majority of the Panel holds that the Respondent has not met that burden. The majority of the Panel notes in view of the evidence that the Respondent's domain names' sole purpose is to re-direct Internet users to commercial websites under an affiliate program. The use of domain names to direct Internet users to a commercial website (including the Complainant's) under an affiliate program is not a *bona fide* offering of goods or services under Policy ¶ 4(c)(i) or a legitimate noncommercial or fair use under Policy ¶ 4(c)(iii). *See Target Brands, Inc. v. Bealo Group S.A.*, FA 128684 (Nat. Arb. Forum Dec. 17, 2002); *see also AltaVista v. Krotov*, D2000-1091 (WIPO Oct. 25, 2000) (finding that use of the domain name to direct users to other, unconnected websites does not constitute a legitimate interest in the domain name).

Furthermore, it is difficult to find a *bona fide* offering when the Respondent uses without permission a domain name confusingly similar to a competitor's mark. *See L.F.P. Inc. v. Hustlertv.com*, FA104134 (Nat. Arb. Forum, March 11, 2002), *citing Am. Online, Inc. v. Fu*, D2000-1374 (WIPO Dec. 11, 2000) (finding that "[i]t would be unconscionable to find a *bona fide* offering of services in a respondent's operation of web-site using a domain name which is confusingly similar to complainant's mark and for the same business.").

Therefore, the majority of the Panel holds in favor of the Complainant with regard to Policy ¶ 4(a)(ii).

Registration and Use in Bad Faith

The majority of the Panel finds that Policy ¶4(a)(iii) is also met in favor of the Complainant. The Respondent's registration and use of the disputed domain names are in bad faith for two reasons.

The majority of the Panel holds that the Respondent registered the disputed domain names in bad faith under Policy ¶ 4(a)(iii) as shown by its actual knowledge of the Complainant's rights in the PORNTUBE mark. The evidence reveals that the Respondent was aware of the Complainant's use of the PORNTUBE mark. *See Yahoo! Inc. v. Butler*, FA 744444 (Nat. Arb. Forum Aug. 17, 2006) (finding bad faith where the respondent was "well-aware of the complainant's YAHOO! mark at the time of registration).

Moreover, the Respondent uses the disputed domain names to confuse consumers and to attract Internet traffic to its website, in order to receive commercial profit from third parties whose websites are linked to the Respondent's domain names. This demonstrates bad faith. The fact that the Complainant's website is among those third party websites is irrelevant as to the present inquiry.

Therefore, the majority of the Panel holds in favor of the Complainant under Policy ¶ 4(a) (iii).

### Reverse Domain Name Hijacking

Having found that the Complainant has satisfied Policy ¶ 4(a)(i), the majority of the Panel holds that the Complainant has not engaged in reverse domain name hijacking. *See World Wrestling Fed'n Entm't, Inc. v. Ringside Collectibles*, D2000-1306 (WIPO Jan. 24, 2001) ("Because Complainant has satisfied [all of] the elements of the Policy, Respondent's allegation of reverse domain name hijacking must fail"); see also Gallup, Inc. v. PC+s.p.r.l., FA 190461 (Nat. Arb. Forum Dec. 2, 2003) (finding no reverse domain name hijacking where complainant prevailed on the "identical/confusingly similar" prong of the Policy).

DISSENTING OPINION

I respectfully dissent and would suspend the proceeding pursuant to paragraph 18(a) of the Rules.  That Rule states:

> (a) In the event of any legal proceedings initiated prior to or during an administrative proceeding in respect of a domain-name dispute that is the subject of the complaint, the Panel shall have the discretion to decide whether to suspend or terminate the administrative proceeding, or to proceed to a decision.

Earlier this year the panel in *CRM Info Tech, LLC, d/b/a CRMIT.COM v. c/o CRMIT.COM; c/o CRMPLUSPLUS.COM* considered the applicability of Rule 18(a) and surveyed several decisions where UDRP panels deferred to ongoing extra-UDRP litigation in lieu of their reaching a decision on the merits. The list of cases is recounted below:

> *Salba Corp. N.A. v. X Factor Holdings*, FA 1443427 (Nat. Arb. Forum June 25, 2012) (holding that a UDRP arbitration should not proceed where there is pending litigation involving the same issues and requesting similar relief);

> *Your Baby Can, LLC v. Edmonds*, FA 1439429 (Nat. Arb. Forum May 29, 2012) (dismissing the complaint based on concurrent court proceedings that the complainant filed against the respondent that directly relates to the relationship between the parties);

> *The Gap, Inc. v. G.A.P Adventures Inc.*, FA 1419226 (Nat. Arb. Forum Feb. 13, 2012) (refusing to make a decision on the merits of the dispute under the UDRP when litigation involving the parties' various claims to trademark rights was active and relating to how those rights might affect, among other more significant issues, ownership of the disputed domain name);

*Bluemile, Inc. v. McCockin*, FA 1411110  (Nat. Arb. Forum Nov. 28, 2011) (finding that it was appropriate to have the issue be revisited and resolved within the court system where there was ongoing litigation in the U.S. District Court in Ohio relating to the disputed domain name where, despite the respondent not being a named defendant in the case, the complainant alleged that a representative of the defendant transferred the disputed domain name to the respondent in an attempt to circumvent the court order); and

*Acumen Enters., Inc v. Morgan*, FA 1381503 (Nat. Arb. Forum May 17, 2011) (finding that the dispute should be dismissed given that the complainant had filed a lawsuit in the U.S. District Court for the Northern District of Texas requesting the same relief requested of the Panel, and where the Panel noted that the relief of transfer of the domain name sought before the U.S. Court was essentially the same as the relief sought in the UDRP proceeding).

*CRM Info Tech, LLC, d/b/a CRMIT.COM v. c/o CRMIT.COM; c/o CRMPLUSPLUS.COM*, FA 1472279 (Nat. Arb. Forum January 16, 2013)

These cases and others, including *CRM Info Tech* itself, instruct that when during the pendency of a UDRP proceeding there is ongoing litigation that considers an essential UDRP issue, the UDRP case should be suspended or terminated.

About the time Complainant filed its Complaint with the National Arbitration Forum, Respondent filed its Petition for Cancellation with the Trademark Trial and Appeal Board ("TTAB") regarding Complainant's USPTO registration for PORNTUBE. *See Calista Enters., Ltd. v. Tenza Trading Ltd., cancellation proceeding No. 92057048* (TTAB Apr. 10, 2013). Respondent's Petition, as well as its UDRP papers, set out several arguments which support the position that

Complainant lacks trademark rights in the PORNTUBE mark because such mark is wholly generic or descriptive, despite the mark also being registered with several registries outside the United States. Respondent's contentions seem genuine, are reasonable and there is no indication that Respondent filed its Petition merely to delay the instant proceeding. Importantly, whether or not Complainant has rights in the PORNTUBE mark is a crucial consideration in deciding the case now before the Panel.

I do not argue with the Majority regarding their finding that Complainant's various trademark registrations are sufficient to support a conclusion that Complainant has rights in a mark for the purposes of the Policy ¶4(a)(i), and  would still not argue even if the PORNTUBE mark was not registered with the USPTO, since the mark is also registered elsewhere around the world.  However, the fundamental issue of whether or not Complainant's mark is generic or descriptive, which is now squarely before the TTAB, is critical to the Panel's inquiry regarding Respondent's rights or interests under Policy ¶4(a)(ii) and also to its inquiry regarding Respondent's bad faith under Policy ¶4(a)(iii). If Complainant's mark is generic or descriptive and has no secondary meaning, then the mark cannot be trademarked.  If PORNTUBE is not and never was a trademark, then Respondent cannot be acting in bad faith since Respondent could not have contemplated Complainant's non-existent trademark right when registering the at-issue domain name. Likewise, if the mark is generic or descriptive and has no secondary meaning; Complainant may not have priority rights as to the registration of a domain name containing what, under U.S. law would amount to merely descriptive terms. There may also be important implications from the TTAB's future findings regarding the applicability of one or more of the Policy ¶ 4(c) factors to respondent's claim of rights or interests in respect of the domain name.

Would the Majority's decision be the same if prior to the commencement of the instant UDRP action the TTAB had cancelled Complainant's USPTO registration for PORNTUBE, finding the mark to be generic and descriptive and without secondary meaning? Unless the answer to this question is an unequivocal "yes," which I believe it is not, I submit that any decision on merits by the Panel should at least be deferred until the TTAB weighs in. For the reasons stated above I would suspend the proceeding accordingly.

## DECISION OF THE MAJORITY OF THE PANEL

Having established all three elements required under the ICANN Policy, the majority of the Panel concludes that relief shall be **GRANTED**.

Accordingly, it is ordered that the **<largeporntube.com>**, **<goldporntube.com>**, **<kissporntube.com>**, **<boxporntube.com>**, **<pipeporntube.com>**, **<69porntube.com>**, **<royalporntube.com>**, **<bookporntube.com>**, **<cubeporntube.com>**, **<freshporntube.com>**, **<lustporntube.com>**, **<bonusporntube.com>**, and **<directporntube.com>** domain names be **TRANSFERRED** from Respondent to Complainant.

_____
Hugues G. Richard, Esq.
Arbitrator

Hugues G. Richard,

Presiding Panelist

_____
David P. Miranda, Esq.
Arbitrator

David P. Miranda

Panelist

Paul Michael  DeCicco, Esq.
Arbitrator

Dissenting, Paul DeCicco

Panelist

Dated: June 6, 2013

**Exhibit C**

ECLIPSE GROUP
2020 Main Street
Suite 600
Irvine, CA 92614
t:949.851.5000
f:949.851.5051

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
P.O. Box 1451
Alexandria, VA  22313-1451

Mailed:  April 12, 2013

Cancellation No. 92057048
Registration No. 3936197

TENZA TRADING
IOANNI STYLIANOU 6, 2ND FLOOR FLAT
NICOSIA, 2002 CYPRUS

Calista Enterprises Ltd.

v.

Tenza Trading

SEAN PLOEN
PLOEN LAW FIRM PC
 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402 UNITED STATES

**Millicent Canady, Paralegal Specialist:**

**A petition to cancel the above-identified registration has been filed.**
A service copy of the petition for cancellation was forwarded to
registrant (defendant) by the petitioner (plaintiff).  An electronic
version of the petition for cancellation is viewable in the electronic
file for this proceeding via the Board's TTABVUE system:
**http://ttabvue.uspto.gov/ttabvue/**.

**Proceedings will be conducted in accordance with the Trademark Rules of**
**Practice, set forth in Title 37, part 2, of the Code of Federal**
**Regulations ("Trademark Rules").**  These rules may be viewed at the
USPTO's trademarks page:  **http://www.uspto.gov/trademarks/index.jsp**.  The Board's
main webpage (**http://www.uspto.gov/trademarks/process/appeal/index.jsp**) includes
information on amendments to the Trademark Rules applicable to Board
proceedings, on Alternative Dispute Resolution (ADR), Frequently Asked
Questions about Board proceedings, and a web link to the Board's manual
of procedure (the TBMP).

**Plaintiff must notify the Board when service has been ineffective,**
**within 10 days of the date of receipt of a returned service copy or the**
**date on which plaintiff learns that service has been ineffective.**
Plaintiff has no subsequent duty to investigate the defendant's
whereabouts, but if plaintiff by its own voluntary investigation or
through any other means discovers a newer correspondence address for the
defendant, then such address must be provided to the Board.  Likewise,
if by voluntary investigation or other means the plaintiff discovers
information indicating that a different party may have an interest in

Cancellation No. 92057048

defending the case, such information must be provided to the Board.  The Board will then effect service, by publication in the Official Gazette if necessary.  *See* Trademark Rule 2.118.  In circumstances involving ineffective service or return of defendant's copy of the Board's institution order, the Board may issue an order noting the proper defendant and address to be used for serving that party.

**Defendant's ANSWER IS DUE FORTY DAYS after the mailing date of this order.**  (*See* Patent and Trademark Rule 1.7 for expiration of this or any deadline falling on a Saturday, Sunday or federal holiday.)  **Other deadlines the parties must docket or calendar are either set forth below (if you are reading a mailed paper copy of this order) or are included in the electronic copy of this institution order viewable in the Board's TTABVUE system at the following web address:  http://ttabvue.uspto.gov/ttabvue/.**

Defendant's answer and any other filing made by any party must include proof of service.  *See* Trademark Rule 2.119.  **If they agree to, the parties may utilize electronic means, e.g., e-mail or fax, during the proceeding for forwarding of service copies.**  *See* Trademark Rule 2.119(b)(6).

The parties also are referred in particular to Trademark Rule 2.126, which pertains to the form of submissions.  **Paper submissions, including but not limited to exhibits and transcripts of depositions, not filed in accordance with Trademark Rule 2.126 may not be given consideration or entered into the case file.**

| | |
|---|---|
| Time to Answer | 5/22/2013 |
| Deadline for Discovery Conference | 6/21/2013 |
| Discovery Opens | 6/21/2013 |
| Initial Disclosures Due | 7/21/2013 |
| Expert Disclosures Due | 11/18/2013 |
| Discovery Closes | 12/18/2013 |
| Plaintiff's Pretrial Disclosures | 2/1/2014 |
| Plaintiff's 30-day Trial Period Ends | 3/18/2014 |
| Defendant's Pretrial Disclosures | 4/2/2014 |
| Defendant's 30-day Trial Period Ends | 5/17/2014 |
| Plaintiff's Rebuttal Disclosures | 6/1/2014 |
| Plaintiff's 15-day Rebuttal Period Ends | 7/1/2014 |

**As noted in the schedule of dates for this case, the parties are required to have a conference to discuss:  (1) the nature of and basis for their respective claims and defenses, (2) the possibility of settling the case or at least narrowing the scope of claims or defenses, and (3) arrangements relating to disclosures, discovery and introduction of evidence at trial, should the parties not agree to settle the case.**  *See* Trademark Rule 2.120(a)(2).  Discussion of the first two of these three subjects should include a discussion of whether the parties wish to seek mediation, arbitration or some other means for resolving their dispute.  Discussion of the third subject should include a discussion of whether the Board's Accelerated Case Resolution (ACR) process may be a more efficient and economical means of trying the involved claims and

Cancellation No. 92057048

defenses.  Information on the ACR process is available at the Board's main webpage.  Finally, if the parties choose to proceed with the disclosure, discovery and trial procedures that govern this case and which are set out in the Trademark Rules and Federal Rules of Civil Procedure, then they must discuss whether to alter or amend any such procedures, and whether to alter or amend the Standard Protective Order (further discussed below).  Discussion of alterations or amendments of otherwise prescribed procedures can include discussion of limitations on disclosures or discovery, willingness to enter into stipulations of fact, and willingness to enter into stipulations regarding more efficient options for introducing at trial information or material obtained through disclosures or discovery.

The parties are required to conference in person, by telephone, or by any other means on which they may agree.  A Board interlocutory attorney or administrative trademark judge will participate in the conference, upon request of any party, provided that such participation is requested no later than ten (10) days prior to the deadline for the conference. *See* Trademark Rule 2.120(a)(2).  The request for Board participation must be made through the Electronic System for Trademark Trials and Appeals (ESTTA) or by telephone call to the interlocutory attorney assigned to the case, whose name can be found by referencing the TTABVUE record for this case at **http://ttabvue.uspto.gov/ttabvue/**.  The parties should contact the assigned interlocutory attorney or file a request for Board participation through ESTTA only after the parties have agreed on possible dates and times for their conference.  Subsequent participation of a Board attorney or judge in the conference will be by telephone and the parties shall place the call at the agreed date and time, in the absence of other arrangements made with the assigned interlocutory attorney.

**The Board's Standard Protective Order is applicable to this case, but the parties may agree to supplement that standard order or substitute a protective agreement of their choosing, subject to approval by the Board.**  The standard order is available for viewing at: **http://www.uspto.gov/trademarks/process/appeal/guidelines/stndagmnt.jsp**.  Any party without access to the web may request a hard copy of the standard order from the Board.  The standard order does not automatically protect a party's confidential information and its provisions must be utilized as needed by the parties.  *See* Trademark Rule 2.116(g).

**Information about the discovery phase of the Board proceeding is available in chapter 400 of the TBMP.  By virtue of amendments to the Trademark Rules effective November 1, 2007, the initial disclosures and expert disclosures scheduled during the discovery phase are required only in cases commenced on or after that date.**  The TBMP has not yet been amended to include information on these disclosures and the parties are referred to the August 1, 2007 Notice of Final Rulemaking (72 Fed. Reg. 42242) posted on the Board's webpage.  The deadlines for pretrial disclosures included in the trial phase of the schedule for this case also resulted from the referenced amendments to the Trademark Rules, and also are discussed in the Notice of Final Rulemaking.

**The parties must note that the Board allows them to utilize telephone conferences to discuss or resolve a wide range of interlocutory matters that may arise during this case.**  In addition, the assigned interlocutory attorney has discretion to require the parties to participate in a telephone conference to resolve matters of concern to the Board.  *See* TBMP § 502.06(a) (2d ed. rev. 2004).

Cancellation No. 92057048

**The TBMP includes information on the introduction of evidence during the trial phase of the case, including by notice of reliance and by taking of testimony from witnesses.** *See* TBMP §§ 703 and 704.  Any notice of reliance must be filed during the filing party's assigned testimony period, with a copy served on all other parties.  Any testimony of a witness must be both noticed and taken during the party's testimony period.  A party that has taken testimony must serve on any adverse party a copy of the transcript of such testimony, together with copies of any exhibits introduced during the testimony, within thirty (30) days after the completion of the testimony deposition.  *See* Trademark Rule 2.125.

**Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b).**  An oral hearing after briefing is not required but will be scheduled upon request of any party, as provided by Trademark Rule 2.129.

If the parties to this proceeding are (or during the pendency of this proceeding become) parties in another Board proceeding or a civil action involving related marks or other issues of law or fact which overlap with this case, they shall notify the Board immediately, so that the Board can consider whether consolidation or suspension of proceedings is appropriate.

**ESTTA NOTE:  For faster handling of all papers the parties need to file with the Board, the Board strongly encourages use of electronic filing through the Electronic System for Trademark Trials and Appeals (ESTTA).**  Various electronic filing forms, some of which may be used as is, and others which may require attachments, are available at **http://estta.uspto.gov**.

**Exhibit D**

**Paul N. Tauger**

| | |
|---|---|
| **From:** | Sean Ploen <sploen@ploen.com> |
| **Sent:** | Thursday, October 17, 2013 8:16 PM |
| **To:** | Paul N. Tauger |
| **Cc:** | Val Gurvits; Matthew Shayefar; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com |
| **Subject:** | Re: Deposition of Calista |

Hi, Paul --

  Per your request, I will communicate directly with Anna on any further matters concerning the TTAB proceeding, but I do need to clarify one point from your note.  You indicate, twice, that your intent is to depose Calista in person and not on written questions.  As you will recall, however, the TTAB's rules provide that:

*However, if the discovery deposition of such a person [as Calista] is taken in a foreign country, it must be taken on written questions, in the manner described in 37 CFR § 2.124, unless the Board, on motion for good cause, orders, or the parties stipulate, that the deposition be taken by oral examination.*

Absent Calista's consent, you are going to have to move the Board and show good cause for your preference to prevail.  Also, we both will need to keep in mind the Board's further directive on this point, namely:

*A party which wishes to take a deposition in a foreign country should first consult with local counsel in the foreign country, and/or with the Office of Citizens Consular Services, Department of State, in order to determine whether the taking of the deposition will be permitted by the foreign country, and, if so, what procedure must be followed.*

  Given the motion requirement, and the need to consult with local counsel and the State Department, your insistence that "the present discovery cut-off poses no obstacle" does seem optimistic.

  In any case, as to the substance of Calista's upcoming motion to extend discovery, I anticipate no need to "summarize" Tenza's position, but instead will simply quote your correspondence.

  Yrs.,

  Sean

_____

Sean Ploen
Ploen Law Firm, PC
Fifth Street Towers
100 South Fifth Street, Suite 1900
Minneapolis, MN  55402-1267

Direct:  (651) 894-6803
Fax:  (651) 894-6801

E-mail:  sploen@ploen.com

NOTICE:  This message and any attachments to it are intended for the use of the addressee.  This communication may contain information subject to the attorney-client privilege or which is otherwise confidential.  If you received the message in error, please notify the sender immediately by telephone or e-mail, and thank you in advance for your cooperation.

On Thu, Oct 17, 2013 at 8:52 PM, Paul N. Tauger <pnt@eclipsegrp.com> wrote:

Hi, Sean,

Our intent is to depose Calista in person, and not on written questions.  The present discovery cut-off poses no obstacle to our doing so, other than your on-going refusal to produce Calista in anything resembling a reasonable and timely fashion.  If you wish to depose Tenza by written questions, you are certainly free to do so though, of course, we are more than willing to produce our client in Cyprus, which is where Tenza is located.  As an accommodation to you (and Val and Matt), I had previously agreed to produce Tenza for deposition in Barcelona, which the residence of its principals; that offer remains open.  I agree that deposition on written questions is cumbersome (though not any more time consuming than taking an in-person deposition), which is why Tenza intends to depose Calista in person, as well as take provide its testimony, in person.  Accordingly, I see no compelling reason for extending the discovery cut-off in the TTAB proceeding.

If it is your intent to move the TTAB to extend the discovery cut-off you may, of course, certainly do so.  However, I would strongly caution you against communicating in your filing anything other than the fact of Tenza's opposition; please do not attempt to summarize the basis for Tenza's opposition as you have done, inaccurately, in your email.  Tenza will file its opposition as appropriate.  Also, as a reminder, Anna Vradenburgh is counsel of record for the TTAB proceeding; I am lead trial counsel for the federal action.  In the future, please communicate directly with her, rather than through me, for anything involving Calista's cancellation petition.

Regards,

Paul

**From:** Sean Ploen [mailto:sploen@ploen.com]
**Sent:** Thursday, October 17, 2013 6:36 PM
**To:** Paul N. Tauger
**Cc:** Val Gurvits; Matthew Shayefar; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** Re: Deposition of Calista

Hi, Paul --

Although your note is addressed to Val, please allow me to weigh in on the subject of the TTAB discovery schedule.  As you know, the parties have pending motions to stay in both the district court proceeding and the TTAB cancellation proceeding; both of those motions are early in the briefing process, with oppositions, let alone any replies or sur-replies,  not yet having been filed in either proceeding.  Nonetheless, you've made your position clear:  even if the district court proceeding is stayed while the TTAB proceeding moves forward, you "will not stipulate to an extension of the discovery cut-off in the cancelation [*sic*] proceeding, and we will oppose any effort by Calista to do so."

That clarity is unlikely to be endorsed by the Board.  The cancellation proceeding involves two parties who are foreign entities, and I note that in your initial disclosures, you did not indicate the country of residence of either Mr. Mathyssen or Mr. Cardone, but we assume that at least one of them resides in Spain, where Tenza is located, or in any event that Tenza's 30(b)(6) designee(s) reside there.  Given that, and in light of Calista's own foreignness, we're looking at multiple depositions to be conducted on written questions.  As you likely also know, the Board grants discovery extensions quite freely, particularly in circumstances where one or more of the entities is located outside the U.S.  Indeed, the Board itself acknowledges that "A deposition on written questions is a cumbersome, time-consuming procedure."  *See TBMP 404.07(j).*

 In addition to opposing the motion to stay the TTAB proceeding, we will move the Board to extend the discovery period, and will note your unwillingness to agree to any extension whatsoever, even given the foregoing facts.  I expect that the discovery extension motion will be submitted next week; in the event your position on this issue changes, please let me know by no later than next Monday.

Yrs.,

Sean

_____
Sean Ploen
Ploen Law Firm, PC
Fifth Street Towers
100 South Fifth Street, Suite 1900
Minneapolis, MN  55402-1267

Direct:  (651) 894-6803
Fax:  (651) 894-6801

E-mail:  sploen@ploen.com

NOTICE:  This message and any attachments to it are intended for the use of the addressee.  This communication may contain information subject to the attorney-client privilege or which is otherwise confidential.  If you received the message in error, please notify the sender immediately by telephone or e-mail, and thank you in advance for your cooperation.

On Wed, Oct 16, 2013 at 2:31 PM, Paul N. Tauger <pnt@eclipsegrp.com> wrote:

Dear Val,

I am, frankly, perplexed by both your response and your position.  We waived service only when it was apparent that you didn't intend to push the federal litigation forward for precisely the reason you have identified in your pending Motion to Stay, i.e. your sole interest was to block the transfer of the infringing domain names as ordered by the UDRP panel.  I find your suggestion that we should have assisted you in circumventing your obligations under the Federal Rules of Civil Procedure rather strange.  At the time of your inquiries, my office was not authorized to accept service, as I advised you.  Indeed, it was our client's hope that this dispute could be resolved informally, as I advised at the Rule 26(f) conference.  Moreover, service in Cyprus pursuant to the Hague Conventional is neither extremely  difficult nor particularly time-consuming, yet you failed to act for more than 3 months.  Now you have confirmed that the only reason for filing this matter was to frustrate the UDRP determination.  I still do not understand how you can maintain that this is, somehow, a legitimate and good-faith tactic, but we'll leave it to the federal court to make that determination.

With respect to the deposition, as you are aware, discovery cut-off in the TTAB proceeding is December 18, 2013.  Assuming your Motion to Stay succeeds, you will still have to produce your client for deposition prior to the date.  As I've indicated several times, every day of delay in resolution of this matter results in irreparable harm to our client; accordingly, we will not stipulate to an extension of the discovery cut-off in the cancelation proceeding, and we will oppose any effort by Calista to do so.

Moreover, as I've also explained, the TTAB proceeding will not be dispositive of any of the claims raised by either your complaint in the federal action or our counterclaim.  Though I admire your tenacity in sticking to your analysis of the issues while completely disregarding our own, I can assure you that, again assuming that the federal court grants your Motion to Stay, the federal litigation will continue, regardless of the determination of the TTAB; it is only a question of when.  I am also mystified by the significance you are attaching to the lone dissenting UDRP panelist.  Though that panelist dissented because he felt, procedurally, the UDRP decision should be stayed pending resolution of the cancelation proceeding out of deference to the TTAB, at no time did he express disagreement with the determination of the panel majority that Tenza's PORNTUBE mark was neither generic nor descriptive without acquired distinctiveness.  I would also note that, notwithstanding your contrary assertion, this case is not about the validity of Tenza's federally-registered trademark, but your client's infringement thereof (a fact that has already been adjudicated and confirmed by an independent entity of competent jurisdiction).

Nonetheless, because a deposition of your client pursuant to the cancelation proceeding is, of course, limited in scope to the issues presented and cannot, therefore, include examination on topics relevant to our counterclaim, a second deposition of your client will be necessary in the federal action. Should your Motion to Stay succeed, it is our intention to demand tha with respect to the second deposition, once the federal litigation resumes, either you produce your client at our offices in California for deposition or that you pay all of our client's costs, including attorney's fees, for conducting the second deposition in the Seychelles.

Regardless, I would appreciate knowing your thoughts as to how you intend to address the TTAB December 18th discovery cut-off in the context of a deposition of your client.

Best regards,

Paul

---

**From:** Val Gurvits [mailto:vgurvits@bostonlawgroup.com]
**Sent:** Monday, October 14, 2013 8:03 PM
**To:** Paul N. Tauger; Matthew Shayefar
**Cc:** sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** RE: Deposition of Calista

Dear Paul,

I respond to some of the more pertinent issues below:

1.  **Deliberate Delay**. When we first filed this action, we asked you – twice – if you are authorized to accept service of process on behalf of Tanza. You told us – twice – that you are not, thereby forcing us to investigate the expensive and lengthy process of serving a foreign defendant pursuant to the Hague Convention. Had you accepted service of process, this action would have commenced much sooner. It was your client's choice to delay us and to increase our expenses, by not allowing you to accept service. Under these circumstances your allegation of deliberate delay is both unfair and demonstrably untrue.

2.  **Pending Motion to Stay**. We had to file the present action to avoid the transfer of the disputed domains. As you know, we lost the UDRP process in a split decision 2-1. That means that one-third of the arbitrators agreed that Tanza does not have trademark rights in the "PornTube" trademark. I believe that the other two arbitrators were unfamiliar with trademark law and decided the case based on the mere fact that the

5

USPTO issued the trademark.  Who else then, but the USPTO, is better suited to decide whether "PornTube" should be a trademark or should be cancelled?  If the USPTO cancels the "PornTube" mark, as I am sure it will given how generic this phrase is, then all of the other issues in the present litigation (including the need to depose Calista) go away.  Hence, I can avoid a great deal of unnecessary expense for my client (and yours incidentally), if this lawsuit is stayed and if the validity of the "PornTube" mark is decided by the same administrative body that issued it in the first place.  That is hardly in bad faith (and please stop slinging these accusations).

3.    **Our trial in Miami**.  Attorney Matthew Shayefar is on the Miami case with me and, like me, his is completely underwater.  Also, although Matt is a very good attorney –he is a first year associate, having graduated law school just last year.  He is very smart, but has been practicing law for less than a year.  Attorney Sean Ploen is equally smart and is also a good attorney, but he is a trademark specialist and is on this litigation team only because of that particular expertise.  We all serve a specific purpose on this team, but of the three of us I am the only one qualified to prepare a client for a deposition and to defend it.  I attach hereto the present tracking order from the Miami Court – as you can see, it has deadlines and hearings scheduled all the way through most of December.  What you don't see on the attachment is that my co-counsel in that case, the law firm of Farella Braun and Martel, is withdrawing from the case and I am taking over as lead counsel.  The work associated with this hand-off is staggering.  I do not even have the time to write this e-mail, much less to attend a deposition in another country, which requires at least a four day commitment (two days of round-trip travel, one day for acclamation and one day for the depo itself).  We would agree to any date during the last week of January or the first week in February.  I can also send you photograph of my wife when she is happy and when she is angry if it helps - as you said, we all know that sometimes we must put our job ahead of our family obligations - but in this case it is quite simply unnecessary and uncalled for.

4.    **Premature Discovery**.  This case is about the validity of your client's "PornTube" trademark.  Your proposed deposition of my client will not address most of the validity issues.  Those issues will be addressed through expert testimony and surveys.  Generic use is not proven or disproven by a Calista deponent.  There is no reason for you to insist on taking this depo on an expedited     basis.  If your intention is merely to harass us, kindly consider your job well done.  We feel sufficiently harassed.

As I explained in more than sufficient detail, we are unavailable until late January for your proposed foreign deposition.  Should you, despite this exchange, serve a deposition notice for an earlier date, we shall seek the Court's intervention.  If you force us to belabor the Court with such intervention, I hereby reserve the right to seek costs.

Very truly yours,

Val Gurvits

Boston Law Group, PC

825 Beacon Street, Suite 20

Newton Centre, MA 02459

(617) 928-1804 direct

(617) 928-1800 main

(617) 928-1802 fax

vgurvits@bostonlawgroup.com


---------------------------------------------------------------------------

The contents of this message and any attachments are confidential and intended only for the addressee(s). This message may also be subject to attorney-client privilege. If you received this message in error, please notify Boston Law Group, PC immediately and destroy the original message.



Boston Law Group, PC

tel: 617/928-1800

e-mail: info@bostonlawgroup.com

---

**From:** Paul N. Tauger [mailto:pnt@eclipsegrp.com]
**Sent:** Monday, October 14, 2013 6:31 PM
**To:** Val Gurvits; Matthew Shayefar
**Cc:** sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** RE: Deposition of Calista



Dear Val,


Thank you for your response to my third request to identify dates as to when I can depose your client.  I think it would be easier if I address your concerns in bullet-point fashion.  Specifically:


1.   **Deliberate Delay**:  As you know, it is our position that Calista is engaging in every possible tactic to delay resolution on the merits of this lawsuit.  Calista filed its action only after it lost the UDRP and was faced with turning over the domain names to Tenza.  Rather than do so, it filed, but never attempted to serve, the action.  It is only because we waived service that this action is now moving forward.  As I have advised a number of times, Tenza will not tolerate unwarranted delay, and my instructions are to move this litigation

forward as quickly as possible. Accordingly, you will understand that I am less than receptive to your suggestion that my deposition of your client be deferred until February of next year.

2.  **Pending Motion to Stay**: As I advised Matt and Sean last week, our position is that the motion is brought in bad faith, for the sole purpose of delaying further adjudication of this action. As you are well aware, the TTAB proceeding will resolve only whether the registration of our mark can be maintained (and, of course, we are confident that it will be). It does not address your client's infringement of PORNTUBE as a common-law mark, nor does it address our cybersquatting claim. Moreover, it does not address the extant order to turn over the domains to Tenza. I will elaborate at length about Calista's bad-faith in this matter in my opposition to your motion. However, I do not regard the motion as having a significant likelihood of success and, certainly, as not providing any basis for delaying discovery.

3.  **Your Trial in Miami**: As I mentioned at the outset of this matter, I always try to extend professional courtesies when possible. I regret that, here, it is not possible. There are three attorneys on the Plaintiff's side in your caption. I have never, in my entire career, had three attorneys at counsel table for a trial and many of those trials were, I'm sure, as complicated as, and considerably longer than, your pending Miami three-day trial. I would remind you that Tenza is deposing Calista; your only obligation is to defend.

4.  **Your Vacation**: I would very much like to accommodate your personal vacation schedule, and were it not for the clear prejudice to my client, I would do so. I, too, would enjoy a vacation over the holidays, but my professional obligations to my client's interests take precedence. Accordingly, I do not agree to simply declaring the holidays "off limits" to the prosecution of this matter. I would also again remind you that there are two other attorneys identified on the caption who are defending Calista.

5.  **"Premature" Discovery:** Discovery timing is determined by the Federal Rules of Civil Procedure and the Local Rules of the Oregon District Court. Per both those authorities, discovery may commence upon the completion of the Rule 26(f) conference, which concluded some weeks ago. I had attempted, in good faith, to set a discovery schedule at that conference. However, when it became apparent that (1) Calista would only agree to a long and drawn out discovery process, and (2) Matt lacked authority to agree to any compromise (which, in itself, was a violation of Rule 26), I withdrew my proposal and was quite clear that, absent movement on Calista's side, all of our proposals were off the table. Instead, we agreed that we would request the Court's assistance at the Rule 16 conference. We have both, in good faith, made telephone requests for a conference and and, per agreement, we will be filing a formal joint request. Nonetheless, the discovery schedule addresses only cut-offs; the Federal and Local Rules address when discovery begins. There are certainly no disputes regarding commencement of discovery, and the only variation from the Federal Rules governing depositions that was discussed was mutually cooperating in the event a deposition ran over time. Accordingly, it is hardly "premature" for me to take Calista's deposition and, moreover, it is solely my determination when in the discovery process to do so. You know, I am sure, that there is no such thing as priority in deposition scheduling. If you feel it is premature to depose Tenza, you are certainly free to wait as long as you feel appropriate before noticing its deposition. I do not feel it is premature to depose Calista, particularly in light of Calista's Rule 26(a) disclosures, and propose to do so as soon as I can arrange the logistics of the deposition.

6.  **Protective Order Status:** We do not need to negotiate the protective order before I take the deposition. However, that is a quick and pro forma process. I have sent a standard, draft protective order to Matt for review. Matt indicated he would like to make some changes. I'll review his changes and, I'm sure, have little in the way of objection. If you feel there is going to be problem vis-à-vis the order, you are certainly

free to file your own order with the court unilaterally and move for its entry prior to responding to discovery demands.

7.  **"Final Round of Pleadings":**  Calista filed its action in June and then did nothing to move it forward.  As I mentioned, no attempt was made at service of Tenza and, were it not for Tenza waiving service, this matter would still be moldering in files of the District Court.  It was Calista's decision to file this action – it chose the federal court venue and, in doing so, it implicitly agreed to follow the rules of the Oregon District Court.  Tenza has answered and counterclaimed, Calista has answered the counterclaim, and we have held our Rule 26(f) conference.  There is absolutely no credible reason, other than Calista's bad-faith efforts to delay resolution of this lawsuit on the merits, for Tenza putting off the deposition of your client.  As you know, injury from trademark infringement is both presumed and irreparable as a matter of law.  In this case, that harm is real and demonstrable; Calista is earning money from Tenza's trademark while, at the same time, harming Tenza's reputation.  Under no circumstances will Tenza tolerate this injury because Calista is engaging in what can charitably be called "questionable tactics" to delay prosecution of the litigation.  Alternatively, Calista can dismiss its federal complaint, in which case it can litigate its theory of genericness at its leisure in the TTAB.

8.  **"Complicated legal issues, extensive discovery/disputes":** I respectfully disagree.  There is nothing complicated about this matter: either Calista has the proof of generic use sufficient to destroy the source-identifying character of the PORNTUBE mark or it does not.  If it does, Calista may win (the Court would still have to decide the question of transfer of the domains based on UDRP standards).  If it doesn't, there is no question that we win; proving infringement by Calista of the PORNTUBE trademark is neither difficult nor dependent on complicated legal theories.  From my perspective, this is a garden variety trademark infringement action and, because it is infringement in an internet context, the most significant proof of infringement is readily available and much of it is already in our hands.

As you have indicated that the only impediment to proceeding with Calista's 30(b)(6) deposition is your personal schedule, and not your client's unavailability, I will be sending out a notice for this deposition to take place on November 21, 2013, in Mahe, Seychelles.  I am more than willing to discuss alternate dates, but under no circumstances will Tenza consent to deferring this deposition until February.

Please feel free to call me at your convenience if you have any questions or wish to discuss this matter further.

Best regards,

Paul

---

**From:** Val Gurvits [mailto:vgurvits@bostonlawgroup.com]
**Sent:** Monday, October 14, 2013 1:15 PM
**To:** Paul N. Tauger; Matthew Shayefar

**Cc:** sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** RE: Deposition of Calista

Dear Paul,

November 18th is both generally premature and is also impossible for us.  As you know are preparing for a two week December trial in the Miami Federal Court (1:11-cv-20427-KMW Disney Enterprises, Inc. et al v. Hotfile Corp. et al).  This is a huge trial with thousands of pages of exhibits and numerous witnesses including expert witnesses on both sides.  Our calendar is full – we have motions in limine and other motions to file and to defend, we have witnesses to prepare, and we ourselves have to prepare for the trial itself.  We simply do not time for an out-of-the country deposition in November.

The Miami trial is scheduled to end on December 20th and which point there may be a post-trial motions period and we are then running into the Holiday season.  My wife and I also have vacation plans through January 20th.  She hasn't seen me in a while due to the Miami trial prep so I appreciate your understanding with that regard.

That said, in our local counsel's experience practicing in this Court, depositions in mid-November in this case would be considered premature and unreasonable.  Also, we are informed that Oregon courts very much encourage counsel to agree on a mutually convenient and reasonable time and place for depositions rather than having one party unilaterally choose when the depositions are going to be.  I understand your desire to depose the Plaintiff as soon as possible, but given that discovery will likely go for the next 7 – 10 months, you still have plenty of time.

In considering the date of your proposed deposition, please also consider the following:

1.   We recently filed a motion to stay the present Action pending TTAB proceedings, which hasn't even been fully briefed yet.

2.   During our Rule 26 conferrals, although we were unable to agree on discovery extension deadlines, the parties contemplated depositions in 2014 and fact discovery cut-off at some point in mid-2014.  Even Mr. Taugers' proposed discovery cut-off was 5/15/14.

3.   The parties identified several discovery disputes during the Rule 26 conferral that need to be resolved prior to depositions.

4.   We need to negotiate and finalize the protective order before depositions commence.

5.   Both parties have contacted the Court to schedule the Rule 16 conference and address discovery disputes, and we are waiting to hear back from the Court.

6.   The final round of pleadings in this case was filed on 9/16/13.  In my experience, having depositions two months later is premature in any case, not to mention one like here involving foreign deponents, complicated legal issues, and extensive discovery/discovery disputes.

7.   We're just starting document discovery, which typically should be well underway before depositions commence. Indeed, defendant has served us with rather massive discovery requests, which will take time and resources to complete.

With the aforesaid in mind, I believe that February would be the earliest we should be scheduling foreign depositions and even then we should revisit that date in January to see what outstanding issues may arise.

Best regards,

Val Gurvits

Boston Law Group, PC

825 Beacon Street, Suite 20

Newton Centre, MA 02459

(617) 928-1804 direct

(617) 928-1800 main

(617) 928-1802 fax

vgurvits@bostonlawgroup.com

--------------------------------------------------------------------------

The contents of this message and any attachments are confidential and intended only for the addressee(s).  This message may also be subject to attorney-client privilege.  If you received this message in error, please notify Boston Law Group, PC immediately and destroy the original message.

Boston Law Group, PC

tel: 617/928-1800

e-mail: info@bostonlawgroup.com

**From:** Paul N. Tauger [mailto:pnt@eclipsegrp.com]
**Sent:** Friday, October 11, 2013 5:31 PM
**To:** Matthew Shayefar
**Cc:** sploen@ploen.com; Val Gurvits; Newman, Devon Z.; Anna M. Vradenburgh
**Subject:** Deposition of Calista


Dear Matt:


I'd previously asked you for convenient dates for deposing your client (you had previously indicated that the deposition would proceed in the Seychelles).  Time is growing short, given your trial in December which I would like, if possible, to accommodate as a courtesy.  Accordingly, I'd like to propose the week of November 18th, perhaps mid-week to allow for travel time for the US attorneys.


Please let me know if this is acceptable.


Best regards,


Paul


Paul N. Tauger


**THE ECLIPSE GROUP LLP**
2020 Main Street

Suite 600

Irvine, California 92614

t: 949.851.5000 x 110

f: 949.851.5051

ptauger@eclipsegroup.com

www.eclipsegrp.com


NOTE: In certain circumstances, our spam filters may inadvertently block or quarantine legitimate emails from clients and associates. Accordingly, if

your email contains important and urgent instructions and if we fail to acknowledge receipt of your email within 1 working day, please send your instructions to us by facsimile at 818.332.4205 or contact us by telephone at 818.488.8140.

**CONFIDENTIALITY NOTICE:** This message is being sent by or on behalf of a lawyer. It is intended for the exclusive use of the individual or entity that is the named addressee and may contain information that is privileged or confidential, or otherwise legally exempt from disclosure. If you are not the named addressee or an employee or agent responsible for delivering this message to the named addressee, you are not authorized to read, print, copy, retain or disseminate this message or any part of it. If you have received this message in error, please notify us immediately by e-mail, by telephone at 818.488.8140, or by facsimile at 818.332.4205, and discard any paper copies of this message.

**TREASURY NOTICE:** As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not written or intended to be used (and cannot be used) by any taxpayer for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code.

**Exhibit E**

ECLIPSE|GROUP
2020 Main Street
Suite 600
Irvine, CA 92614
t:949.851.5000
f:949.851.5051

**Paul N. Tauger**

| | |
|---|---|
| **From:** | Val Gurvits <vgurvits@bostonlawgroup.com> |
| **Sent:** | Wednesday, October 16, 2013 12:39 PM |
| **To:** | Paul N. Tauger; Matthew Shayefar |
| **Cc:** | sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com |
| **Subject:** | RE: Deposition of Calista |

Sir,

Your intentional misinterpretation of my last email pertaining to the reasons for the filing of the present action is not lost on anyone.  However, for the sake of clarity (although I can't fathom how you could have possibly extrapolated anything else from my last email), the present action was filed in order to prevent your client from using an illegitimate "trademark" to hijack my client's domains.

Val Gurvits
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
(617) 928-1804 direct
(617) 928-1800 main
(617) 928-1802 fax
vgurvits@bostonlawgroup.com

---------------------------------------------------------------------------
The contents of this message and any attachments are confidential and intended only for the addressee(s).  This message may also be subject to attorney-client privilege.  If you received this message in error, please notify Boston Law Group, PC immediately and destroy the original message.

Boston Law Group, PC
tel: 617/928-1800
e-mail: info@bostonlawgroup.com

---

**From:** Paul N. Tauger [mailto:pnt@eclipsegrp.com]
**Sent:** Wednesday, October 16, 2013 3:31 PM
**To:** Val Gurvits; Matthew Shayefar
**Cc:** sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** RE: Deposition of Calista

Dear Val,

I am, frankly, perplexed by both your response and your position.  We waived service only when it was apparent that you didn't intend to push the federal litigation forward for precisely the reason you have identified in your pending Motion to Stay, i.e. your sole interest was to block the transfer of the infringing domain names as ordered by the UDRP panel.  I find your suggestion that we should have assisted you in circumventing your obligations under the Federal Rules of Civil Procedure rather strange.  At the time of your inquiries, my office as not authorized to accept service, as I advised you.  Indeed, it was our client's hope that this dispute could be resolved informally, as I advised at the Rule 26(f) conference.  Moreover, service in Cyprus pursuant to the Hague Conventional is neither extremely  difficult nor particularly time-consuming, yet you failed to act for more than 3 months.  Now you have confirmed that the only reason for filing this matter was to frustrate the UDRP determination.  I still do not understand how you can maintain that this is, somehow, a legitimate and good-faith tactic, but we'll leave it to the federal court to make that determination.

1

With respect to the deposition, as you are aware, discovery cut-off in the TTAB proceeding is December 18, 2013.  Assuming your Motion to Stay succeeds, you will still have to produce your client for deposition prior to the date.  As I've indicated several times, every day of delay in resolution of this matter results in irreparable harm to our client; accordingly, we will not stipulate to an extension of the discovery cut-off in the cancelation proceeding, and we will oppose any effort by Calista to do so.

Moreover, as I've also explained, the TTAB proceeding will not be dispositive of any of the claims raised by either your complaint in the federal action or our counterclaim.  Though I admire your tenacity in sticking to your analysis of the issues while completely disregarding our own, I can assure you that, again assuming that the federal court grants your Motion to Stay, the federal litigation will continue, regardless of the determination of the TTAB; it is only a question of when.  I am also mystified by the significance you are attaching to the lone dissenting UDRP panelist.  Though that panelist dissented because he felt, procedurally, the UDRP decision should be stayed pending resolution of the cancelation proceeding out of deference to the TTAB, at no time did he express disagreement with the determination of the panel majority that Tenza's PORNTUBE mark was neither generic nor descriptive without acquired distinctiveness.  I would also note that, notwithstanding your contrary assertion, this case is not about the validity of Tenza's federally-registered trademark, but your client's infringement thereof (a fact that has already been adjudicated and confirmed by an independent entity of competent jurisdiction).

Nonetheless, because a deposition of your client pursuant to the cancelation proceeding is, of course, limited in scope to the issues presented and cannot, therefore, include examination on topics relevant to our counterclaim, a second deposition of your client will be necessary in the federal action.  Should your Motion to Stay succeed, it is our intention to demand tha with respect to the second deposition, once the federal litigation resumes, either you produce your client at our offices in California for deposition or that you pay all of our client's costs, including attorney's fees, for conducting the second deposition in the Seychelles.

Regardless, I would appreciate knowing your thoughts as to how you intend to address the TTAB December 18th discovery cut-off in the context of a deposition of your client.

Best regards,

Paul

---

**From:** Val Gurvits [mailto:vgurvits@bostonlawgroup.com]
**Sent:** Monday, October 14, 2013 8:03 PM
**To:** Paul N. Tauger; Matthew Shayefar
**Cc:** sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** RE: Deposition of Calista

Dear Paul,

I respond to some of the more pertinent issues below:

1. **Deliberate Delay**.  When we first filed this action, we asked you – twice – if you are authorized to accept service of process on behalf of Tanza.  You told us – twice – that you are not, thereby forcing us to investigate the expensive and lengthy process of serving a foreign defendant pursuant to the Hague Convention.  Had you accepted service of process, this action would have commenced much sooner.  It was your client's choice to delay us and to increase our expenses, by not allowing you to accept service.  Under these circumstances your allegation of deliberate delay is both unfair and demonstrably untrue.

2. **Pending Motion to Stay**. We had to file the present action to avoid the transfer of the disputed domains. As you know, we lost the UDRP process in a split decision 2-1. That means that one-third of the arbitrators agreed that Tanza does not have trademark rights in the "PornTube" trademark. I believe that the other two arbitrators were unfamiliar with trademark law and decided the case based on the mere fact that the USPTO issued the trademark. Who else then, but the USPTO, is better suited to decide whether "PornTube" should be a trademark or should be cancelled? If the USPTO cancels the "PornTube" mark, as I am sure it will given how generic this phrase is, then all of the other issues in the present litigation (including the need to depose Calista) go away. Hence, I can avoid a great deal of unnecessary expense for my client (and yours incidentally), if this lawsuit is stayed and if the validity of the "PornTube" mark is decided by the same administrative body that issued it in the first place. That is hardly in bad faith (and please stop slinging these accusations).

3. **Our trial in Miami**. Attorney Matthew Shayefar is on the Miami case with me and, like me, his is completely underwater. Also, although Matt is a very good attorney –he is a first year associate, having graduated law school just last year. He is very smart, but has been practicing law for less than a year. Attorney Sean Ploen is equally smart and is also a good attorney, but he is a trademark specialist and is on this litigation team only because of that particular expertise. We all serve a specific purpose on this team, but of the three of us I am the only one qualified to prepare a client for a deposition and to defend it. I attach hereto the present tracking order from the Miami Court – as you can see, it has deadlines and hearings scheduled all the way through most of December. What you don't see on the attachment is that my co-counsel in that case, the law firm of Farella Braun and Martel, is withdrawing from the case and I am taking over as lead counsel. The work associated with this hand-off is staggering. I do not even have the time to write this e-mail, much less to attend a deposition in another country, which requires at least a four day commitment (two days of round-trip travel, one day for acclamation and one day for the depo itself). We would agree to any date during the last week of January or the first week in February. I can also send you photograph of my wife when she is happy and when she is angry if it helps - as you said, we all know that sometimes we must put our job ahead of our family obligations - but in this case it is quite simply unnecessary and uncalled for.

4. **Premature Discovery**. This case is about the validity of your client's "PornTube" trademark. Your proposed deposition of my client will not address most of the validity issues. Those issues will be addressed through expert testimony and surveys. Generic use is not proven or disproven by a Calista deponent. There is no reason for you to insist on taking this depo on an expedited     basis. If your intention is merely to harass us, kindly consider your job well done. We feel sufficiently harassed.

As I explained in more than sufficient detail, we are unavailable until late January for your proposed foreign deposition. Should you, despite this exchange, serve a deposition notice for an earlier date, we shall seek the Court's intervention. If you force us to belabor the Court with such intervention, I hereby reserve the right to seek costs.

Very truly yours,

Val Gurvits
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
(617) 928-1804 direct
(617) 928-1800 main

(617) 928-1802 fax
vgurvits@bostonlawgroup.com

----------------------------------------------------------------------------
The contents of this message and any attachments are confidential and intended only for the addressee(s). This message may also be subject to attorney-client privilege. If you received this message in error, please notify Boston Law Group, PC immediately and destroy the original message.

Boston Law Group, PC
tel: 617/928-1800
e-mail: info@bostonlawgroup.com

---

**From:** Paul N. Tauger [mailto:pnt@eclipsegrp.com]
**Sent:** Monday, October 14, 2013 6:31 PM
**To:** Val Gurvits; Matthew Shayefar
**Cc:** sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** RE: Deposition of Calista

Dear Val,

Thank you for your response to my third request to identify dates as to when I can depose your client.  I think it would be easier if I address your concerns in bullet-point fashion.  Specifically:

1. **Deliberate Delay**:  As you know, it is our position that Calista is engaging in every possible tactic to delay resolution on the merits of this lawsuit.  Calista filed its action only after it lost the UDRP and was faced with turning over the domain names to Tenza.  Rather than do so, it filed, but never attempted to serve, the action.  It is only because we waived service that this action is now moving forward.  As I have advised a number of times, Tenza will not tolerate unwarranted delay, and my instructions are to move this litigation forward as quickly as possible.  Accordingly, you will understand that I am less than receptive to your suggestion that my deposition of your client be deferred until February of next year.

2. **Pending Motion to Stay**:  As I advised Matt and Sean last week, our position is that the motion is brought in bad faith, for the sole purpose of delaying further adjudication of this action.  As you are well aware, the TTAB proceeding will resolve only whether the registration of our mark can be maintained  (and, of course, we are confident that it will be).  It does not address your client's infringement of PORNTUBE as a common-law mark, nor does it address our cybersquatting claim.  Moreover, it does not address the extant order to turn over the domains to Tenza.  I will elaborate at length about Calista's bad-faith in this matter in my opposition to your motion.  However, I do not regard the motion as having a significant likelihood of success and, certainly, as not providing any basis for delaying discovery.

3. **Your Trial in Miami**:  As I mentioned at the outset of this matter, I always try to extend professional courtesies when possible.  I regret that, here, it is not possible.  There are three attorneys on the Plaintiff's side in your caption.  I have never, in my entire career, had three attorneys at counsel table for a trial and many of those trials were, I'm sure, as complicated as, and considerably longer than, your pending Miami three-day trial.  I would remind you that Tenza is deposing Calista; your only obligation is to defend.

4. **Your Vacation**:  I would very much like to accommodate your personal vacation schedule, and were it not for the clear prejudice to my client, I would do so.  I, too, would enjoy a vacation over the holidays, but my professional obligations to my client's interests take precedence.  Accordingly, I do not agree to simply declaring the holidays "off limits" to the prosecution of this matter.  I would also again remind you that there are two other attorneys identified on the caption who are defending Calista.

5. **"Premature" Discovery:** Discovery timing is determined by the Federal Rules of Civil Procedure and the Local Rules of the Oregon District Court. Per both those authorities, discovery may commence upon the completion of the Rule 26(f) conference, which concluded some weeks ago. I had attempted, in good faith, to set a discovery schedule at that conference. However, when it became apparent that (1) Calista would only agree to a long and drawn out discovery process, and (2) Matt lacked authority to agree to any compromise (which, in itself, was a violation of Rule 26), I withdrew my proposal and was quite clear that, absent movement on Calista's side, all of our proposals were off the table. Instead, we agreed that we would request the Court's assistance at the Rule 16 conference. We have both, in good faith, made telephone requests for a conference date and, per agreement, we will be filing a formal joint request. Nonetheless, the discovery schedule addresses only cut-offs; the Federal and Local Rules address when discovery begins. There are certainly no disputes regarding commencement of discovery, and the only variation from the Federal Rules governing depositions that was discussed was mutually cooperating in the event a deposition ran over time. Accordingly, it is hardly "premature" for me to take Calista's deposition and, moreover, it is solely my determination when in the discovery process to do so. You know, I am sure, that there is no such thing as priority in deposition scheduling. If you feel it is premature to depose Tenza, you are certainly free to wait as long as you feel appropriate before noticing its deposition. I do not feel it is premature to depose Calista, particularly in light of Calista's Rule 26(a) disclosures, and propose to do so as soon as I can arrange the logistics of the deposition.

6. **Protective Order Status:** We do not need to negotiate the protective order before I take the deposition. However, that is a quick and pro forma process. I have sent a standard, draft protective order to Matt for review. Matt indicated he would like to make some changes. I'll review his changes and, I'm sure, have little in the way of objection. If you feel there is going to be problem vis-à-vis the order, you are certainly free to file your own order with the court unilaterally and move for its entry prior to responding to discovery demands.

7. **"Final Round of Pleadings":** Calista filed its action in June and then did nothing to move it forward. As I mentioned, no attempt was made at service of Tenza and, were it not for Tenza waiving service, this matter would still be moldering in files of the District Court. It was Calista's decision to file this action – it chose the federal court venue and, in doing so, it implicitly agreed to follow the rules of the Oregon District Court. Tenza has answered and counterclaimed, Calista has answered the counterclaim, and we have held our Rule 26(f) conference. There is absolutely no credible reason, other than Calista's bad-faith efforts to delay resolution of this lawsuit on the merits, for Tenza putting off the deposition of your client. As you know, injury from trademark infringement is both presumed and irreparable as a matter of law. In this case, that harm is real and demonstrable; Calista is earning money from Tenza's trademark while, at the same time, harming Tenza's reputation. Under no circumstances will Tenza tolerate this injury because Calista is engaging in what can charitably be called "questionable tactics" to delay prosecution of the litigation. Alternatively, Calista can dismiss its federal complaint, in which case it can litigate its theory of genericness at its leisure in the TTAB.

8. **"Complicated legal issues, extensive discovery/disputes":** I respectfully disagree. There is nothing complicated about this matter: either Calista has the proof of generic use sufficient to destroy the source-identifying character of the PORNTUBE mark or it does not. If it does, Calista may win (the Court would still have to decide the question of transfer of the domains based on UDRP standards). If it doesn't, there is no question that we win; proving infringement by Calista of the PORNTUBE trademark is neither difficult nor dependent on complicated legal theories. From my perspective, this is a garden variety trademark infringement action and, because it is infringement in an internet context, the most significant proof of infringement is readily available and much of it is already in our hands.

As you have indicated that the only impediment to proceeding with Calista's 30(b)(6) deposition is your personal schedule, and not your client's unavailability, I will be sending out a notice for this deposition to take place on November 21, 2013, in Mahe, Seychelles. I am more than willing to discuss alternate dates, but under no circumstances will Tenza consent to deferring this deposition until February.

Please feel free to call me at your convenience if you have any questions or wish to discuss this matter further.

Best regards,

Paul

---

**From:** Val Gurvits [mailto:vgurvits@bostonlawgroup.com]
**Sent:** Monday, October 14, 2013 1:15 PM
**To:** Paul N. Tauger; Matthew Shayefar
**Cc:** sploen@ploen.com; Newman, Devon Z.; Anna M. Vradenburgh; thomas@prllaw.com
**Subject:** RE: Deposition of Calista

Dear Paul,

November 18th is both generally premature and is also impossible for us. As you know are preparing for a two week December trial in the Miami Federal Court (1:11-cv-20427-KMW Disney Enterprises, Inc. et al v. Hotfile Corp. et al). This is a huge trial with thousands of pages of exhibits and numerous witnesses including expert witnesses on both sides. Our calendar is full – we have motions in limine and other motions to file and to defend, we have witnesses to prepare, and we ourselves have to prepare for the trial itself. We simply do not time for an out-of-the country deposition in November.

The Miami trial is scheduled to end on December 20th and which point there may be a post-trial motions period and we are then running into the Holiday season. My wife and I also have vacation plans through January 20th. She hasn't seen me in a while due to the Miami trial prep so I appreciate your understanding with that regard.

That said, in our local counsel's experience practicing in this Court, depositions in mid-November in this case would be considered premature and unreasonable. Also, we are informed that Oregon courts very much encourage counsel to agree on a mutually convenient and reasonable time and place for depositions rather than having one party unilaterally choose when the depositions are going to be. I understand your desire to depose the Plaintiff as soon as possible, but given that discovery will likely go for the next 7 – 10 months, you still have plenty of time.

In considering the date of your proposed deposition, please also consider the following:

1. We recently filed a motion to stay the present Action pending TTAB proceedings, which hasn't even been fully briefed yet.
2. During our Rule 26 conferrals, although we were unable to agree on discovery extension deadlines, the parties contemplated depositions in 2014 and fact discovery cut-off at some point in mid-2014. Even Mr. Taugers' proposed discovery cut-off was 5/15/14.
3. The parties identified several discovery disputes during the Rule 26 conferral that need to be resolved prior to depositions.
4. We need to negotiate and finalize the protective order before depositions commence.
5. Both parties have contacted the Court to schedule the Rule 16 conference and address discovery disputes, and we are waiting to hear back from the Court.
6. The final round of pleadings in this case was filed on 9/16/13. In my experience, having depositions two months later is premature in any case, not to mention one like here involving foreign deponents, complicated legal issues, and extensive discovery/discovery disputes.
7. We're just starting document discovery, which typically should be well underway before depositions commence. Indeed, defendant has served us with rather massive discovery requests, which will take time and resources to complete.

6

With the aforesaid in mind, I believe that February would be the earliest we should be scheduling foreign depositions and even then we should revisit that date in January to see what outstanding issues may arise.

Best regards,


Val Gurvits
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
(617) 928-1804 direct
(617) 928-1800 main
(617) 928-1802 fax
vgurvits@bostonlawgroup.com


-------------------------------------------------------------------------
The contents of this message and any attachments are confidential and intended only for the addressee(s).  This message may also be subject to attorney-client privilege.  If you received this message in error, please notify Boston Law Group, PC immediately and destroy the original message.

Boston Law Group, PC
tel: 617/928-1800
e-mail: info@bostonlawgroup.com

---

**From:** Paul N. Tauger [mailto:pnt@eclipsegrp.com]
**Sent:** Friday, October 11, 2013 5:31 PM
**To:** Matthew Shayefar
**Cc:** sploen@ploen.com; Val Gurvits; Newman, Devon Z.; Anna M. Vradenburgh
**Subject:** Deposition of Calista

Dear Matt:

I'd previously asked you for convenient dates for deposing your client (you had previously indicated that the deposition would proceed in the Seychelles).  Time is growing short, given your trial in December which I would like, if possible, to accommodate as a courtesy.  Accordingly, I'd like to propose the week of November 18th, perhaps mid-week to allow for travel time for the US attorneys.

Please let me know if this is acceptable.

Best regards,

Paul

Paul N. Tauger

**THE ECLIPSE GROUP LLP**
2020 Main Street
Suite 600
Irvine, California 92614

t: 949.851.5000 x 110
f: 949.851.5051
ptauger@eclipsegroup.com
www.eclipsegrp.com

**NOTE:** In certain circumstances, our spam filters may inadvertently block or quarantine legitimate emails from clients and associates. Accordingly, if your email contains important and urgent instructions and if we fail to acknowledge receipt of your email within 1 working day, please send your instructions to us by facsimile at 818.332.4205 or contact us by telephone at 818.488.8140.

**CONFIDENTIALITY NOTICE:** This message is being sent by or on behalf of a lawyer. It is intended for the exclusive use of the individual or entity that is the named addressee and may contain information that is privileged or confidential, or otherwise legally exempt from disclosure. If you are not the named addressee or an employee or agent responsible for delivering this message to the named addressee, you are not authorized to read, print, copy, retain or disseminate this message or any part of it. If you have received this message in error, please notify us immediately by e-mail, by telephone at 818.488.8140, or by facsimile at 818.332.4205, and discard any paper copies of this message.

**TREASURY NOTICE:** As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not written or intended to be used (and cannot be used) by any taxpayer for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code.