**Thomas Freedman Jr.** (OSB No. 080697) thomas@prllaw.com
**Pearl Law LLC**
552 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel:     (503) 295-6296 | Fax: (503) 295-6344

**Valentin Gurvits** (*pro hac vice*) vgurvits@bostonlawgroup.com
**Matthew Shayefar** (*pro hac vice*) matt@bostonlawgroup.com
**Boston Law Group, PC**
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:     (617) 928-1800 | Fax: (617) 928-1802

**Sean Ploen** (*pro hac vice*) sploen@ploen.com
**Ploen Law Firm, PC**
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Tel:     (651) 894-6800 | Fax: (651) 894-6801

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| **CALISTA ENTERPRISES LTD.**, a Republic of Seychelles company,<br><br>    Plaintiff/Counter-defendant,<br><br>- v. -<br><br>**TENZA TRADING LTD.**, a Cyprus company,<br><br>    Defendant/Counterclaimant. | Case No. 3:13-cv-01045-SI<br><br>**CALISTA ENTERPRISES LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION** |

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**                                                              Page **1**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459                                              Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com                                                    Motion To Stay

Tenza Trading Ltd.'s ("Tenza") opposition to Calista Enterprises Ltd.'s ("Calista") Motion to Stay is filled with misrepresentations concerning the prior business relationship and dispute between the parties, baseless attacks on Calista and its counsel, and a misreading of Calista's Motion. Calista hereby replies to Tenza's Opposition, in support of the Motion to Stay.

## I.  INTRODUCTION

Tenza alleges that Calista's filing of this lawsuit was improper simply because Calista was unwilling to roll over and let Tenza take Calista's property after a UDRP adjudication process that failed to consider any of Calista's defenses and that awarded Tenza the disputed domains solely because Tenza had a trademark registration in its name. No attempt is made by Tenza to account for the fact that the UDRP process explicitly permitted Calista to file the instant lawsuit to prevent transfer of the domains so as to gain a proper and full adjudication of rights.

Despite caselaw to the contrary, Tenza argues that it now suffers "irreparable harm" while Calista holds onto its rightfully owned domain names. Opposition, pp. 13-15. Moreover, Tenza ignores the two-year period prior to the UDRP proceeding wherein Tenza engaged in a mutually beneficial relationship with Calista under which Tenza knew of and rewarded Calista's use of the domain names at issue. Complaint, ¶¶ 25-42. Tenza also fails to consider the permanent and irreparable harm that would inure to Calista were its domain names taken from it without a proper adjudication of rights, not just the "adjudication lite" of the UDRP proceeding.

Finally, Tenza mischaracterizes Calista's argument in its Motion to Stay as being based on the doctrine of primary jurisdiction. As argued in the Motion to Stay and below, Calista is not requesting a stay based on the doctrine of primary jurisdiction. In fact, the only reference Calista made to the primary jurisdiction doctrine was to specifically distinguish its request from that doctrine and the case law based upon it. *See* Motion to Stay, p. 13.

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**     Page **2**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459     Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com     Motion To Stay

## II.   ARGUMENT

### A.   Tenza's Recitation of the "Facts" is Misleading

Tenza's Opposition undertakes a lengthy recitation of "facts" which are misleading and mostly inapplicable to the issue at hand.  Because all the inaccuracies cannot be fully addressed in this Reply, Calista responds only to the most egregious and salient points below.  One particular inaccuracy must be addressed first:  Tenza claims that Calista's domains "were registered well after the PORNTUBE registration was granted to Tenza's predecessor-in-interest."  The trademark was registered on March 29, 2011.  Counterclaim, ¶ 9.  However, <u>eleven out of the thirteen</u> domain names at issue in this litigation were registered by Calista before March 29, 2011.  *See* Annex 2 (Amended) to UDRP Complaint, DE 3-1, p. 58.

   1.   <u>The UDRP Proceeding Has No Precedential Value and, In Any Case, Awarded the Domains to Tenza Without an Analysis of the Dispositive Issues</u>

Tenza makes much of the fact that the majority of the UDRP panel awarded the domains to Tenza, stating that it "expressly rejected" Calista's substantive contentions about the validity of the trademark.  Opposition, p. 1.  *See also* Opposition, p. 14 ("Calista has already been adjudicated an infringer of Tenza's rights in both its domain and trademark by the UDRP panel . . . .").  Although Calista briefed the panel on the invalidity of the trademark registration and other issues including laches, acquiescence and license, the majority of the panel instead chose to decide the issue based on "precedent" which effectively awards a trademark registration owner all corresponding domains regardless of whether that registration is actually valid and enforceable in a court of law.

For instance, ignoring the fact that Tenza actively sought out and paid Calista for Calista's services offered through the disputed domains, the majority of the panel found that Calista's services were not a *bona fide* offering of goods or services.  UDRP Decision, attached

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**                                                                                      Page **3**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459                                                     Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com                                                Motion To Stay

as Exhibit E of Complaint, DE 9-1, p. 12.  The majority then based its finding of "registration and use in bad faith" solely on the fact that it found that Calista knew Tenza used the term "porntube" before Calista registered the disputed domains.  *Id.* at 13.  The majority came to these decisions despite the fact that (a) there was no evidence that Calista knew of the trademark registration prior to registering the domains, (b) Calista hotly disputed the validity of the trademark in all forms, including its registration, and (c) Tenza and Calista had been working together for years prior and Tenza knew that Calista was using the domains during that time.  At no point in the decision did the panel analyze Calista's invalidity, license or laches arguments, but instead simply deferred to the existence of the registration.  *Id.* at 11-12.  The UDRP panel did not "reject" Calista's arguments – it simply chose not to address them.

These holes in the UDRP decision exemplify why courts have regularly held that the UDRP proceeding is simply "'adjudication lite' as a result of its streamlined nature and its loose rules regarding applicable law."  *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F. 3d 617, 624 (4th Cir. 2003).  *See also* Motion to Stay, p. 3-4.  It is for this reason that the UDRP rules explicitly allow for parties such as Calista, whose rights were not properly adjudicated in the proceeding, to file lawsuits such as this one to prevent the transfer of the domains.  *See* Uniform Domain Name Dispute Resolution Policy, ¶ 4(k), available at www.icann.org/en/help/dndr/udrp/policy.

  2.  <u>Any Delay Is Due Solely to Tenza</u>

Tenza baldly claims that Calista's use of the mandated judicial process is somehow simply an inappropriate attempt to harm Tenza.  Tenza's statements are wrong and push the bounds of proper advocacy to the Court.

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**　　　　　　　　　　　　　　　　Page **4**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459　　　　　　　　　Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com　　　　　　　Motion To Stay

The complaint in the instant litigation was filed on June 21, 2013.  Two business days later, on or about June 25, Calista attempted to effect service of process by asking Tenza's counsel if it would accept service on behalf of Tenza, which Tenza's counsel immediately and unwaveringly declined.  *See* Tauger Decl., ¶ 12.

Given the fact that Tenza is a Cyprus corporation (Counterclaim, ¶ 3), Calista was left with no choice but to begin serving Tenza either by the cumbersome Hague Convention provisions governing international service of process or by alternative service as granted by the Court.  Despite Tenza's counsel's statements to the contrary, Calista could not "have simply mailed the Complaint to Tenza or, in an abundance of caution, 'personally served' Tenza through delivery by Federal Express or DHL."  Tauger Decl., ¶ 12.  Although Cyprus has not objected to the use of postal channels under Article 10(a) of the Hague Convention, the Ninth Circuit has unequivocally held that such service would be ineffective under the Federal Rules of Civil Procedure.  *See Brockmeyer v. May*, 383 F.3d 798, 808-09 (9th Cir. 2004).  In the Ninth Circuit, under Rule 4(f), service of process by mail requires the intervention of the Court.  *Id.*[1]

After Tenza's initial refusal to accept service of process through its counsel who had represented it in the UDRP proceeding and who was representing it in the TTAB proceeding (and who is now representing it in this instant action), on July 16, 2013, Tenza's counsel attempted to side-step the present litigation by demanding of the UDRP administrator that it

---

[1] The Ninth Circuit held as follows:
> Today we join the Second Circuit in holding that the Hague Convention allows service of process by international mail. At the same time, we hold that any service by mail in this case was required to be performed in accordance with the requirements of Rule 4(f). Service by international mail is affirmatively authorized by Rule 4(f)(2)(C)(ii), which requires that service be sent by the clerk of the court, using a form of mail requiring a signed receipt. Service by international mail is also affirmatively authorized by Rule 4(f)(3), which requires that the mailing procedure have been specifically directed by the district court. Service by international mail is not otherwise affirmatively authorized by Rule 4(f).

*Brockmeyer*, 383 F.3d at 808-09.

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**                                                             Page **5**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459                                          Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com                                      Motion To Stay

order Calista's registrar to transfer the domains, despite Tenza's knowledge of the lawsuit and that such a transfer would be prohibited because the lawsuit had been filed. See Declaration of Matthew Shayefar in Support of Calista's Reply to Motion to Stay, Exhibit 1. In response to that baseless action, Calista's counsel responded to the misrepresentations Tenza's counsel made to the UDRP administrator and sent a copy of the Complaint to Tenza's counsel, even though Tenza's counsel was already well aware of the lawsuit. *Id*. Tenza's counsel did not respond to that communication. *Id.* at ¶ 3.

In an attempt to limit motion practice and prevent undue expense, Calista's counsel reached out to Tenza's counsel once again on August 5, 2013 to see if counsel would accept service on behalf of Tenza. *Id.*, Exhibit 2. Tenza's counsel once again declined. *Id.* But just a little more than two weeks later, Tenza filed its Answer to the Complaint on August 21, 2013. Docket No. 19. It is inexplicable how after months spent with knowledge of the suit and after repeatedly refusing to assist Calista in moving this suit forward, Tenza now claims that *Calista* is the party that caused any delay in moving this suit forward.[2]

Moreover, Tenza's position with regard to the scheduling of a deposition in November is completely unreasonable. Calista's counsel's objections to the deposition being scheduled in November were made in good faith and based on numerous factors which Calista fails to mention in its Opposition. *See* e-mails by Attorney Gurvits included as part of Exhibit E to

---

[2] It should go without saying however that even if Calista had not attempted to serve process, which it did, Calista was still acting entirely within the confines of the Federal Rules of Civil Procedure. For defendants not in a foreign country, service must only be completed within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m). The Complaint was filed on June 21, 2013, meaning that service would only have to be completed by Monday, October 21, 2013, which was still long after August 5, 2013 when Calista last asked Tenza to accept service. However, Tenza had to be served in a foreign country and therefore even this 120 deadline was inapplicable. *Id.*

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**                                              Page **6**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459                       Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com                        Motion To Stay

Tauger Decl. In any case, in an oral hearing on October 30, 2013, this Court directed that the Parties should agree to a deposition date in the latter half of January 2014.[3]

**B.      It is Within the Court's Power to Grant a Stay of these Proceedings**

    1.      <u>Calista's Motion is Not Premised on the Doctrine of Primary Jurisdiction and Therefore *Rhoades* is not Controlling</u>

Tenza's Opposition cites *Rhoades v. Avon Products*, 504 F.3d 1151 (9th Cir. 2007) for the proposition that this Court is precluded from staying the present action. However, the *Rhoades* opinion is specifically geared to the question of whether the Court may stay its proceedings based solely upon the doctrine of "primary jurisdiction." *See Rhoades*, 504 F.3d at 1162 ("The First and Second Circuits have both addressed similar circumstances, however, and have held that the primary jurisdiction rationale does not justify deferral. We agree.").

Calista's Motion to Stay is not based on the primary jurisdiction rationale, but instead on the Court's inherent power to control its own docket. *See* Motion to Stay, pp. 5-6. In fact, the only time "primary jurisdiction" is mentioned in Calista's entire Motion to Stay is when Calista explicitly distinguishes itself from *Rhoades* and its sister cases and states that its Motion is <u>not</u> premised on the primary jurisdiction doctrine. *Id.* at 12-13. Because the *Rhoades* holding is explicitly limited to the whether a Court may order a stay based only on primary jurisdiction grounds, its prohibition on such stays is not controlling here because Calista's Motion is premised on efficiency, *Id.* at 7-9 and additional considerations of equity, *Id.* at 10-13, as applied to the Court's inherent powers.

    2.      <u>The TTAB's Cancellation of Tenza's Mark Will Be Dispositive of All Issues</u>

Each and every one of Tenza's eight counterclaims against Calista depends wholly on the validity of Tenza's alleged trademark rights in the term "porn tube" or "porntube."

---

[3] It should be noted that Calista's counsel readily agreed to a deposition date of January 16, 2014.

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**                                    Page **7**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459                       Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com                        Motion To Stay

It is beyond dispute that Tenza's claims for Infringement of Registered Trademark (First Cause of Action) under 15 U.S.C. § 1114 and Common Law Trademark Infringement (Third Cause of Action) depend entirely on the validity of the mark.  Its Second Cause of Action, for Federal Unfair Competition, is also based on the validity of the trademark.  *See Blinded Veterans Ass'n v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1043 (D.C. Cir. 1989) ("If the name of one manufacturer's product is generic, a competitor's use of that name, without more, does not give rise to an unfair competition claim under section 43(a) [codified as 15 U.S.C. §1125(a)] of the Lanham Act.").  Tenza's Fourth Cause of Action for Counterfeiting specifically rests on the existence of a registered mark.  *See* 15 U.S.C. § 1116(d) ("In the case of a civil action arising under section 1114(1)(a) of this title . . . .") and § 1114(1)(a) ("Any person who shall, without the consent of the registrant . . . use in commerce any reproduction . . . of a registered mark . . . .").  Its cause of action for Cybersquatting requires that the mark be either distinctive or famous.  *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I) and (II).  *See also* 15 U.S.C. § 1125(c)(2)(A) (requiring a famous mark to be "a designation of source of the goods or services of the mark's owner").  The Sixth Cause of Action, Constructive Trust, explicitly states its reliance on the registration of the trademark and 15 U.S.C. §§ 1117(a) and 1115, which require valid trademark rights.  The cause of action for an Accounting relies on Sections 1116 and 1117 of Title 15 of the U.S. Code, which again require valid trademark rights.  And finally, Tenza's Eighth Cause of Action, for Conversion, also explicitly relies on Tenza's valid rights in the trademark.  *See* Counterclaim, ¶ 62 ("Counter-defendants interfered with Tenza's right to possession of its undivided interest in Tenza's federally-registered PORNTUBE trademark.").

If the TTAB finds that Tenza's PORNTUBE registration should be cancelled on the basis that the term is either generic or merely descriptive, Tenza will automatically be unable to assert

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**  
825 Beacon Street, Suite 20 | Newton Centre, MA 02459  
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **8**  
Calista's Reply in Support of  
Motion To Stay

any of its claims that depend wholly on the federal registration (dismissing causes 1 and 4). However, the very genericness or mere descriptiveness that would cause Tenza to lose its registration would be wholly destructive of any common law trademark rights or rights under Section 43(a) of the Lanham Act that Tenza may claim. In other words, once PORNTUBE is found to be generic or merely descriptive and lacking acquired distinctiveness, Tenza will be unable to assert rights under any applicable law, including common law, unfair competition law or cybersquatting (dismissing causes 2, 3, 5 and 8). Once there are no causes of action for infringement, the rest of the causes of action for a Constructive Trust (cause 6) and an Accounting (cause 7) will also be dismissed. Tenza's entire case rests upon the PORNTUBE term being distinctive and not generic or merely descriptive, and this single factor can be decided on by the TTAB.

    3.    <u>Caselaw and Tenza's Historic Business Relationship with Calista Foil Tenza's Claims of "Irreparable Harm"</u>

Tenza repeatedly claims that it is suffering "irreparable" harm without offering any evidence as to why the harm it alleges is irreparable. However, there is no presumption of irreparable harm here.

First, the case law, including every case cited by Tenza, explicitly states that such a presumption lies <u>only where a plaintiff has actually shown a likelihood of confusion</u> (which includes an extensive seven factor test). *See International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 826 (9th Cir. 1993) ("The district court found Jensen failed to establish a likelihood of confusion and thus there was no presumption of irreparable harm."); *Metro Pub., Lt. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm . . . ."). Tenza, however, has not shown a likelihood of confusion. Tenza relies

Val Gurvits | Matthew Shayefar | Boston Law Group, PC    Page **9**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459    Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com    Motion To Stay

solely on the UDRP decision to claim that "Calista has already been adjudicated an infringer." Opposition, p. 14. However, as shown above, the UDRP decision is faulty and carries no weight in this court.

Second, in any case, it appears that the Ninth Circuit has overruled an automatic presumption of irreparable harm in intellectual property cases following the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). In *Perfect 10, Inc. v. Google, Inc.*, the Ninth Circuit cited *eBay* and stated that the case "indicated that an injunction in a patent infringement case may issue only in accordance with 'traditional equitable principles' and warned against reliance on presumptions or categorical rules." 653 F.3d 976, 979 (9th Cir. 2011). The Ninth Circuit went on to state that such presumptions could not stand in copyright cases either. *Id.* at 981 ("In sum, we conclude that our longstanding rule that a showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm is clearly irreconcilable with the reasoning of the Court's decision in *eBay* and has therefore been effectively overruled." (internal quotes and citations omitted)). While the Ninth Circuit has yet to make an official ruling following *eBay* regarding such presumptions as they apply in trademark cases, it has indicated that such a presumption would not hold if the issue were to come before the Circuit. *See Flexible Lifeline Systems Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 997 (9th Cir. 2011); *Perfect 10*, 653 F.3d at 981, n. 2. District Courts have already declined a presumption of harm in related cases, acknowledging the broad reach of *eBay*. *See*, *e.g.*, *Leatherman Tool Group, Inc. v. Coast Cutlery Co.*, 823 F.Supp.2d 1150, 1157 (D. Oregon 2011) (no presumption of irreparable harm in false advertising).

Third, even if a likelihood of confusion had been shown (which it has not) and even if there were a presumption of harm (which there is not), this would still be only a presumption

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**  
825 Beacon Street, Suite 20 | Newton Centre, MA 02459  
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **10**  
Calista's Reply in Support of  
Motion To Stay

which could be rebutted.  Calista has put forth ample evidence that Tenza and Calista worked together successfully for two years before Tenza filed the UDRP complaint, and that during that time Tenza knew of Calista's use of the disputed domains.  Complaint, ¶¶ 25-42.[4]  It is simply disingenuous for Tenza to claim irreparable harm after two years of successful business relations wherein Tenza never once complained about Calista's domain names, despite explicit knowledge of them.

### III.    CONCLUSION

For the reasons herein and in the Motion to Stay, Calista respectfully requests that the Court grant its Motion to Stay Litigation Pending the Petition for Cancellation of Trademark Registration before the Trademark Trial and Appeal Board and other such relief as the Court may see fit.

---

[4] In addition to the allegations in Calista's Complaint, Calista has uncovered additional and prolific information which unequivocally shows Tenza's knowledge of Calista's domain names for those two years.  Such evidence has already been produced to Tenza in Calista's responses to Tenza's discovery requests.  As part of such evidence, Calista has provided documentation wherein Tenza's representative, Mr. Steve Matthyssen, explicitly states that he has the ability to view domain names, that he regularly uses that functionality and that he has visited Calista's websites.

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**         Page **11**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459                Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com                Motion To Stay

Dated: November 7, 2013

Respectfully Submitted,
Plaintiff/Counter-defendant
Calista Enterprises Ltd.
By its Attorneys,

/s/ Matthew Shayefar
Matthew Shayefar (*pro hac vice*)
Valentin Gurvits (*pro hac vice*)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:   (617) 928-1800
Fax:   (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

/s/ Thomas Freedman Jr.
Thomas Freedman Jr. (OSB No. 080697)
Pearl Law LLC
552 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel:   (503) 295-6296
Fax:   (503) 295-6344
thomas@prllaw.com

/s/ Sean Ploen
Sean Ploen (*pro hac vice*)
Ploen Law Firm, PC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Tel:   (651) 894-6800
Fax:   (651) 894-6801
sploen@ploen.com

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**                    Page **12**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459                  Calista's Reply in Support of
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com                  Motion To Stay