IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CALISTA ENTERPRISES LTD.,**

    Plaintiff,

    v.

**TENZA TRADING LTD.,**

    Defendant.

Case No. 3:13-cv-01045-SI

**OPINION AND ORDER**

Matthew Shayefar and Valentin David Gurvits, Boston Law Group, PC, 825 Beacon Street, Suite 20, Newton Centre, MA 02459; Sean Ploen, Ploen Law Firm, PC, 100 South Fifth Street, Suite 1900, Minneapolis, MN 55402; Thomas Freedman, Jr., Pearl Law LLC, 522 S.W. Fifth Avenue, Suite 1100, Portland, OR 97204. Attorneys for Plaintiff.

Anna M. Vradenburgh and Paul Nathan Tauger, The Eclipse Group LLP, 2020 Main Street, Suite 600, Irvine, CA 92614; Devon Zastrow Newman, Schwabe Williamson & Wyatt, PC, 1600-1900 Pacwest Center, 1211 S.W. Fifth Avenue, Portland, OR 97204. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

    Plaintiff Calista Enterprises Ltd. ("Calista") brings this action against Defendant Tenza Trading Ltd. ("Tenza"), seeking declaratory and injunctive relief to: (1) establish that Calista's registration and use of certain domain names is lawful; and (2) cancel Tenza's trademark registration for the mark "PORNTUBE," registration number 3,936,197 ("the '197 Registration"). Tenza has filed counterclaims for trademark infringement, unfair competition, counterfeiting, cybersquatting, and conversion, among other things. Plaintiff Calista moves to stay proceedings and discovery pending the Petition for Cancellation under consideration at the

PAGE 1 – OPINION AND ORDER

Trademark Trial and Appeal Board ("TTAB") that Calista filed contesting the validity of Tenza's trademark registration. Dkt. 26. For the reasons stated below, Calista's motion to stay is **DENIED**.

## STANDARDS

The Court has inherent power to control its docket "in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The exercise of this power is left to the Court's discretion. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112-13 (9th Cir. 2005). In considering a stay, the Court weighs three factors:

(1) "the possible damage that might result from a stay;"

(2) "the hardship or inequity a party might suffer in going forward" without a stay; and

(3) whether the stay would further "the orderly course of justice measured in terms of the simplifying of complicating issues, proof, and questions of law" that would result from a stay. *Id.* at 1110 (citing *CMAX*, 300 F.2d at 268).

The party seeking a stay "'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *CMAX*, 300 F.2d at 268 (quoting *Landis v. N. American Co.*, 299 U.S. 248, 255 (1936)). Neither the parties nor the issues need be identical in order to "stay proceedings in one suit . . . to abide the proceedings in another." *Landis*, 299 U.S. at 254. A court may exercise the stay "'whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.'" *Dependable Highway Exp. Inc. v. Navigators Ins. Co.*, 489 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted).

## BACKGROUND

Tenza is the owner of both an adult entertainment website at www.porntube.com and the '197 Registration. Tenza's business model is to route traffic to its website through an affiliate program, whereby operators of other adult entertainment websites ("affiliates") include links on their websites so that visitors "click through" to Tenza's website. Tenza then tracks each "click through" and compensates affiliates on a per-click-through basis. Calista participated in Tenza's affiliate program for two years. Calista contends that it separately registered and operated 13 domain names consisting of the '197 Registration with Tenza's knowledge and consent. Tenza asserts otherwise.

On March 25, 2013, Tenza filed a complaint against Calista under the Uniform Domain-Name Dispute Resolution Policy (the "UDRP") pursuant to the process mandated by the International Corporation for Assigned Names and Numbers ("ICANN"), which is an international non-profit corporation that administers the relevant domain names. The UDRP panel issued findings and an order that the 13 domain names registered by Calista, and at issue in this lawsuit, be transferred to Tenza. The ICANN rules of procedure provide that a party can challenge a UDRP panel determination in a "court of competent jurisdiction." ICANN, *Registrar Transfer Dispute Resolution Policy*, *available at* http://www.icann.org/en/help/dndr/tdrp (last visited Nov. 13, 2013).

On April 10, 2013, during the pendency of the UDRP proceedings, Calista filed a Petition for Cancellation of the '197 Registration before the TTAB of the United States Patent and Trademark Office (the "PTO"). Tenza states that aside from the late filing of initial disclosures, no discovery has been served and no depositions have been noticed in that action. Calista responds that the parties are in the discovery phase of the cancellation proceeding, but provides no specific arguments about the status of the action. On October 14, 2013, Tenza filed a motion

PAGE 3 – OPINION AND ORDER

to stay the TTAB cancellation proceedings in favor of the litigation pending before this Court. PTO, *TTABVUE. Trademark Trial and Appeal Board Inquiry System*, Proceeding No. 92057048, *available at* http://ttabvue.uspto.gov/ttabvue/ (last visited Nov. 13, 2013); Dkt. 30 ¶ 10. The TTAB has not yet ruled on that motion. *Id.*

Calista filed this lawsuit on June 21, 2013, against Tenza, specifically to prevent the transfer of the relevant domain names pursuant to the UDRP order. Calista alleges four claims for relief: (1) declaratory and injunctive relief pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(2)(D)(5); (2) declaration of non-infringement of the '197 Registration; (3) declaration of no unfair competition; and (4) cancellation of trademark registration pursuant to 15 U.S.C. § 1119. Dkt. 1. In its reply, Tenza alleges seven counterclaims, in addition to various affirmative defenses. Tenza's alleged counterclaims are for: (1) trademark infringement under 15 U.S.C. § 1114; (2) federal unfair competition pursuant to 15 U.S.C. § 1125(a); (3) common law trademark infringement; (4) counterfeiting pursuant to 15 U.S.C. § 1116; (5) cybersquatting pursuant to 15 U.S.C. § 1125(d); (5) unlawful receipt of profits as constructive trustees related to the infringement and counterfeiting counterclaims; (6) accounting of profits received under 15 U.S.C. §§ 1116 and 1117; and (7) conversion of the '197 Registration. Dkt. 19.

On October 7, 2013, Calista filed a motion to stay this litigation pending the Petition for Cancellation of the '197 Registration before the TTAB. Dkt. 26.

## DISCUSSION

Calista requests that the Court stay this litigation pending the Petition for Cancellation of the '197 Registration pending before the TTAB. Calista argues that a stay of this action would promote efficiency because Tenza's counterclaims are contingent upon Tenza having exclusive rights in the '197 Registration, and thus Tenza's counterclaims will be summarily decided by the

TTAB ruling. In support of its motion, Calista argues that Tenza will suffer no demonstrable harm or unfair prejudice if this action is stayed. Thus, Calista argues, because this case is in its "infancy" and because Calista filed the TTAB action at an earlier date, the TTAB proceeding should take precedence.

Tenza counters that this Court, and not the TTAB, is the appropriate venue for resolving trademark infringement issues. Tenza relies on the Ninth Circuit's opinion in *Rhoades v. Avon Products Inc.*, 504 F.3d 1151, 1163 (9th Cir. 2007), noting that the TTAB proceeding only addresses the availability of registration for Tenza's mark, and not, as a matter of law, Tenza's trademark rights. Tenza argues that because the TTAB decision is neither binding, dispositive, nor final, allowing the TTAB action to go forward would not promote efficiency. Tenza also argues that a stay of the instant action would result in irreparable harm to Tenza because Calista's infringement will continue unabated. Tenza further argues that deferring to the TTAB proceeding creates unnecessary delay because this Court will eventually be required to review the TTAB registration findings *de novo*.

**1.  Legal Standards**

The Court shares concurrent jurisdiction over the cancellation of a trademark registration with the PTO. 15 U.S.C. § 1119; *see also Rhoades*, 504 F.3d at 1163 (explaining that Congress permits proceedings in a "district court to challenge or affirm a federally registered mark in civil suits in which a federally registered mark is in issue, even without any prior resort to the [TTAB]"). Federal courts have the power to issue declaratory judgments pursuant to the Declaratory Judgment Act. 28 U.S.C. §§ 2201, 2202. Under the primary jurisdiction doctrine, when "there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility." *Rhoades*, 504 F.3d at 1162; *see also PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 77-80

PAGE 5 – OPINION AND ORDER

(1st Cir. 1996); *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 853-54 (2d Cir. 1988).

The pendency of a PTO proceeding may be a proper basis to forestall an action for declaratory relief pursuant to 28 U.S.C. § 2201 in some circumstances. For example, when the action involves "*only* the issue of whether a mark is entitled to registration," it would make sense "to resolve the registration claims at the TTAB first." *Rhoades*, 503 F.3d at 1165 (emphasis added) (quoting *Goya*, 846 F.2d at 853-54). By contrast, if "a potential infringement claim 'requires the district court to resolve much or all of [the registration issue], it would waste everyone's time not to settle the registration issue'" in the district court. *Id.* (quoting *PHC*, 75 F.3d at 81). The driving factor a court must consider is efficiency. *Id.*

### 2. The Motion to Stay is Inappropriate under *Rhoades* and Does Not Promote Judicial Efficiency

Pursuant to *Rhoades*, a court should not decline jurisdiction under 28 U.S.C. § 2201 where there are pending infringement claims that "require the district court to resolve much or all" of the registration issues. 504 F.3d at 1165. Similarly, under *CMAX*, a court should consider whether the stay would further "the orderly course of justice measured in terms of the simplifying of complicating issues, proof, and questions of law." 300 F.2d at 268. For the reasons discussed below, the Court finds that pursuant to *Rhoades* and *CMAX*, the issues pending in this case should not be delayed for a non-binding ruling from the TTAB.

First, Calista's attempt to distinguish the pending motion to stay from *Rhoades* is unpersuasive. Calista argues that the pending proceeding before the TTAB is a Petition for Cancellation not filed by a party claiming infringement and that the different procedural posture of this case distinguishes it from *Rhoades*. Calista's argument points to a distinction without significance. *See Rhoades*, 504 F.3d at 1164 (reasoning that "a procedural difference between"

two cases does not address the fundamental issue of whether "'the pendency of a PTO proceeding was . . . a proper basis to forestall' an action for declaratory relief" (quoting *Goya*, 846 F.2d at 850)). The key inquiry is whether the pending judicial action involves "the very subject of the [TTAB] cancellation proceeding." *PHC*, 75 F.3d at 79. Where the suit goes beyond a simple registration or cancellation challenge, the precise procedural posture of the two actions is immaterial. Instead, what matters is that Calista is requesting the Court to defer "a trademark declaratory relief action pending the completion of related TTAB proceedings." *Rhoades*, 504 F.3d at 1162. Calista also argues that, unlike *Rhoades*, this case is not about the direct invocation of the primary jurisdiction doctrine because Calista has not argued that the "TTAB *must* decide the validity" of the '197 Registration. The doctrine of primary jurisdiction, however, is less about mandatory rules of deference, but instead "a set of precedents that guide courts in deciding when an issue should be resolved in the first instance by an agency that has special competence to address it." *PHC*, 75 F.3d at 80.

Second, the TTAB proceedings are subject to relitigation, which makes deferral to the TTAB inefficient where pending infringement claims are at issue. As conceded by Calista, the "deciding factor" in invoking primary jurisdiction "should be efficiency." *See Rhoades*, 504 F.3d at 1165. Courts are disinclined to defer to TTAB proceedings on the grounds of efficiency where pending cases involve infringement claims. The PTO does not have exclusive jurisdiction over trademark issues, and even after the TTAB proceedings have concluded, the "parties may litigate these issues in federal court without previously exhausting their claims before the TTAB." *Id.* at 1164; *see also* 15 U.S.C. § 1071(b)(1). For example, a party that has not prevailed before the TTAB may appeal to the U.S. Court of Appeals for the Federal Circuit if no adverse party

objects to the proceedings, 15 U.S.C. § 1071(a), or alternatively elect for a *de novo* judicial trial, 15 U.S.C. § 1071(b).

Third, several of the asserted claims and counterclaims at issue in this suit go beyond the registration of Tenza's mark. Fundamentally, Tenza's trademark rights are not contingent on having a federally registered mark. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:3 (4th ed. 2005) ("Although a federal registration will give the owner of a mark important legal rights and benefits, the registration does not create the trademark. . . . [T]he absence or cancellation of a registration does not invalidate the trademark. It is the use of the mark to identify a single source which creates exclusive trademark rights." (footnote omitted)); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (explaining that § 43(a) of the Lanham Act "protects qualifying unregistered trademarks"). Calista erroneously argues that the Petition for Cancellation pending before the TTAB challenging the '917 Registration definitively determines the "validity of the mark." Dkts. 33 at 8, 5-1 at 17 (challenging the '197 Registration as generic and descriptive). Only some of the issues pending in this suit, however, are contingent upon the validity of the '917 Registration.

The scope of this lawsuit goes beyond a simple trademark registration challenge—specifically Calista's claim of non-infringement and Tenza's claim of infringement. As explained in *Goya*,

> [W]here . . . a district court suit concerns infringement, the interest of prompt adjudication far outweighs the value of having the views of the PTO. Whether a litigant is seeking to halt an alleged infringement or, as in this case, seeking a declaration of non-infringement, it is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights.

846 F.2d at 854-55 (citations omitted). The PTO itself cannot decide issues of trademark infringement, either by way of injunctive relief or damages. *See PHC*, 75 F.3d at 80 (comparing

PAGE 8 – OPINION AND ORDER

the TTAB's authority granted in 15 U.S.C. §§ 1063(a), 1064, 1067(a) with 15 U.S.C. §§ 1114-1119). Furthermore, Calista itself raises a claim that cannot be conclusively addressed by the PTO, that being, unfair competition. *Cf. Apple Computer, Inc. v. Podfitness, Inc.*, No. C 06-5805 SBA, 2007 WL 1378020, at *3 (N.D. Cal. May 10, 2007). There are many additional issues in this lawsuit and waiting for a threshold decision relating to registration from the TTAB would not be efficient. Under the standards from *Rhoades* and *CMAX*, the Court finds that deferring this case in favor of the TTAB proceeding is not in the interest of judicial efficiency and would not promote the orderly course of justice.

### 3. Granting the Motion to Stay Would Not Create a Clear Case of Hardship for Calista and May Cause Damage to Tenza

The Supreme Court has held that a petitioner for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255. The Ninth Circuit directs that courts consider: (1) the possible damage that might result from a stay; and, (2) the hardship or inequity a party might suffer in going forward without a stay. *CMAX*, 300 F.2d at 268. In the context of delaying a declaratory action alleging trademark infringement in favor of a TTAB proceeding, the First Circuit explained that "there is often some urgency" in continuing the litigation. *PHC*, 75 F.3d at 80. This is because "[o]ngoing harm, possibly irreparable, may be accruing." *Id.* In *Goya*, the Second Circuit explained that: "Delaying consideration of . . . claim[s] pending the outcome of [a] TTAB proceedings undercuts the purpose of declaratory relief by forcing [the party] to either abandon use of trademarks . . . or to 'persist in piling up potential damages.'" 846 F.2d at 854 (quoting *Dewey & Almy Chem. Co. v. Am. Anode, Inc.*, 137 F.2d 68, 71 (3d Cir. 1943)).

PAGE 9 – OPINION AND ORDER

Calista argues that staying the proceedings is efficient and that the special procedural posture of this case and the UDRP proceeding warrant deferring the question of validity of the '917 Registration to the TTAB. Calista's arguments focus on the potential benefits of staying this action. At the hearing, Calista also argued that it would be required to engage in more extensive discovery before this Court as compared to the TTAB proceedings. The requirement on Calista to litigate in this Court, however, is almost inevitable given that the TTAB proceedings are subject to *de novo* review in the district court; thus, more extensive discovery on issues beyond the validity of Tenza's trademark registration will not be avoided by delaying this case in favor of the TTAB proceeding. Moreover, Tenza correctly points out that Calista only serves to benefit from any further delay of the UDRP order issued in Tenza's favor. Tenza, on the other hand, has established a fair possibility that a stay would cause Tenza damage due to the cost of relitigation and the risks associated with unabated infringement. In sum, the first two factors from *CMAX*, considering the damage of staying litigation and the hardship of continuing litigation, weigh against Calista's motion. *See CMAX*, 300 F.2d at 268.

## CONCLUSION

Calista's Motion to Stay Litigation Pending the Petition for Cancellation of Trademark Registration Before the Trademark Trial and Appeal Board (Dkt. 26) is **DENIED**.

**IT IS SO ORDERED**.

DATED this 19th day of November, 2013.

                                                  /s/ Michael H. Simon
                                                Michael H. Simon
                                                United States District Judge