IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CALISTA ENTERPRISES, LTD., et al. ) ) Plaintiffs, ) ) v. ) ) TENZA TRADING, LTD., ) ) Defendant. ) ) | Case No. 3:13-CV-01045 January 31, 2014 Portland, Oregon |

TELEPHONIC DISCOVERY CONFERENCE

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL H. SIMON

UNITED STATES DISTRICT COURT JUDGE

```
 1                          APPEARANCES

 2   FOR THE PLAINTIFF:

 3   Matthew Shayefar
     Boston Law Group, PC
 4   825 Beacon Street
     Suite 20
 5   Newton Centre, MA 02459

 6   Sean Ploen
     Ploen Law Firm, PC
 7   100 South Fifth Street
     Suite 1900
 8   Minneapolis, MN 55402

 9   Valentin David Gurvits
     Boston Law Group, PC
10   825 Beacon Street
     Suite 20
11   Newton Centre, MA 02459

12   Thomas Freedman , Jr.
     Pearl Law LLC
13   522 SW 5th Avenue Suite 1100
     Portland, OR 97204

14

15   FOR THE DEFENDANT:

16   Paul Nathan Tauger
     The Eclipse Group LLP
17   2020 Main Street, Suite 600
     Irvine, CA 92614

18
     Anna M. Vradenburgh
19   The Eclipse Group LLP
     6345 Balboa Boulevard, Suite 325,
20   Building 11
     Encino, CA 91316

21
     Devon Zastrow Newman
22   Schwabe Williamson & Wyatt, PC
     1600-1900 Pacwest Center
23   1211 SW Fifth Avenue
     Portland, OR 97204

24

25
```

| | | |
|---|---|---|
| 1 | COURT REPORTER: | <u>Jill L. Erwin, CSR, RMR, RDR, CRR</u> |
| 2 | | Certified Shorthand Reporter |
| | | Registered Merit Reporter |
| 3 | | Registered Diplomate Reporter |
| | | Certified Realtime Reporter |
| 4 | | |
| 5 | | United States District Courthouse |
| | | 1000 SW Third Avenue, Room 301 |
| 6 | | Portland, OR 97204 |
| | | (503)326-8191 |
| 7 | | * * * |

```
 1         MR. TAUGER:  And I will happily do that,
 2  Your Honor.  There's a difference between cooperating with
 3  Calista to that extent, and essentially granting them an
 4  extension of discovery cutoff.  Tenza will undertake to do
 5  that with Mr. Matthyssen.
 6         THE COURT:  Very good.
 7     All right.  Next item on my list deals with, I think,
 8  Matthyssen and DreamStars Cash -- DreamStar Cash's --
 9     Is that what it's called "DreamStar Cash"?
10         MR. TAUGER:  DreamStar Cash.  That's correct.
11         THE COURT:  -- relationship with Tenza.  That's
12  Calista's interrogatory 7 and 8, request for production
13  numbers 28, 29, Calista's document request number 10.  And I
14  guess Calista says that -- well, let me ask Calista:  What
15  do you need there and why is that relevant?
16         MR. SHAYEFAR:  Matthew Shayefar, Your Honor.  It
17  seems to us that the entire operation of the porntube.com
18  website are run through DreamStar Cash.  And Tenza, I think,
19  as far as we can tell, is simply a shell company that owns
20  the trademark and perhaps owns the domain name.
21     So the relationship of what DreamStar Cash and
22  Mr. Matthyssen, who founded -- at the very least, founded
23  DreamStar Cash, do is highly relevant to find out what they
24  know and what relations they've had with Calista, because
25  with DreamStar does is essentially what Tenza does, okay.
```

1  And we -- it's important for us to be able to show the close
2  relationship with the two so that there's a basis for
3  showing that DreamStar Cash and Tenza --
4      THE COURT:  What am I missing?  I don't understand
5  why.  Calista's complaint is that there's a declaration of
6  non-infringement, primarily because the putative mark is
7  invalid.  So what difference does it make if Tenza is
8  basically a shell that does nothing but own the putative
9  mark and is operated through DreamStar Cash?  So what?
10     MR. SHAYEFAR:  The -- the -- Matthew Shayefar,
11 Your Honor.  It's relevant in that the relationship for two
12 years prior to the dispute starting was between Calista
13 and -- effectively all the communications between Calista,
14 and Tenza was through DreamStar.  So to the extent that
15 Tenza might try to separate itself from any of the actions
16 that DreamStar might have taken in order to immunize it
17 from any wrong that DreamStar might have done on its behalf.
18     THE COURT:  Well, I'm still not following.  What
19 is it that DreamStar might have done or not done that would
20 affect any of the allegations in Calista's complaint?
21     MR. SHAYEFAR:  We allege that -- Matthew Shayefar,
22 Your Honor.  We allege that DreamStar would be one that
23 allowed Calista to operate under these domain names at
24 issue, and it was DreamStar that -- that we -- knew
25 explicitly about these domain names.

1   THE COURT: Okay. And so then, to the extent that
2   there can't be infringement because Calista had the consent
3   or license of Tenza, part of Calista's argument might be
4   that it received that license through its interactions
5   through Matthyssen and DreamStar and therefore DreamStar --
6   it's relevant to discover DreamStar Cash because -- to show
7   that it was acting as essentially the agent for Tenza. Is
8   that it?
9   MR. SHAYEFAR: Mathew Shayefar, Your Honor. Yes.
10  MR. GURVITS: Val Gurvits again. One other point:
11  Again, because Mr. Matthyssen is in both places, which when
12  he does something, activities, on behalf of DreamStar, he
13  cannot then say that Tenza doesn't know about it.
14  THE COURT: Sure. Let me ask Mr. Tauger: Is
15  Tenza prepared to stipulate that the actions that DreamStar
16  took were taken either as an agent for or alterego of or at
17  least for purposes limited to this action, on the issues
18  related to this action, are actions that can be attributable
19  to Tenza?
20  MR. TAUGER: This is Paul Tauger, Your Honor. The
21  answer is yes, with a but dot, dot, dot.
22  The actions taken by DreamStar on behalf of Tenza from
23  the date of Tenza's existence forward we will stipulate were
24  attributable to Tenza, and we will further stipulate that
25  knowledge that DreamStar had -- my point, is it can be

imputed to Tenza. That's fine. I think we've been clear with Calista about this from the beginning.

What was explained to me at the conference call that we had on Monday was that they have some theory that this is all an alterego of Steve Matthyssen and/or Mike Cardone. And I don't know what their basis for that was. But none of that seems relevant.

And where I don't want them going in this -- they don't need to know anything about the ownership organization, profit distribution, employees -- you name it -- of DreamStar, except to the extent that it's relevant to this litigation. That they're ostensible agents for Tenza, we would stipulate.

THE COURT: Okay. Doesn't that take care of what you're entailed to, Calista?

MR. GURVITS: This is Val Gurvits. I believe it does.

THE COURT: Okay. The next item on my list is Tenza's sales, expenses, and profits from the putative mark. Interrogatory number 16. Request for productions 25 and 26.

Oh, let me pause. Let me ask our court reporter. Are you doing okay? We're about 75 percent through.

THE COURT REPORTER: I'm fine.

THE COURT: So interrogatory 16, request for production 25 and 26, topic number 16. These are Tenza's

```
                     C E R T I F I C A T E


CALISTA ENTERPRISES, LTD., et al.)
                                 )
                    Plaintiffs,  ) Case No. 3:13-CV-01045
                                 )
            v.                   )
                                 )
TENZA TRADING, LTD.,             )
                                 )
                    Defendant.   )
                                 )
```

TELEPHONIC DISCOVERY CONFERENCE

January 31, 2014

I certify, by signing below, that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled cause. A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/Jill L. Erwin, CSR, RMR, RDR, CRR
_____
Official Court Reporter          Date: February 7, 2014