2013 WL 4647492
Only the Westlaw citation is currently available.
United States District Court, N.D. California

Wayne Goldman; Harriet Scannon, Plaintiffs,
v.
Seawind Group Holdings Pty Ltd., et al., Defendants.

No. CV 13–01759 SI | Filed 08/29/2013

**Attorneys and Law Firms**

David Alan Makman, Robert Craig Matz, Makman & Matz LLP, San Mateo, CA, for Plaintiffs.

Charles M. Kagay, Spiegel Liao & Kagay, LLP, San Francisco, CA, for Defendants.

**Opinion**

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

SUSAN ILLSTON, United States District Judge

**\*1** Currently before the Court is defendants' motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of personal jurisdiction. Pursuant to Civil Local Rule 7–1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for August 30, 2013. Having carefully considered the papers submitted, the Court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss, for the reasons set forth below.

### BACKGROUND

Plaintiffs, a husband and wife, filed this suit against defendants alleging a breach of contract for the construction of a yacht. Defendant Koch was the director and sole proprietor of defendants Corsair Marine, Inc.; Corsair Marine Sales Pte Ltd.; Corsair Marine International Pte Ltd; and Corsair Marine International Co., Ltd (collectively "the Corsair companies"). Compl. ¶¶ 5–9. Defendant Ward is the director and sole proprietor of defendant Seawind Group Holdings Pty Ltd ("Seawind"), and Ward also does business as Seawind Catamarans Pty Ltd, Shipcove Pty Ltd, and Seawind Catamarans. *Id.* ¶¶ 3–4. Ward and Seawind now own the Corsair companies. *Id.* ¶¶ 3, 12, 36, 39, 45.

Plaintiffs allege that they contracted to purchase a "Corsair 50," a 50–foot catamaran and one of the first in its line, for $700,000. *Id.* ¶ 22. They paid a $70,000 deposit, and signed a Sales Contract with Corsair Marine Inc. on June 15, 2007. *Id.* ¶¶ 23–24; Ex. 3. Plaintiffs wired a series of progress payments to: Corsair Marine, Inc.; Corsair Marine International Co. Inc.; and Corsair Marine Sales Pte Ltd. *Id.* ¶ 26. Plaintiffs allege they paid a total of $520,000 to the Corsair companies. *Id.*

Under the terms of the Sales Contract, the Corsair 50 was scheduled to be completed by August 30, 2008. *Id.* ¶ 27. After a series of delays, on October 9, 2009, plaintiffs contacted Koch to express concerns regarding the delays, the workmanship, and over the financial viability of the Corsair companies. *Id.* ¶¶ 27–29. On November 10, 2009, plaintiffs entered into an Addendum to the Sales Contract with "Corsair Marine International Singapore Ltd" and "Corsair Marine Vietnam Ltd," which plaintiffs aver upon information and belief are non-existent companies. *Id.* ¶¶ 30–32; Ex. 7.

Plaintiffs learned that Ward and Seawind had offered to acquire the Corsair companies, but had purported to limit their liability to the Corsair 50 owners to $250,000 each. *Id.* ¶ 36. In September 2010, plaintiffs filed a suit against Corsair Marine Inc., Corsair Marine Sales Pte Ltd., and Corsair Marine International Pte Ltd. in the High Court of Singapore. *Id.* ¶ 37. They obtained a default judgement against these defendants in the amount of $969,195, and an injunction against the acquisition by Seawind. *Id.* ¶¶ 37–38. After negotiations, Ward on behalf of Seawind promised to pay plaintiffs $50,000 and complete their catamaran within 6–9 months, in exchange for a release from the injunction so that the purchase of the Corsair companies could be completed. *Id.* ¶¶ 3 9–42; Ex. 11. The "*Mareva* Agreement" was signed October 6, 2010. *Id.,* Ex. 11.

**\*2** However, Seawind did not begin work on plaintiffs' catamaran until July 2011, which under the *Mareva* Agreement was when the yacht should have been completed. *Id.* ¶ 44. On February 3, 2012, plaintiffs instituted arbitral proceedings against Seawind and Ward. *Id.* ¶ 57. Then on August 17, 2012, Seawind declared bankruptcy. *Id.* ¶¶ 46, 60. The arbitrator declared that Ward and Seawind could not be made parties to the arbitration because they were not signatories to an arbitration agreement. *Id.* ¶ 60. Plaintiffs entered into a Settlement Agreement with Koch and the Corsair companies that required those entities to complete the yacht. *Id.* ¶ 62, Ex. 14. On August 6, 2012, plaintiffs signed a Clarification Addendum that confirmed that Koch had the authority to enter into the agreement and added that time was of the essence. *Id.* ¶ 63, Ex. 15.

On October 1, 2012, after learning that work on the Corsair 50 had not even begun, plaintiffs sent a notice terminating the Settlement Agreement due to defendants' alleged breach. *Id.* ¶ 65. On March 18, 2013, they filed suit in this Court. The complaint asserts eight causes of action: (1) breach of contract—the Sales Agreement and Addendum, (2) breach of contract—the *Mareva* Agreement, (3) breach of contract—the Settlement Agreement, (4) conversion, (5) unfair competition in violation of California Business and Professions Code section 17200, (6) fraud, (7) promissory fraud, and (8) breach of the implied covenant of good faith and fair dealing.

Defendants argue that the case should be dismissed against defendant Ward because the Court lacks personal jurisdiction over him and service of process was insufficient; that no relief can be granted as to defendant Seawind because it has declared bankruptcy; and that claims 1, 2, 5, 7, and 8 should be dismissed against the remaining defendants for failure to state a claim.

## LEGAL STANDARD

### 1. Personal Jurisdiction

Personal jurisdiction over a nonresident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation omitted). Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir.2004). California law requires only that the exercise of personal jurisdiction comply with federal due process requirements. *See id.* at 800–01.

### 2. Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly,* 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.,* 536 F.3d 1049, 1055 (9th Cir.2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986).

**\*3** If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

## DISCUSSION

### 1. Jurisdiction Over Defendant Ward

#### A. Personal Jurisdiction

Defendants argue that this Court lacks personal jurisdiction over defendant Ward, a resident of Australia and the sole proprietor of Seawind. It is undisputed that the Court has personal jurisdiction over Seawind and the Corsair companies, which sell boats in California and have a dealership in Alameda, California. Additionally, the Corsair companies sold the Corsair 50 to plaintiffs in California, and the Sales Contract contains a forum selection clause which provides for resolution of all disputes in California. Defendant Ward admits that he travels to California, but argues that his travels are solely in a business capacity for Seawind or the Corsair companies. *See* Ward Decl. ¶¶ 5–6 (declaring "I conduct no personal business [in the United States]" and that "[t]he only business I conduct in the United States is performed on behalf of [Seawind and the Corsair companies], and in my capacity as an officer of those corporations.").

If a corporation is the alter ego of an individual defendant, or one corporation is the alter ego of another, a court may "pierce the corporate veil" and attribute the "contacts" of the corporation to the individual. *Certified Building Products, Inc. v. NLRB,* 528 F.2d 968, 969 (9th Cir.1976); *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1134 (9th Cir.2003). Thus, if plaintiffs have made a *prima facie* showing that Ward is the alter ego of Seawind or the Corsair companies, then this Court has personal jurisdiction over him.

To make a *prima facie* showing that Ward is an alter ego of the companies, plaintiffs must show: "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir.2001) (citation and quotation omitted). When courts consider the alter ego doctrine they look to numerous factors, including inadequate capitalization, commingling of funds and other assets, the holding out by one entity that it is liable for the debts of the other, identical equitable ownerships, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. *VirtualMagic Asia, Inc. v. Fil–Cartoons, Inc.,* 99 Cal.App. 4th 228, 245 (2002).

The complaint alleges that Seawind is the successor-in-interest to the Corsair companies. Compl. ¶ 45. Ward is the sole proprietor of Seawind, and also serves its Director and Secretary. *Id.* ¶ 68. The complaint also alleges a failure to follow corporate formalities, such as a failure to report the acquisition of the Corsair companies, and a failure to file an annual report since 2002. *Id.* Additionally, the complaint alleges that the Corsair companies and Seawind were undercapitalized, which caused them to eventually file for bankruptcy. *Id.* ¶¶ 46, 60, 68. Finally, the complaint alleges that Ward used the corporate shield to insulate himself and his companies by holding out Shipcove Pty Ltd, which he also owns, as the entity responsible for the completion of plaintiffs' catamaran. *Id.* ¶ 69. Accordingly, the Court finds that plaintiffs have made a *prima facie* showing that there is a unity of interest between Ward, Seawind, and the Corsair companies.

**\*4** Second, plaintiffs have also made a *prima facie* showing that failure to disregard their separate identities would result in fraud or injustice. Plaintiffs may have no other recourse to recoup any damages they suffered other than from Ward in his individual capacity, as Seawind has declared bankruptcy.

Accordingly, plaintiffs have made a *prima facie* showing that Ward is the alter ego of Seawind and the Corsair companies, and therefore the Court has personal jurisdiction over him.

**B. Service of Process**

Second, Ward argues that service of process upon him using FedEx was improper. This method of service was specified in the Sales Contract. Compl., Ex. 3 ¶ 10.4. As the Court has found that plaintiffs have made a *prima facie* case that Ward is an alter ego of the Corsair companies, then he is subject to the terms of this agreement, including the clause providing for service of process via FedEx.

**2. Failure to State a Claim**

**A. The Claims of Relief Against Defendant Seawind**

Defendant Seawind argues that no claim of relief can be brought against it because it has already passed through the Australian equivalent of bankruptcy, and therefore it is no longer liable for the claims alleged in the complaint. However, the complaint does not state whether Seawind has been fully discharged from bankruptcy or which of its debts were disclosed. The assertion of an affirmative defense in a motion to dismiss "depends on whether the allegations in the complaint suffice to establish that ground." *Jones v. Bock,* 549 U.S. 199, 215 (2007). The Court finds that the statements in the complaint regarding Seawind's bankruptcy are insufficient to establish that it cannot be found liable for the claims alleged in the complaint.

**B. First Cause of Action, Breach of the Sales Agreement**

Plaintiffs allege that defendants Koch, the Corsair companies, Ward, and Seawind breached the Sales Agreement, as modified by the Addendum. Compl. ¶¶ 80–85. First, defendants argue that the only defendant which signed the Sales Agreement was Corsair Marine Sales Pte Ltd., and therefore the remaining defendants are not liable for this alleged breach. However, as discussed *supra,* plaintiffs have alleged sufficient facts to assert that Seawind is the successor to the Corsair companies, and Ward is the alter ego of these companies. Additionally, plaintiffs state sufficient facts to allege that the Corsair companies were mistakenly omitted due to the fraud of Koch, and therefore the contract should be reformed. *See* Compl. ¶¶ 31–32.

Second, defendants argue that this cause of action is barred by *res judicata,* because plaintiffs obtained a judgment in a Singapore court against Corsair Marine Sales Pte Ltd and Corsair Marine International Pte Ltd. However, as defendants admit, there is no preclusive effect against the remaining defendants, because they were not parties to the Singapore litigation. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir.1997). "The elements necessary to establish *res judicata* are: (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters Inc. v. U.S. Forest Serv.,* 399 F.3d 1047, 1052 (9th Cir.2005) (quotation marks and citation omitted); *see id.* A final judgement on the merits must have been actually litigated; an issue decided by default is not considered a litigated issue. *See* RESTATEMENT OF JUDGMENTS § 27 cmt. e (1982) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action."). The Singapore court entered a default judgment, not a decision on the merits as required to give the decision preclusive effect. Thus, this claim cannot be dismissed on the basis of *res judicata.*

**\*5** Third, defendants argue that the first cause of action is precluded by the subsequent *Mareva* Agreement, which bars the pursuit of claims against Seawind, Koch, or the Corsair companies. However, plaintiffs have alleged that the *Mareva* Agreement is unenforceable because it was procured by promissory fraud, and it was incapable of being performed. As

discussed *infra,* plaintiffs have pled sufficient facts to state a cause of action that this agreement is unenforceable.

Therefore, the Court finds that plaintiffs have sufficiently pled enough facts to make a claim for breach of the Sales Agreement that is plausible on its face.

### C. Second Cause of Action, Breach of the *Mareva* Agreement

Defendants argue that the second cause of action is precluded by the *Mareva* Agreement's arbitration clause, and thus this cause of action must be dismissed. The Federal Arbitration Act ("FAA") espouses a general policy favoring arbitration agreements. *AT & T Mobility LLC v. Concepcion,* 131 S.Ct. 1740, 1746 (2011); *Moses H. Cone Mem 'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 582 (2008). However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 474 (1989). Arbitration agreements may be invalidated by " 'generally applicable contract defenses, such as fraud, duress, or unconscionability. ' " *AT & T Mobility LLC,* 131 S.Ct. at 1746 (quoting *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). Whereas the validity or enforceability of a contract containing an arbitration provision is an issue for a court to decide, it is settled law in this Circuit that disputes as to the scope of the parties' agreement to arbitrate is for the arbitrator, not the Court. *See Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1119–20 (9th Cir.2008).

Pursuant to the *Mareva* Agreement, any breach of contract claim must be heard by an arbitrator. Plaintiffs argue that the arbitration clause in invalid because *Mareva* agreement was procured by promissory fraud and was incapable of being performed. However, this argument would invalidate the entire contract, and thus plaintiffs would not have a right to relief under a breach of contract theory. Moreover, if plaintiffs were to allege that only the arbitration clause was invalid, that argument could not be heard by this Court – the scope of the arbitration clause must be decided by the arbitrator. Thus, this claim cannot be heard in this Court, and cannot be stated in a matter on which relief may be granted.

Accordingly, the second cause of action is DISMISSED WITHOUT LEAVE TO AMEND.

### D. Fifth Cause of Action, Unfair Competition

The fifth cause of action alleges that defendants violate California's Unfair Competition Law ("UCL"), which prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. The complaint alleges that defendants violate the UCL because they "hold themselves out to the public as 'Corsair Marine International,' but then instruct customers to wire monies to, and enter into contracts with, various legal entities that are fronts for the personal business activities" of Koch and Ward. Compl. ¶ 107. Furthermore, the complaint alleges that defendants breach the contracts and avoid liability by being intentionally undercapitalized, failing to comply with corporate formalities, shifting liability between entities, and having customers enter into transactions with nonexistent entities. *Id.*

**\*6** The term "fraudulent" in the UCL "does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived." *Saunders v. Superior Court,* 27 Cal.App. 4th 832, 839 (1994); *see also Boschma v. Home Loan Center, Inc.,* 198 Cal.App. 4th 230, 252–53 (2011) ("A common law fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for relief under the UCL."). However, the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b) applies to the UCL. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.2009). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quotations and citations omitted).

The complaint specifically alleges the actions that defendants took which would likely deceive the members of the public: they hold themselves out to the public as "Corsair Marine International," but then instruct customers to contract and transact with other entities that are merely "fronts" for the individual defendants. Then, the complaint lists specific methods through which defendants have allegedly deceived the public to avoid liability for breached contracts, such as being intentionally undercapitalized, failing to comply with corporate formalities, shifting liability between entities, and having customers enter

into transactions with non-existent entities. This is sufficiently specific for defendants to be on notice of the particular misconduct they have committed, so that they can defend against the charge by more than a mere blanket denial. Moreover, plaintiffs do not need to allege that defendants had a duty to disclose the fraud, as defendants argue. Such a duty is only required when the fraud was an act of omission. Here, the alleged acts of fraud were not acts of omission but affirmative misstatements and deceptive actions. Thus, plaintiffs have plead sufficient facts to state a claim under the UCL.

### E. Seventh Cause of Action, Promissory Fraud

Plaintiffs allege that defendant Ward committed promissory fraud because, when he promised plaintiffs he would complete the construction of their Corsair 50 in return for a release of the *Mareva* injunction, he never intended to keep that promise. Compl. ¶¶ 118–123. "Fraudulent intent must often be established by circumstantial evidence, and may be inferred from such circumstances as defendant's failure even to attempt performance." *Locke v. Warner Bros., Inc.,* 57 Cal.App. 4th 354, 368 (1997) (citations and quotations omitted). Pursuant to Rule 9(b), plaintiffs must plead specific facts showing that defendant entered into the agreement with the intention to not be bound by the contract. Defendants argue that plaintiffs' complaint fails to make such a showing.

The complaint incorporates paragraphs 43 through 47 in support of the contention that Ward never intended to be bound by the agreement. The complaint alleges that Ward was aware of the fact that Seawind faced company-ending liability due to the work-related death of an employee, and this is circumstantial evidence that he never intended to be bound by his agreement. Compl. ¶ 43. Plaintiffs also point to the fact that Seawind declared bankruptcy four months after the inquest into the employee's death was completed, which they argue is circumstantial evidence that Ward knew Seawind faced company-ending liability at the time he entered the agreement. *Id.* ¶ 46. Also, plaintiffs point to the fact that Seawind did not even begin construction on plaintiffs' yacht until the deadline for completion, which is circumstantial evidence showing that Ward had no intention of completing the yacht by the due date. *Id.* ¶ 44. In addition, plaintiffs allege that, shortly after they signed the agreement with Seawind Catamarans Pty Ltd, Ward "repudiated" his obligation to be bound by the contract, "stating that Seawind Group Holdings Pty Ltd would now be the entity acquiring the Corsair Group of Companies." *Id.* ¶ 45. The quick repudiation is circumstantial evidence that Ward never intended to be bound by the agreement. Finally, plaintiffs allege that Seawind did not maintain adequate capitalization to cover its liabilities to plaintiffs, which is further circumstantial evidence that Ward did not intend to honor the agreement.

**\*7** Therefore, the Court finds that plaintiffs have sufficiently pled enough facts to make a claim for promissory fraud that is plausible on its face.

### F. Eighth Cause of Action, Good Faith and Fair Dealing

Plaintiffs allege that Koch breached the implied covenant of good faith and fair dealing. Compl. ¶ 126. Under California law, all contracts contain an implied covenant of good faith and fair dealing. *Egan v. Mutual of Omaha Insurance Company,* 24 Cal.3d 809, 818 (1979). This covenant "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Id.*

Defendants argue that the complaint does not sufficiently allege the actions that Koch took which violated the implied covenant. However, the complaint alleges that Koch violated the covenant because he "engaged in conduct that is frustrating [plaintiffs'] rights to the benefits of the Sales Contract; to wit, by and through the use of various corporate entities, and non-existent entities, Mr. Koch has been able to avoid liability for breach of the Sales Contract." Compl. ¶ 126. This is sufficient to state a cause of action for a violation of the implied covenant of good faith and fair dealing.

Plaintiffs also allege that Ward breached the implied covenant of good faith and fair dealing by frustrating plaintiffs' rights under the *Mareva* Agreement. *Id.* ¶ 127. "Although an action for bad faith breach of the covenant of good faith and fair dealing sounds in tort, the duty of good faith and fair dealing derives from and exists solely because of the contractual relationship between the parties." *Austero v. National Cas. Co. of Detroit, Mich.,* 62 Cal.App.3d 511, 515 (1976). Thus, for this action to stand, the Court must be able to hear the contract claim. However, as explained *supra,* any cause of action pursuant to the *Mareva* Agreement must be brought before an arbitrator. Thus, the eighth cause of action cannot lie against Ward under the *Mareva* Agreement in this Court.

**Goldman v. Seawind Group Holdings Pty Ltd., Not Reported in F.Supp.2d (2013)**

Accordingly, the eighth cause of action is DISMISSED WITH LEAVE TO AMEND.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is DENIED IN PART and GRANTED IN PART. Docket No. 15.

**IT IS SO ORDERED.**

End of Document                                               © 2014 Thomson Reuters. No claim to original U.S. Government Works.