



Positive
As of: Jun 13, 2014

**DAN HOAG, dba DIVERSIFIED DRILLING, Plaintiff, v. SWEETWATER INTERNATIONAL, a corporation; and LARRY WEST, an individual, et al., Defendants.**

**CV-N-94-087-DWH**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**

*857 F. Supp. 1420*; *1994 U.S. Dist. LEXIS 15289*

**July 1, 1994, Decided**
**July 1, 1994, Filed; July 7, 1994, Entered**

**JUDGES:** [**1] HAGEN

**OPINION BY:** DAVID W. HAGEN

**OPINION**

[*1422] ORDER

### STATEMENT OF THE CASE

On November 10, 1992, plaintiff Daniel A. Hoag ("Hoag") brought an action for breach of contract against defendants Sweetwater International Corporation ("Sweetwater") and its president, Larry West ("West"), in the Second Judicial District Court of the State of Nevada. Sweetwater and West filed a Special Appearance and Motion to Quash Service of Process, claiming that neither defendant maintained sufficient minimum contacts to enable the Nevada Court to exercise personal jurisdiction. Hoag did not file an opposition, and the Nevada Court granted defendants' Motion To Quash Service.

On November 17, 1993, Hoag filed a second complaint in the Nevada Court. The complaint essentially repeated the claims asserted in the prior action, but added a sixth claim alleging breach of a distributorship agreement between Hoag and West. This action was then removed on grounds of diversity to this Court. Defendants move to dismiss Hoag's complaint for lack of personal jurisdiction (# 6), and argue that the doctrine of collateral estoppel precludes Hoag from relitigating the jurisdictional issues. Hoag opposes this motion (#10), claiming that the [**2] order quashing service of summons does not have preclusive effect on issues of jurisdiction, and that defendants have maintained sufficient minimum contacts with Nevada to allow this Court to exercise personal jurisdiction.

### STATEMENT OF THE FACTS

In January 1990, Sweetwater, a Delaware corporation with its principal place of business in Florida, and Hoag, dba Diversified Drilling, a resident of Nevada, executed an Equipment Lease for a truck mounted drill rig. Defendants allege that the Lease was executed by

Case 3:13-cv-01045-SI   Document 93-4   Filed 06/13/14   Page 2 of 6

Page 2

857 F. Supp. 1420, *1422; 1994 U.S. Dist. LEXIS 15289, **2

West in Indiana, which was Sweetwater's principal place of business at that time. In June of 1990, defendants and Hoag entered into negotiations for the purchase of a new Sparr Exploration Drill Rig ("Sparr Rig").

Defendants allege that Hoag asked Sweetwater to finance the purchase of the Sparr Rig, but that Sweetwater refused. Defendants claim, however, that in order to assist Hoag financially, Sweetwater agreed to forego all but three future lease payments as to the truck mounted rig, and to cancel the Lease and repossess the rig in September 1990. These negotiations eventually resulted in a Purchase Agreement, which defendants maintain was executed in Florida.

Hoag alleges [**3] that the Purchase Agreement was executed in Round Mountain, Nevada. Under this agreement, Hoag agreed 1) to purchase the Sparr Rig for $ 125,000.00; and 2) to turn in the leased truck mounted drill rig and surrender his equity in it. Hoag claims that the parties agreed that the value of the equity was $ 51,000.00, and that this [*1423] amount would function as a down payment for the purchase of the Sparr Rig.

The parties also entered into a distributorship agreement, whereby Hoag would become the Western States representative for the sales of new drill rigs imported by Sweetwater from India. Under the agreement, Sweetwater would sell such rigs to Hoag at dealer net price, and Hoag would use his best efforts to promote sales, provide start-up services, and process warranty claims in the "continental United States west of the Rocky Mountains." Motion to Dismiss for Lack of Personal Jurisdiction (#6) at Attachment 2. Hoag asserts that discussions regarding this agreement occurred in Round Mountain, Nevada. Hoag also claims that in entering the agreement, he anticipated making most drill rig sales within Nevada and planned to base all operations out of Round Mountain, Nevada.

However, due to [**4] difficulties with the manufacturer in India, Sweetwater was unable to acquire a Sparr Rig. Sweetwater periodically notified Hoag of delays and uncertainty in acquiring the equipment. On May 22, 1991, West informed Hoag that the Purchase Agreement would be cancelled pursuant to paragraph 7 of their contract, which limited Sweetwater's liability for any delay or failure in performing its contractual obligations "when any such delay or failure is occasioned by any causes or contingencies beyond its reasonable control, including but not limited to . . . failure of performance by any supplier of equipment to Sweetwater." Motion to Dismiss (#6), Attachment 1 at Exhibit F. Defendants claim that Sweetwater offered to permit Hoag to retain possession of the leased truck mounted drill rig so that Hoag could continue to operate his business, but that Hoag refused this offer.

Hoag's breach of contract action against Sweetwater and West alleges that defendants failed to perform the conditions of both the Purchase Agreement and the distributorship agreement by failing to deliver any new drill rigs, and by refusing to refund his $ 51,000.000 down payment for the Sparr Rig. Defendants claim, however, [**5] that Hoag has never submitted any payment towards the purchase of the Sparr Rig.

## DISCUSSION

I. Collateral Estoppel

Hoag should not be precluded from relitigating the jurisdictional issues relating to any of his claims in the second action. When an issue of fact or law has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties. *Restatement (Second) of Judgments § 27* (1982). Many jurisdictions and authorities maintain that a final judgment ought to be given collateral estoppel effect even though the statutory law in force does not authorize any appeal from the judgment. See, e.g., *Johnson Steel Street Rail Co. v. Wharton, 152 U.S. 252, 38 L. Ed. 429, 14 S. Ct. 608 (1883)*; *Napper v. Anderson, 500 F.2d 634 (5th Cir. 1974)*; 1B Moore's Federal Practice P 0.416[5]. Nevada courts, however, maintain that relitigation of an issue between parties is not precluded when, as a matter of law, the party against whom preclusion is sought could not have obtained [**6] review of the judgment in the initial action. See *Davis v. District Court, 97 Nev. 332, 336, 629 P.2d 1209, 1212 (1981)*. As the present case was removed to federal court on diversity grounds, this Court must apply the substantive law of Nevada. *Erie Railroad Co. v. Tompkins, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)*.

Defendants correctly assert that the principles of collateral estoppel apply to issues of personal jurisdiction in the same manner as any other issue, citing *Baldwin v. Iowa State Traveling Men's Ass'n., 283 U.S. 522, 75 L. Ed. 1244, 51 S. Ct. 517 (1931), Eaton v. Weaver Mfg.*

Case 3:13-cv-01045-SI   Document 93-4   Filed 06/13/14   Page 3 of 6

Page 3

857 F. Supp. 1420, *1423; 1994 U.S. Dist. LEXIS 15289, **6

*Co., 582 F.2d 1250 (10th Cir. 1978)*, and *Kendall v. Overseas Dev. Corp., 700 F.2d 536 (9th Cir. 1983)*. However, each of these cases involved a prior action in which a valid final judgment on the merits was rendered. 1 The present case differs in [*1424] two respects. First, in Nevada, an order quashing service of summons is not considered a final judgment with collateral [**7] estoppel effect. Second, the order dismissing Hoag's prior action may not have been a decision based on the merits.

> 1   In Baldwin, the district court's decision to quash service of process but not to dismiss the action was final, as respondent received a full hearing on the issue of jurisdiction and also had the right to appeal this decision. *283 U.S. at 526*. Similarly, the court in Eaton found "that the merits of the issue of personal jurisdiction over [defendant] was decided by the unappealed state court judgments and that they bar relitigation of the jurisdictional issues in the instant case." *582 F.2d at 1255*. Finally, the court in Kendall stated that "*a final determination* in the state court on the jurisdictional issue is conclusive on the subsequent federal litigation . . ." *700 F.2d at 538* (emphasis added).

An order quashing service of summons is not treated as an appealable final judgment [**8] under Nevada rules of civil procedure. *Davis v. Eighth Judicial District Court, 97 Nev. 332, 336, 629 P.2d 1209, 1212 (1981)*. Because an Order to Quash Service of Summons may be attacked only through a writ of mandamus, *Jarstad v. National Farm Union, 92 Nev. 380, 552 P.2d 49 (1976)*, a grant or denial of the order is not considered appealable. Such an order is therefore not a judgement under Nev.R.Civ.P. 54(a), which defines "judgment" as including "a decree and any order from which an appeal lies." Accordingly, the Nevada state court's grant of defendants' Motion to Quash Service of Process was not a final judgment sufficient to bind all subsequent jurisdictional litigation.

Moreover, it is not clear that the order quashing service of process in the first action was a determination based on the merits. Where a motion to dismiss may have been granted on several grounds, some going to the merits and some not, it has been held that the judgment is not res judicata in respect of any ground. *West Coast Life Ins. Co. v. Merced Irr. Dist., 114 F.2d 654 (9th Cir. 1940)*. [**9] The State court's Order states that it had "read and considered" defendants' Points and Authorities in Support of the Motion to Quash Service of Process, but also notes that Hoag had not filed an opposition to that motion. Motion to Dismiss (#6) at Attachment 3. If the dismissal were granted because Hoag failed to satisfy a procedural requirement necessary for the court to determine the merits, relitigation of the jurisdictional issues should not be barred. See *Costello v. United States, 365 U.S. 265, 5 L. Ed. 2d 551, 81 S. Ct. 534 (1961)* (dismissal for failure to file affidavit of good faith not considered to be on the merits and not given preclusive effect).

II. Jurisdiction Over Sweetwater Corporation

Once a defendant has challenged the exercise of personal jurisdiction, the plaintiff bears the burden of establishing such jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1289 (9th Cir. 1977)*. In order to obtain personal jurisdiction over a non-resident, two factors must be satisfied: the state's "long arm" statute must permit jurisdiction, and the exercise of [**10] jurisdiction must comport with due process requirements. *Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1207 (9th Cir. 1980)*.

Nevada's long arm statute allows personal service of process on a party residing outside of the State where the party has submitted to the jurisdiction of the court by "transacting any business or negotiating any commercial paper within this state." *Nev. Rev. Stat. Ann. § 14.065* (Michie 1986). 2 This statute has been liberally construed to reach the outer limits of federal constitutional due process. *Certain-Teed Prods. v. District Court, 87 Nev. 18, 479 P.2d 781 (1971)*. Defendants' contention that any business transacted in the state must be "localized" in order to be considered a sufficient contact for the exercise of personal jurisdiction under [*1425] *Nev. Rev. Stat. § 14.065* is misplaced. The case relied upon by defendants to support this assertion, *Sierra Glass and Mirror v. Viking Indus., Inc., 107 Nev. 119, 808 P.2d 512 (1991)*, concerns *Nev. Rev. Stat. § 80.210*, which precludes a foreign corporation doing business in Nevada from commencing [**11] an action in a Nevada court unless properly registered in the state. Nevada courts have not placed such a limitation on the definition of "transacting business" when interpreting *Nev. Rev. Stat. § 14.065*. Indeed, the court in Certain-Teed noted that "the broad language in the statute discloses a legislative intent to reach the outer limits of federal constitutional due

Case 3:13-cv-01045-SI   Document 93-4   Filed 06/13/14   Page 4 of 6

Page 4

857 F. Supp. 1420, *1425; 1994 U.S. Dist. LEXIS 15289, **11

process," and that the phrases "transacting any business" and "negotiating any commercial paper within this state" are "almost without restriction or limitation." *87 Nev. at 23, 479 P.2d at 781*.

> 2   *Section 14.065* has been amended, effective June 25, 1993, to read: "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States." *Nev. Rev. Stat. Ann. § 14.065* (Michie 1993). However, personal jurisdiction should be assessed according to the long arm statute in effect at the time the claim arose. Because jurisdiction is limited to claims arising out of forum-related activities, due process requires that the defendant have fair notice that such activities may expose it to local jurisdiction. *Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987)*.

[**12] Because it is the cumulative significance of all activities conducted in the state and not the isolated effect of a single activity that determines personal jurisdiction, *Abbott v. Second Judicial Dist. Court, 90 Nev. 321, 526 P.2d 75 (1974)*, Sweetwater's contacts relating to the Equipment Lease, the Purchase Agreement, and the distributorship agreement should be considered together. In *Burns v. Second Judicial Dist. Court, 97 Nev. 237, 627 P.2d 403 (1981)*, a nonresident lessor who was aware that the leased automobile would be used in Nevada, and who accepted lease payments mailed from Nevada, was considered to have made contacts sufficient to establish personal jurisdiction under *Nev. Rev. Stat. § 14.065*. In the present case, Sweetwater leased a truck mounted drill rig to a Nevada resident. Sweetwater knew that the rig was to be used in Nevada and accepted lease payments from Nevada. The parties later executed a contract for the sale of a Sparr Rig, which Sweetwater knew was to be used exclusively within the state. Under Burns, the lease and purchase agreements establish contacts that [**13] confer personal jurisdiction under Nevada's long arm statute.

The Nevada Supreme Court has held also that where a contract clearly contemplates that the plaintiff would perform substantial services within the forum state at the request of a nonresident defendant, exercise of personal jurisdiction over the defendant is justified. *Levinson v. District Court, 103 Nev. 404, 407, 742 P.2d 1024, 1026 (1987)*. Thus, "when a defendant creates continuing obligations between himself and a Nevada resident, the defendant avails himself of the privilege of conducting business in the forum within the meaning of *NRS 14.065*." Id. As the Western states distributor of Sparr Rigs, Hoag was to perform substantial services for Sweetwater (e.g., promoting sales of imported rigs, providing start-up services, and processing warranty claims). Because Hoag was a resident doing business in Nevada, and because Nevada is in the "region of the continental United States west of the Rocky Mountains," the distributorship agreement certainly contemplated that Hoag would provide services within the forum state. Indeed, Hoag maintains that he based all of his sales efforts [**14] out of his office in Round Mountain, Nevada. Thus, Nevada's long arm statute permits jurisdiction over Sweetwater.

The second issue is whether Nevada's long arm statute, as applied to Sweetwater, violates constitutional notions of due process. *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*. Where limited contacts with the forum state exist, the Ninth Circuit has set forth a three part test to determine whether the exercise of personal jurisdiction comports with due process:

> 1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
>
> 2. The claim must be one which arises out of or results from the defendant's forum-related activities.
>
> 3. Exercise of jurisdiction must be reasonable.

*Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)*.

The first prong of this test is satisfied in the instant case. Although making a [**15] contract with a resident of the forum state is [*1426] insufficient by itself to create personal jurisdiction over the nonresident, *Burger King v. Rudzewicz, 471 U.S. 462, 478, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*, "prior negotiations and

Case 3:13-cv-01045-SI    Document 93-4    Filed 06/13/14    Page 5 of 6

Page 5

857 F. Supp. 1420, *1426; 1994 U.S. Dist. LEXIS 15289, **15

contemplated future consequences, along with the terms of the contract and the parties' additional course of dealing" are factors that may establish purposeful availment. Id. The terms of the distributorship agreement between Sweetwater and Hoag show that Sweetwater contemplated "continuing and extensive involvement with the forum," *Roth v. Marquez, 942 F.2d 617, 623 (9th Cir. 1991)*, and expected to enjoy the benefits of conducting business within Nevada. Moreover, by executing lease and purchase agreements with Hoag, Sweetwater created continuing contractual relationships and obligations that were subject to the benefits and protections of Nevada law.

Because the contractual relations between Sweetwater and Hoag form the basis of this suit, the second prong of the jurisdictional test is also satisfied. The cause of action certainly "arises out of or results [**16] from" Sweetwater's state contacts regarding the purchase and distributorship agreements. Sweetwater argues, however, that any contacts relating to the lease agreement are not sufficient to establish personal jurisdiction because Hoag's claim alleges breach of the purchase and distributorship agreements, not of the lease agreement. However, the lease and purchase agreements are interrelated. Sweetwater allegedly agreed to forego lease payments and cancel the lease as part of the purchase agreement. Moreover, Hoag claims that his equity in the leased equipment served as a down payment for the purchase of the Sparr Rig, and that Sweetwater has breached the purchase agreement by not returning this down payment. Thus, the cause of action does "arise out of or result from" Sweetwater's state contacts regarding the lease agreement.

Finally, the exercise of personal jurisdiction over Sweetwater is reasonable. In determining reasonableness, the court must consider seven factors: the forum state's interest in adjudicating the suit; the burden on the defendant; the extent of conflict with sovereignty of the defendant's state; the most efficient judicial resolution of the dispute; the convenience [**17] and effectiveness of relief for the plaintiff; the existence of an alternative forum; and the extent of purposeful interjection. *Sinatra, 854 F.2d at 1198-1199*.

Because Sweetwater purposefully availed itself of the privilege of conducting business in Nevada, it has the burden of showing that jurisdiction would be unreasonable. *Burger King, 471 U.S. at 477*. Nevada has a "recognized interest in providing an effective means of redress for its residents." *Id. at 473*. Sweetwater has not counteracted this state interest by showing that defending the suit in Nevada would be unreasonably burdensome, that it would be any more convenient or efficient to try this case in another forum, or that there exists any conflict with the laws of another state. Finally, any discussion of purposeful interjection by Sweetwater would be redundant, as it is analogous to the issue of purposeful availment. Balancing these seven factors, it appears that the exercise of jurisdiction over Sweetwater in Nevada is reasonable.

III. Jurisdiction Over West Individually

[**18] Although this Court has jurisdiction over Sweetwater Corporation, it may not exercise personal jurisdiction over West individually. Jurisdiction over an individual director or officer of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individual himself maintains contacts with the forum state that would subject him to the coverage of the state's long arm statute and comport with due process. *Calder v. Jones, 465 U.S. 783, 790, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984)*. However, the corporate form may be ignored, and jurisdiction over the individual officer allowed, in cases in which the corporation is the agent or alter ego of the defendant. *Certified Bldg. Prods., Inc. v. National Labor Relations Bd., 528 F.2d 968 (9th Cir. 1976)*.

West did not maintain contacts with Nevada sufficient to authorize this Court to exercise personal jurisdiction over him in an individual capacity. Although West was the only representative of Sweetwater with [*1427] whom Hoag negotiated, all forum-related contact by West was made on behalf of the corporation. Hoag does [**19] not allege that West was conducting business in Nevada in an individual capacity, or that the cause of action arose because West personally entered and then breached the purchase and distributorship agreements. Indeed, all contracts executed were between Hoag and Sweetwater.

Furthermore, West did not conduct personal activities in Nevada and use the corporate form as a shield. When a plaintiff is seeking to acquire jurisdiction over an officer of a corporation on an individual basis, "there must be a reason for the court to disregard the corporate form." *Davis v. Metro Prods., 885 F.2d 515 (9th Cir. 1988)*. For example, a plaintiff may "pierce the

Case 3:13-cv-01045-SI Document 93-4 Filed 06/13/14 Page 6 of 6

Page 6

857 F. Supp. 1420, *1427; 1994 U.S. Dist. LEXIS 15289, **19

corporate veil" when a corporate officer personally commits an intentional tort or fraud. *Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781, 79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984)*; *Davis, 885 F.2d at 522*. In the present contract action, however, Hoag has not given a sufficient reason for this court to assert jurisdiction in spite of the corporate shield. The fact that Hoag may have been led to believe that West was [**20] the sole shareholder in Sweetwater Corporation is not enough, in itself, to establish that the corporation is the alter ego of West. In *North Arlington Medical v. Sanchez Constr., 86 Nev. 515, 520, 471 P.2d 240, 243 (1970)*, the Nevada Supreme Court set forth three requirements to establish the alter ego doctrine: 1) the corporation must be influenced by the person asserted to be its alter ego; 2) there must be such a unity of interest and ownership that one is inseparable from the other; and 3) the facts must be such that adherence to the fiction of separate entity, under the circumstances, sanctions a fraud or promotes injustice. Because Hoag has not alleged or presented evidence regarding these requirements, the alter ego doctrine may not be considered a reason to exercise jurisdiction over West individually.

## CONCLUSION

Because an Order to Quash Service of Summons is not treated as an appealable final judgment under Nevada rules of civil procedure, plaintiff Hoag should not be precluded from relitigating jurisdictional issues before this Court. While defendant Sweetwater Corporation has maintained sufficient minimum contacts with [**21] the State of Nevada, defendant West has not. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (#6) is therefore DENIED as it applies to Sweetwater Corporation and GRANTED as it applies to West.

DATED: This 1st day of July, 1994.

David W. Hagen

UNITED STATES DISTRICT JUDGE