Westlaw.

Page 1

Not Reported in F.Supp.2d, 2005 WL 1513124 (N.D.Cal.)
**(Cite as: 2005 WL 1513124 (N.D.Cal.))**

Only the Westlaw citation is currently available.

N.D. California.
RAE SYSTEMS, INC., Plaintiff,
v.
TSA SYSTEMS, LTD., Gamma Neutron Products, Inc., and Does 1-100, inclusive, Defendants.

No. C 04-2030 FMS.
United States District Court.
June 24, 2005.

John Paul Flynn, Kristen Marie Cain, Latham & Watkins LLP, San Francisco, CA, for Plaintiff.

Bruce G. Nye, Jennifer Blackstone, Adams, Nye, Sinunu, Bruni & Becht, LLP, San Francisco, CA, for Defendants.

ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

SMITH, J.

INTRODUCTION

**\*1** Defendant Gamma Neutron Products, Inc. ("GNP") moves to dismiss this action for breach of contract as against itself. GNP argues that the Court lacks personal jurisdiction over GNP and that Plaintiff RAE Systems, Inc. ("RAE") fails to state a claim against GNP in seven out of nine causes of action in its First Amended Complaint. Having considered the pleadings and relevant authority, the Court DENIES the motion and VACATES the hearing.

BACKGROUND

Plaintiff RAE is a publicly-traded company that is a Delaware corporation with its principle place of business in Sunnyvale, California. RAE manufactures monitoring devices and systems used to detect dangerous atmospheric contaminants and conditions such as combustible gas and vapor accumulations, oxygen deficiencies, and toxic gases. Defendants TSA Systems, Ltd. ("TSA") and GNP are privately-held Colorado corporations with their principle places of business in Longmont, Colorado. TSA and GNP are in the business of marketing and distributing radiation detection devices. Allan Frymire is the President and the Chairman of the Board of Directors of both TSA and GNP.

The present action arises from a set of business agreements negotiated in 2003 among RAE, TSA, and Polimaster Ltd. ("Polimaster"), a business entity headquartered in Minsk, Belarus which develops technology for radiation detection devices. In 2002, RAE initiated discussions with Polimaster regarding the possibility of a business relationship wherein RAE would manufacture Polimaster-developed radiation detection devices. Polimaster encouraged RAE to open a dialogue with TSA, such that RAE and TSA might work together in distributing Polimaster-developed products in the United States.

After several meetings between representatives of RAE and Polimaster in Minsk, and RAE, Polimaster, and TSA in Sunnyvale, RAE entered into written agreements with both Polimaster and TSA on January 15, 2003. The agreements concern the manufacture and distribution of four Polimaster-developed radiation monitoring devices, the PM 1703M Gamma pager, the PM1703GN Gamma-Netron Pager, the PM 1401 GN Gamma-Neutron Monitor; and the PM 1710GN Gamma-Neutron Monitor (the "Licensed Products"). The agreement entered into by RAE and Polimaster (as well as an additional party, NA & SE Trading Co.) was entitled "Nonexclusive License for Proprietary Information Usage." This agreement included among its provisions that RAE "shall be

Not Reported in F.Supp.2d, 2005 WL 1513124 (N.D.Cal.)
**(Cite as: 2005 WL 1513124 (N.D.Cal.))**

granted an exclusive right for manufacture, usage, import, sale offer, sale, and other introduction of the license products into the economic turnover in the territory of the USA with agreeing conditions with company TSA Systems Ltd, CO, USA." The agreement with TSA referenced therein entered was entitled "Agreement between RAE Systems, Inc., and TSA System, Ltd." This agreement set forth the terms under which TSA would distribute Polimaster products manufactured by RAE.

RAE asserts that soon after entering into the agreement with RAE, TSA became concerned that RAE's ability to manufacture and distribute the Licensed Products would make TSA's participation in the distribution chain unnecessary and that TSA engaged in activities of "industrial espionage" to find out about RAE's business relationship with Polimaster. RAE also asserts that TSA attempted to evade its contractual obligations by transferring its rights to manufacture and sell Polimaster Licensed Products to GNP, a corporation formed in June 2003 by TSA employees and members of TSA's Board of Directors.

**\*2** RAE alleges that TSA ordered 15 to 25 Licensed Products made by RAE in April 2003, delivery of which was taken by GNP rather than by TSA. Plaintiff also alleges that on or after June 2003, a distributor for TSA won a contract to supply the United States Coast Guard with 1,300 Licensed Products. Plaintiff alleges that, rather than place an order with RAE for the Licensed Products as allegedly required under their agreement, TSA formed GNP and TSA and/or GNP persuaded Polimaster to manufacture the Licensed Products needed to fill the Coast Guard Order. RAE also alleges that TSA and GNP continued to solicit confidential information pertaining to RAE's business with Polimaster in an effort to interfere with RAE's business interests and its contract with Polimaster.

RAE filed its complaint against TSA in San Francisco Superior Court on April 20, 2004. On May 24, 2004, it was removed to this Court. On April 28, 2005, RAE filed an Amended Complaint, adding GNP as a defendant. Causes of action include (1) Breach of Contract, (2) Breach of Covenant of Good faith and Fair Dealing, (3) Promissory Estoppel, (4) Intentional Interference with Prospective Economic Advantage, (5) Cause of Action, (6) Tortious Interference with Contract, (7) Unfair Business Practices, (8) Fraud-False Promise, and (9) Declaratory Relief. GNP timely filed the instant motion to dismiss on May 31, 2005.

### LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction may be brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Although defendant is the moving party, plaintiff bears the burden of proof on the necessary jurisdictional facts. *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984). When defendant's motion to dismiss is made as its initial response, plaintiff need only make a prima facie showing that personal jurisdiction exists. *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). For purposes of the prima facie case, conflicts between the factual submissions must be resolved in the plaintiff's favor. *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996).

Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir.2003), citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Roe v. City of San Diego,* 356 F.3d 1108, 1112 (9th Cir.2004).

Dismissal of a claim of fraud under Federal Rule of Civil Procedure 9(b) is appropriate when the cir-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1513124 (N.D.Cal.)
**(Cite as: 2005 WL 1513124 (N.D.Cal.))**

cumstances constituting the are not stated with particularity. The Ninth Circuit requires plaintiffs to provide the time, place and nature of the alleged fraudulent activities. *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994). " 'Mere conclusory allegations of fraud are insufficient." ' *Id.* (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989)).

### DISCUSSION

A. Personal Jurisdiction

**\*3** A federal court can assert personal jurisdiction over any defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4(k)(1)(A). In California, the long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or the United States." See Cal.Code Civ. Proc. § 410.10. Thus, personal jurisdiction is available in California to the fullest extent due process permits.

Due process requires that the nonresident defendant have sufficient minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Two alternate tests, referred to as "general" and "specific" jurisdiction, are used to determine whether a defendant satisfies this constitutional standard. General jurisdiction exists when a defendant has contacts with the forum which are unrelated to the action, but which are "substantial" or "continuous and systematic." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir.1986). Specific jurisdiction exists when there is "a strong relationship between the quality of the defendant's forum contacts and the cause of action." *Id.* (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

RAE contends, and this Court agrees, that personal jurisdiction over GNP can be found based on RAE's allegations that GNP is the alter ego of TSA. Under the federal law governing the exercise of personal jurisdiction, if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, the Court may "pierce the corporate veil" jurisdictionally and attribute "contacts" accordingly. *Certified Building Products, Inc. v. NLRB,* 528 F.2d 968, 969 (9th Cir.1975). When a court pierces the corporate veil, "not only would the acts of the part be imputed to the whole, as in any case of agency, but also the in-state 'presence' of one part may render the out-of-state part present in the forum as well." *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 420, n. 13 (9th Cir.1977). Here, it is undisputed that TSA is subject to this Court's exercise of personal jurisdiction. It follows that if GNP is the alter ego of TSA, then GNP is also subject to this Court's exercise of personal jurisdiction.

Under California law, the party asserting that one company is the alter ego of another must make out a prima facie case comprised of two elements: (1) that there is such unity of interest and ownership that the separate personalities of the two corporations no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice. *Watson v. Commonwealth Insurance Co.,* 8 Cal.2d 61, 68, 63 P.2d 295 (1936); *see also AT & T,* 94 F.3d at 586. The trier of fact must consider a wide variety of factors to determine whether both prongs of this test are satisfied. *Associated Vendors, Inc. v. Oakland Meat Co., Inc.,* 210 Cal.App.2d 825, 837, 26 Cal.Rptr. 806 (1962). At the pleading stage, conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss. *See, e.g., Hockey v. Medhekar,* 30 F.Supp.2d 1209, 1211 n. 1 (N.D.Cal.1998); *Hokama v. E.F. Hutton & Company, Inc.,* 566 F.Supp. 636, 647 (C.D.Cal.1983).

**\*4** Here, Plaintiff has included allegations which go beyond "conclusory allegations" in support of its alter ego theory. Plaintiff alleges the following facts to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1513124 (N.D.Cal.)
**(Cite as: 2005 WL 1513124 (N.D.Cal.))**

support that there is a unity of interest and ownership between TSA and RAE: that GNP and TSA have the same president and chairman of the board; that GNP was created under TSA's direction; that GNP was funded by TSA's president; that GNP was and is managed by a former TSA employee in conjunction with TSA's current president; that there is a unity of management between the companies; and that GNP's cross-over employees take direction from TSA. The Court observes that RAE's allegations with respect to the unity of management between the companies is partially contradicted in a reply declaration by Allan Frymire in which Frymire states that he is the only person that jointly serves as a shareholder, director and officer of both companies. With respect to how a failure to disregard the corporate form would result in injustice, RAE alleges that TSA transferred all of its interest in Polimaster products to GNP in order to evade TSA's contractual obligations to RAE and that TSA used GNP to interfere with RAE's contractual relationship with Polimaster.

The Court finds that Plaintiff's allegations of alter ego liability are sufficient at this stage of the litigation. *Cf. Mieuli v. Debartolo,* 2001 U.S. Dist. LEXIS 22518 (N.D.Cal., 2001) (Rule 12(b)(6) motion denied where plaintiff alleged unity of interest and undercapitalization of the corporate entity); *Federal Reserve Bank of San Francisco v. HK Systems,* 1997 U.S. Dist. LEXIS 5573 (N.D.Cal., 1997) (Rule 12(b)(6) motion to dismiss denied where plaintiff alleged that the defendant parent corporation "dominated and controlled" the subsidiary, that the parent "disregarded the corporate form of the subsidiary," and that the subsidiary was so inadequately capitalized that its capitalization was "illusory."). Because RAE has made a prima facie showing that GNP is an alter ego of TSA, the instant motion to dismiss for lack of personal jurisdiction is denied.[FN1] *Cf. Ado Finance, AG v. McDonnell Douglas Corp.,* 931 F.Supp. 711, 713 (C.D.Cal., 1996) (denying Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction where plaintiff made a prima facie showing of alter ego liability).

FN1. When a court denies a Rule 12(b)(2) motion because a prima facie case has been shown, the movant can nevertheless continue to contest personal jurisdiction, either at a pretrial evidentiary hearing or at the trial itself. See *Ado Finance, AG v. McDonnell Douglas Corp.,* 931 F.Supp. 711 at 717, n. 2 (citing *Metropolitan Life Ins. Co. v. Neaves,* 912 F.2d 1062, 1064, n. 1 (9th Cir.1990)).

B. Sufficiency of the Pleadings

Defendant GNP also moves to dismiss seven of nine causes of action in RAE's First Amended Complaint for failure to state a claim. The causes of action that GNP moves to dismiss include: breach of contract, breach of covenant of good faith and fair dealing, promissory estoppel, negligent interference with prospective economic advantage, unfair business practices, fraud-false promise, and declaratory relief. GNP does not move to dismiss the causes of action for intentional interference with prospective economic advantage, and tortious interference with contract.

GNP moves to dismiss the stated causes of action because they allege no direct wrongdoing by GNP. Rather, plaintiff alleges wrongdoing by TSA and seeks to have GNP held responsible as TSA's alter ego. GNP also specifically requests dismissal of RAE's cause of action for fraud-false promise under Federal Rule of Civil Procedure 9(b)'s particularity standard. In this cause of action, RAE alleges that TSA falsely and intentionally misrepresented to plaintiff that it intended to purchase any Licensed Products distributed in the United States exclusively from RAE. RAE further asserts that it relied on this false promise in entering the agreement with TSA and expending resources on marketing and manufacturing Licensed products. Neither GNP nor TSA contend that this cause of action is not stated with sufficient particularity with respect to TSA.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1513124 (N.D.Cal.)
**(Cite as: 2005 WL 1513124 (N.D.Cal.))**

***5** Because the Court has concluded that RAE's allegations that GNP is the alter ego of TSA are sufficient at this stage of litigation, these causes of action must also survive this motion to dismiss.

## CONCLUSION

For the reasons stated above, GNP's motion to dismiss is DENIED and the hearing set for June 29, 2005 is VACATED. The parties shall not file any additional motions pending reassignment of this matter.

IT IS SO ORDERED.

N.D.Cal.,2005.
RAE Systems, Inc. v. TSA Systems, Ltd.
Not Reported in F.Supp.2d, 2005 WL 1513124 (N.D.Cal.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.