**Thomas Freedman Jr.** (OSB No. 080697) thomas@prllaw.com
**Pearl Law LLC**
552 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel:     (503) 295-6296 | Fax: (503) 295-6344

**Valentin Gurvits** (*pro hac vice*) vgurvits@bostonlawgroup.com
**Matthew Shayefar** (*pro hac vice*) matt@bostonlawgroup.com
**Boston Law Group, PC**
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:     (617) 928-1800 | Fax: (617) 928-1802

**Sean Ploen** (*pro hac vice*) sploen@ploen.com
**Ploen Law Firm, PC**
100 South Fifth Street, Suite 1900
Minneapolis, Minnesota  55402
Tel:     (651) 894-6800 | Fax: (651) 894-6801

**Evan Fray-Witzer** (*pro hac vice*) evan@CFWLegal.com
**Ciampa Fray-Witzer, LLP**
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Tel:     (617) 426-0000 | Fax: (617) 507-8043

Attorneys for Plaintiff and Counter-defendant Calista Enterprises Ltd.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| **CALISTA ENTERPRISES LTD.**, a Republic of Seychelles company,<br><br>    Plaintiff,<br><br>- v. -<br><br>**TENZA TRADING LTD.**, a Cyprus company,<br><br>    Defendant. | Case No. 3:13-cv-01045-SI<br><br>**[PROPOSED] FIRST AMENDED COMPLAINT**<br>For Declaratory Judgment, Injunctive Relief and Trademark Cancellation<br><br>DEMAND FOR JURY TRIAL |

**TENZA TRADING LTD.**,
a Cyprus company,

    Counterclaim Plaintiff,

- v. -

**CALISTA ENTERPRISES LTD.**,
a Republic of Seychelles company, and
**ALEXANDER ZHUKOV**,
a Czechoslovakian citizen,

    Counterclaim Defendants.

      Plaintiff Calista Enterprises Ltd., by and through its undersigned counsel, seeks declaratory and injunctive relief to establish that its registration and use of certain domain names listed herein is not unlawful, along with cancellation of Defendant Tenza Trading Ltd.'s trademark registration.

## Introduction

    1.     This is a classic case of "reverse domain name hijacking" wherein the Defendant seeks to misappropriate several Internet domains legitimately owned and operated by Plaintiff.

    2.     Plaintiff operates a number of Internet websites which drive users to "porn tubes" (websites that offer streaming adult-content videos) operated by third parties. Each of Plaintiff's websites at issue in this case employ the generic and/or descriptive term "porn tube" in their Uniform Resource Locator domain name (e.g., largeporntube.com), and each of the websites uses the term as a generic and/or descriptive term for the services it provides. Specifically, Plaintiff's websites sort, categorize, and display links to various streaming videos hosted on

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**       Page **2**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459      Plaintiff's [Proposed] First
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com     Amended Complaint

third-party porn tubes, and direct the users to the pertinent porn tube when they select the particular videos they wish to view.

3.     Plaintiff drives Internet traffic to many such porn tubes, typically in conjunction with the porn tubes' affiliate webmaster programs, for which such porn tubes pay Plaintiff. The third-party porn tubes depend on Plaintiff for a significant percentage of the users that visit their websites – users that make the porn tubes profitable and, therefore, possible. Defendant is one such porn tube operator, and Plaintiff sends millions of users each month to Defendant.

4.     After nearly two years of good dealings with Plaintiff, in early 2011, Defendant approached Plaintiff and asked Plaintiff to join its affiliate program. Defendant wanted Plaintiff to start driving millions of Internet users from certain websites owned by Plaintiff (including Plaintiff's websites with the term "porn tube" included in their domain names) to Defendant's website at Porntube.com (the "Porntube.com Website"). In return, Defendant promised to pay Plaintiff for its valuable service.

5.     From 2011 through 2013, Plaintiff sent to the Porntube.com Website tens of millions of visitors. Based in part upon these users, Defendant grew to be a multi-million dollar enterprise. In compensation for the valuable service that Plaintiff provided Defendant, Defendant paid Plaintiff at least $132,140 for the directed traffic during a period of at least 20 months. Defendant publicly recognized Plaintiff as one of its top contributors and even awarded Plaintiff a special prize in a competition Defendant put on for its affiliated webmasters.

6.     After these years of an explicit, mutually-beneficial working relationship, in March of 2013, Defendant decided to hijack Plaintiff's domains and filed an administrative proceeding against Plaintiff under the arbitration rules of the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"), alleging that thirteen different "porn tube" domain names owned

by Plaintiff infringed Defendant's trademark right in the term PORNTUBE, for which a U.S. trademark registration had issued two years prior and which Defendant had never mentioned to Plaintiff in the pendency of their relationship.

7. In the UDRP proceeding, Defendant alleged that Plaintiff's domain names were confusingly similar to the PORNTUBE trademark. Defendant also alleged that, despite the two years of service that Defendant requested and paid for, Plaintiff was not providing a *bona fide* service and that Defendant had registered and used the domain names in bad faith. In a 2-1 vote, the majority of the UDRP arbitration panel erroneously ordered that Plaintiff's domain registrations should be transferred to Defendant.

8. Attached hereto are the following filings from the UDRP proceeding: Exhibit A is Defendant's Complaint in Accordance with the Uniform Domain Name Dispute Resolution Policy, including all Annexes thereto (the "**Defendant's UDRP Complaint**"); Exhibit B is Plaintiff's Response to Defendant's UDRP Complaint, including all Annexes thereto (the "**Plaintiff's UDRP Response**"), Exhibit C is Defendant's Submission of Other Written Statements and Documents, including all Annexes thereto, submitted in reply to Plaintiff's UDRP Response (the "**Defendant's Supplemental Response**"); Exhibit D is Plaintiff's Submission of Other Written Statements and Documents in reply to Defendant's Supplemental Response, including all Annexes thereto (the "**Plaintiff's Supplemental Response**"); and Exhibit E is the arbitration panel's decision in the UDRP proceedings, erroneously finding that Plaintiff's domain registrations should be transferred to Defendant (hereinafter, the "**UDRP Decision**").

9. Plaintiff now brings this action to prevent the wrongful transfer of its domains to Defendant, for a declaratory judgment that Plaintiff is not infringing the trademark rights being

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**  
825 Beacon Street, Suite 20 | Newton Centre, MA 02459  
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **4**  
Plaintiff's [Proposed] First  
Amended Complaint

asserted by Defendant, and for the cancellation of Defendant's trademark registration at the U.S. Patent and Trademark Office.

## The Parties

10. Plaintiff Calista Enterprises Ltd. is a Republic of Seychelles company with a business address at Global Gateway 1749, Rue de la Perle, Providence, Mahe Island, Seychelles.

11. On information and belief, Defendant Tenza Trading Ltd. is a Cyprus company with a business address at Ioanni Stylianou 6, 2nd Floor, Flat 202, Nicosia 2002, Cyprus.

## Jurisdiction and Venue

12. Pursuant to 28 U.S.C. §§2201(a) and 2202, Plaintiff seeks a declaration and a judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction concerning Plaintiff's rights in and to certain domain name registrations and in and to certain trademark rights allegedly owned by Defendant.

13. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, and pursuant to 28 U.S.C. § 1338(a), the Lanham Act (15 U.S.C. § 1051, *et seq*.) and the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125).  Pendent jurisdiction exists over Plaintiff's state law claims.

14. This Court has personal jurisdiction over Defendant because Defendant has sufficient contacts with the State of Oregon and this judicial district subjecting it to the general and specific personal jurisdiction of this Court pursuant to Oregon Rule of Civil Procedure 4 and/or Federal Rule of Civil Procedure 4(k)(2).  Defendant has purposefully availed itself of this forum through general business presence and by demanding that Plaintiff cease use of certain domain names and transfer the registrations for same to Defendant.  Moreover, Defendant

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **5**
Plaintiff's [Proposed] First
Amended Complaint

consented to the personal jurisdiction of this Court when it filed its UDRP Complaint against Plaintiff pursuant to the Uniform Domain-Name Dispute-Resolution Policy. Defendant's UDRP Complaint, p. 11.

15. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391 because the Court has personal jurisdiction over Defendant and because a substantial part of the events or omissions giving rise to this Complaint occurred in this judicial district. Moreover, venue is proper in the District of Oregon because of Defendant's voluntary submission to this Court's jurisdiction when it filed its UDRP Complaint against Plaintiff pursuant to the Uniform Domain-Name Dispute-Resolution Policy. Defendant's UDRP Complaint, p. 11.

## Facts

**Plaintiff and the Domains**

16. Plaintiff operates, under the trade name "AlexZ Traffic," various adult-themed websites which drive Internet traffic to certain third-party streaming video websites (the "porn tubes").

17. Plaintiff gathers links to adult videos hosted by these porn tubes, and sorts, categorizes and displays them for its users on its websites.

18. When a user visits one of Plaintiff's websites, he is presented with a variety of adult-themed categories (e.g., "Mature," "Amateur," etc.), and when he selects one such category, he is presented with screenshots from a variety of videos hosted on the third-party porn tubes.

19. When a user selects one such screenshot, he is delivered to the website of the third-party porn tube.

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **6**
Plaintiff's [Proposed] First
Amended Complaint

20. These third parties porn tubes have entered into arrangements with Plaintiff wherein the porn tubes pay Plaintiff for driving users to their websites.

21. Plaintiff operates, *inter alia*, thirteen traffic driving websites whose domain names and titles include the words "porn tube" as a generic and/or descriptive term.

22. These thirteen domain names are largeporntube.com, goldporntube.com, kissporntube.com, boxporntube.com, pipeporntube.com, 69porntube.com, royalporntube.com, bookporntube.com, cubeporntube.com, freshporntube.com, lustporntube.com, bonusporntube.com and directporntube.com (the "Domains").

23. Plaintiff registered the first of the Domains, freshporntube.com, on June 24, 2009, and the last of the Domains, cubeporntube.com, on November 3, 2011.  Defendant's UDRP Complaint, Annex 2.

24. Since the registration of each of the Domains, Plaintiff has operated websites at the Domains, each of which offer the above-described *bona fide* services to numerous third-party porn tubes.  Plaintiff's UDRP Response, pp. 6-8.

**Defendant Invited Plaintiff to Drive Users to Defendant**

25. One such porn tube that Plaintiff drives traffic to is the site operated at the domain name porntube.com (the "Porntube.com Website"), which site is owned by Defendant.

26. On information and belief, the Porntube.com Website is operated by Defendant's agent and affiliate DreamStar Cash SL ("DreamStar").  Plaintiff's Supplemental Response, pp. 2-3.

27. On information and belief, DreamStar and Defendant operate as one and the same entity.  *Id.*

28. DreamStar was founded and is owned by Mr. Steve Matthysen, DreamStar's chief executive. *Id.*

29. On information and belief, Matthysen is also a beneficial owner, director and/or executive of Defendant. *Id.*

30. On or about September 2, 2009, Matthysen contacted Plaintiff and asked Plaintiff to start directing users from those of the Domains then owned by Defendant to one of DreamStar's porn tubes, 4tube.com. Plaintiff's UDRP Response, pp. 11-12; Plaintiff's Supplemental Response, pp. 2-3.

31. Matthysen personally created an account for Plaintiff within Defendant's affiliate webmaster program so that DreamStar could pay Plaintiff for Plaintiff's services. *Id.*

32. By June of 2010, Matthysen had singled out one of the Domains as being the top referrer of users to DreamStar's websites. *Id.*

33. On or about January 3, 2011, having specific knowledge of Plaintiff's registration and use of the Domains, and based on the mutually-beneficial relationship the parties had developed, Matthysen invited Plaintiff to begin sending users to the Porntube.com Website. *Id.*

**The Successful Affiliation Between the Parties**

34. From January 3, 2011 through March 28, 2013, Plaintiff and Defendant worked together to successfully drive millions of users from the Domains to the Porntube.com Website. Plaintiff's UDRP Response, pp. 6-8.

35. Defendant depended on affiliates like Plaintiff to drive approximately 80% of its users to the Porntube.com Website, and paid its affiliates (including Plaintiff) in aggregate an average of $80,000 per month for the approximately 48 million monthly visitors it received from the affiliates. Defendant's UDRP Complaint, p. 8.

36. Plaintiff was responsible for driving approximately 8.25% of all of Defendant's affiliate traffic to the Porntube.com Website (accounting for up to 4 million visitors per month). Plaintiff's UDRP Response, p. 7.

37. In compensation for the large number of users that Plaintiff drove to the Porntube.com Website, Defendant paid Plaintiff in excess of $132,140 over a period of about 20 months. Defendant's UDRP Complaint, p. 8.

38. Defendant repeatedly and prominently recognized the valuable contribution that Plaintiff and the Domains made to success of the Porntube.com Website by displaying the Domains on Defendant's list of the most-effective referring domains to the Porntube.com Website. Plaintiff's UDRP Response, p. 12.

39. For example, in the month of June 2011, Defendant listed goldporntube.com, one of the Domains, as the single most effective referring domain to the Porntube.com Website, after it referred 1,785,298 unique visitors. In that same month, twelve out of the top twenty-five referring domains for Porntube.com were among the Domains. *Id.*

40. In July of 2011, Defendant conducted a contest for its affiliates wherein it would award an Apple iPad to each of three lottery winners. To receive lottery tickets, the affiliates needed to refer traffic to the Porntube.com Website; the more traffic they referred, the more lottery tickets they received and the better their chance of winning. *Id.*

41. Because Plaintiff was one of the highest-referring affiliates at this time, Plaintiff won more lottery tickets than any of the other affiliates. On the strength of its referring numbers, Plaintiff won Defendant's contest, was awarded one of the Apple iPads and was featured by name on the Porntube.com Website as a winner. *Id.*

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**  
825 Beacon Street, Suite 20 | Newton Centre, MA 02459  
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **9**  
Plaintiff's [Proposed] First  
Amended Complaint

42. For the foregoing reasons, among others, Defendant knew of, fostered, encouraged, rewarded and profited from Plaintiff's services and from Plaintiff's registration and use of the Domains for over two years.

**Defendant Attempts the Reverse Hijacking of the Domains**

43. On or about March 28, 2013, after approximately two years of successful affiliation and without any warning to Plaintiff, Defendant filed a complaint against Plaintiff under the Uniform Domain-Name Dispute-Resolution Policy to secure the transfer of the Domains from Plaintiff to Defendant. *See* Defendant's UDRP Complaint, attached hereto as Exhibit A. The UDRP proceeding was conducted by the National Arbitration Forum (the "NAF").

44. In the Defendant's UDRP complaint, Defendant alleged that it owned the exclusive rights to use of the trademark PORNTUBE, which rights it alleged Plaintiff was infringing with the registration and use of the Domains, and that despite the longstanding, successful relationship between the parties wherein Defendant paid Plaintiff for driving traffic to the Porntube.com Website, Plaintiff was not operating a *bona fide* service at the Domains but instead had registered and used the domains in bad faith. *Id.*

45. Prior to the filing of the Defendant's UDRP Complaint, Plaintiff was unaware of any dispute between the parties.

46. During the UDRP proceeding, Defendant engaged in bad faith arguments, purposefully misleading the arbitrators about its long-lasting relationship with Plaintiff. *See* Defendant's UDRP Complaint; Defendant's Supplemental Response, attached hereto as Exhibit C.

Val Gurvits | Matthew Shayefar | Boston Law Group, PC
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **10**
Plaintiff's [Proposed] First
Amended Complaint

47. Plaintiff responded to Defendant's bad faith arguments and misrepresentations, and showed that Defendant could not satisfy any of the factors necessary for it to prevail in the UDRP proceeding. *See* Plaintiff's UDRP Response, attached hereto as <u>Exhibit B</u>; Plaintiff's Supplemental Response, attached hereto as <u>Exhibit D</u>.

48. On June 11, 2013, the panel of three arbitrators issued a 2-1 decision directing that the Domains should be transferred to Defendant. *See* UDRP Decision, attached hereto as <u>Exhibit E</u>.

49. Defendant's serious and baseless accusations in the UDRP Complaint and ancillary documents, and the UDRP Decision itself, establish an actual controversy between the parties, and thus Plaintiff requests that this Court grant declaratory, injunctive and affirmative relief in Plaintiff's favor.

**The Trademark Registration**

50. On March 29, 2011, years after Plaintiff registered the first of the Domains and years after Matthysen first engaged Plaintiff as an affiliate, the United States Patent and Trademark Office issued Defendant a trademark registration for the mark PORNTUBE shown in standard characters, with no stylization or logo (the "Putative Mark"), registration number 3,936,197 (the "Registration"). UDRP Complaint, p. 3.[1]

---

[1] Defendant, in its UDRP filings, indulges in a half-truth concerning the prosecution of this application: Defendant states that the registration "was received without any objections from the corresponding Trademark Office, including any objection that the trademark was descriptive" (Defendant's UDRP Complaint, p. 4); in fact, the U.S. PTO oversaw an opposition to registration of Defendant's mark, the partial basis of which was an allegation that "Applicant's Mark, when used in connection with the identified services, is merely descriptive, and Applicant has failed to prove acquired distinctiveness of its proposed mark." The objection was rendered moot when Applicant and the opposer entered into a co-existence agreement under which both the PORNOTUBE and PORNTUBE marks received registrations. See TTAB Opposition Proceeding No. 91192320, Notice of Opposition, p. 3, ¶ 9.

51. Whatever the nature of the Putative Mark at the time of the issuance of the Registration, in fact, the Putative Mark is now a generic term, is not capable of source identification, and is not distinctive.  Plaintiff's UDRP Response, pp. 2-4.

52. Plaintiff, along with thousands of others in the adult entertainment industry, in the mainstream media, and in the community of Internet users, uses the terms "porn tube" and "porntube" as generic and/or descriptive designations for websites that offer adult-themed streaming video content.  *Id.*

53. The word "porn" is a common shortened form of the word "pornography," and it either names or merely describes the adult entertainment services recited in Defendant's registration of the Trademark.  *Id.*

54. The word "tube" historically served as an informal or slang term for "television" and, since creation of and subsequent explosion in popularity of the website YouTube.com since 2005, "tube" has come into widespread and common use to refer to streaming video websites on the Internet.  *Id.*

55. Defendant's combination of the words "porn" and "tube" into the designation "porntube" or "porn tube" is insufficient to render either word or the combined term capable of source-identifying significance.  *Id.*

56. As a result of the descriptive and popular nature of the words "porn" and "tube," the terms "porntube" and "porn tube" have come into widespread and common usage to name and to describe websites such as those operated by Defendant and Plaintiff, so that such terms no longer identify a particular website or source of adult entertainment services (if in fact the terms ever did operate as source-identifiers), but instead name a particular type of site, *i.e.*, a site where pornographic videos are offered for streaming.  *Id.*

Val Gurvits | Matthew Shayefar | Boston Law Group, PC
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **12**
Plaintiff's [Proposed] First
Amended Complaint

57. Defendant does not own and cannot rightfully claim exclusive rights to the common words "porn" and "tube," used separately or in combination, for use in a domain name, trademark or otherwise.

58. On or about April 10, 2013, Plaintiff filed a petition for cancellation of the Registration with the United States Patent and Trademark Office before the Trademark Trial and Appeal Board, on grounds that the term "porn tube" is a generic designation for or is merely descriptive of the claimed services (the "Petition for Cancellation"). *See* Annex 1 to the UDRP Response.

59. The Petition for Cancellation remains active and pending at the Trademark Trial and Appeal Board (the "TTAB"), which has assigned proceeding no. 92057048 to the proceeding.

60. On May 20, 2013, Defendant filed its answer to the Petition for Cancellation, denying the generic and/or merely descriptive nature of the term "porn tube."

61. Plaintiff's use of the terms "porntube" and "porn tube" in the Domains has not and will not cause confusion with Defendant's services offered under the Putative Mark. Plaintiff's UDRP Response, pp. 4-6.

**Defendant's Activities That Create a Justiciable Controversy**

62. On or about March 28, 2013, Defendant initiated the UDRP proceeding against Plaintiff. *See* Defendant's UDRP Complaint.

63. On June 11, 2013, the NAF issued its decision requiring the transfer of the Domains to Defendant. *See* UDRP Decision.

64. Plaintiff does not wish to transfer its rightfully-owned property (i.e., the Domains) to Defendant.

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **13**
Plaintiff's [Proposed] First
Amended Complaint

65. Defendant's wrongfully-obtained Registration remains active even during the pendency of the Petition for Cancellation at the TTAB.

66. Defendant's actions show a clear intent to use any means necessary to obtain the Domains, including litigation. Thus, an actual, substantial and immediate controversy exists, justifying the declaratory relief that Plaintiff seeks.

### Count I
### Declaratory and Injunctive Relief Pursuant to the
### Anticybersquatting Consumer Protection Act (15 U.S.C. § 1114(2)(D)(v))

67. Plaintiff repeats, re-alleges and incorporates each and every allegation listed in the preceding paragraphs.

68. Plaintiff rightfully registered the Domains in good faith, and with no intent to sell the Domains to Defendant or otherwise to cause harm or show bad faith toward Defendant.

69. Defendant has no legally cognizable trademark rights in the Putative Mark.

70. The Domains are not confusingly similar to the Putative Mark.

71. Plaintiff has no intention of confusing any of Defendant's customers or diverting any traffic intended for Defendant from the Porntube.com Website.

72. Plaintiff believed and had reasonable grounds to believe that its registration and use of the Domains was and is lawful.

73. Plaintiff has offered *bona fide* services through the Domains.

74. Plaintiff is commonly known by the Domains.

75. For at least two years, Defendant knew of, fostered, encouraged, rewarded and profited from Plaintiff's use of the Domains.

76.     Plaintiff has notified Defendant of its intent to file a civil action to establish that its registration and use of the Domains are lawful.  *See* Declaration of Matthew Shayefar, attached hereto as <u>Exhibit F</u>, ¶ 5.

77.     The domain name registrar for the Domains, Moniker Online Services, LLC, has locked the transfer and updating of the Domains by Plaintiff and, pursuant to the UDRP decision and absent the initiation of this civil action and a resolution of this matter in favor of Plaintiff, will transfer the Domains imminently to Defendant.

78.     Plaintiff has no other prompt and expeditious remedy to protect its interest and to prevent it from irreparable harm.

79.     To resolve this actual controversy, Plaintiff seeks a declaration establishing that its registration and use of the Domains are lawful and injunctive relief prohibiting the transfer of the Domains to Defendant.

## Count II
### Declaration of Non-Infringement of Trademark

80.     Plaintiff repeats, re-alleges and incorporates each and every allegation listed in the preceding paragraphs.

81.     Based on the facts set forth above, an actual controversy has arisen and now exists between Plaintiff and Defendant regarding the issue of whether Plaintiff's use of the term "porn tube" in the Domains and on the websites available thereon infringes Defendant's claimed rights in the Putative Mark, in violation of the Lanham Act or other applicable law.

82.     Plaintiff denies Defendant's allegations.

83.     Absent a resolution of this matter, Plaintiff will be uncertain as to whether its continued use of the term "porn tube" exposes Plaintiff to liability.

84. Plaintiff has no other prompt and expeditious remedy to protect its interest and to prevent it from irreparable harm.

85. Under the circumstances, a judicial declaration is necessary and appropriate at this time in order that Plaintiff may determine its rights and duties under the Lanham Act or other applicable law and the facts of this case.

## Count III
## Declaration of No Unfair Competition

86. Plaintiff repeats, re-alleges and incorporates each and every allegation listed in the preceding paragraphs.

87. Based on the facts set forth in the foregoing allegations, an actual controversy has arisen and now exists between Plaintiff and Defendant regarding the issue of whether Plaintiff's use of the term "porn tube" in the Domains and on the websites available thereon constitutes unfair competition under the Lanham Act or other applicable law.

88. Plaintiff denies Defendant's allegations.

89. Absent a resolution of this matter, Plaintiff will be uncertain as to whether its continued use of the term "porn tube" exposes Plaintiff to liability.

90. Plaintiff has no other prompt and expeditious remedy to protect its interest, and to prevent it from irreparable harm.

91. Under the circumstances, a judicial declaration is necessary and appropriate at this time in order that Plaintiff may determine its rights and duties with respect to competition under the Lanham Act or other applicable law and the facts of this case.

\\

\\

## Count IV
## Cancellation of Trademark Registration Pursuant to 15 U.S.C. § 1119

92.     Plaintiff repeats, re-alleges and incorporates each and every allegation listed in the preceding paragraphs.

93.     The Putative Mark does not possess source-identifying capacity and lacks all distinctiveness with regards to the services recited in the subject registration, due to the term PORNTUBE having become substantially synonymous with and a generic designation for such services amongst the consuming public, within Defendant's industry, and elsewhere.

94.     In the alternative, the Putative Mark merely describes Defendant's services and has not in fact acquired distinctiveness as a source indicator for Defendant within the requirements of the Lanham Act.

95.     Under the circumstances, a judicial determination ordering the cancellation of the Registration is necessary and appropriate at this time on grounds that the mark shown in the Registration is generic or merely descriptive when used in connection with the services recited in therein.

## JURY DEMAND

96.     Plaintiff demands a trial by jury on all claims so triable.

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this honorable Court perform the following actions:

(i)     Enter judgment for Plaintiff on all Counts of its Complaint;

(ii)    Enter a declaration that Plaintiff's use of the terms "porn tube" and "porntube" does not infringe the trademark rights asserted by Defendant in the Putative Mark, and further

Val Gurvits | Matthew Shayefar | Boston Law Group, PC
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **17**
Plaintiff's [Proposed] First
Amended Complaint

declaring that Plaintiff and others are free to use such terms (and any terms substantially similar thereto) without restriction by Defendant;

(iii)   Enter a declaration that Plaintiff's use of the terms "porn tube" and "porntube" does not amount to unfair competition and that Plaintiff and others are free to use such terms (and any terms substantially similar thereto) without restriction by Defendant;

(iv)   Enter a declaration that Plaintiff registered and has used the Domains in good faith, is the rightful registrant of the Domains, and has used the Domains in conjunction with the offering of a *bona fide* service;

(v)   Issue a permanent injunction to enjoin Defendant from interfering with Plaintiff's use and registration of the Domains, including placing the Domains on "locked status," cancelling the registrations for the Domains, transferring the registrations for the Domains, or otherwise disturbing Plaintiff's lawfully-obtained Domains;

(vi)   Issue a permanent injunction to enjoin Moniker Online Services, LLC and the National Arbitration Forum from transferring the registrations for the Domains to Defendant;

(vii)   Order the Director of the United States Patent and Trademark Office to cancel the Registration;

(viii)   Award Plaintiff monetary compensation in an amount to be determined at trial for damages sustained by Plaintiff as a result of Defendant's wrongful actions as alleged herein, including for attorney's fees and costs as provided by law; and

(ix)   Award such other and further relief, whether legal or equitable, as the Court may deem just and proper.

\\

\\

Dated:  July 2, 2014

Respectfully Submitted,
Plaintiff Calista Enterprises Ltd.
By its Attorneys,

/s/ Matthew Shayefar
Matthew Shayefar (*pro hac vice*)
Valentin Gurvits (*pro hac vice*)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:   (617) 928-1800
Fax:   (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray Witzer (*pro hac vice*)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Tel:   (617) 426-0000
Fax:   (617) 507-8043
evan@CFWLegal.com

/s/ Thomas Freedman Jr.
Thomas Freedman Jr. (OSB No. 080697)
Pearl Law LLC
552 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel:   (503) 295-6296
Fax:   (503) 295-6344
thomas@prllaw.com

/s/ Sean Ploen
Sean Ploen (*pro hac vice*)
Ploen Law Firm, PC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Tel:   (651) 894-6800
Fax:   (651) 894-6801
sploen@ploen.com

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **19**
Plaintiff's [Proposed] First
Amended Complaint