**Paul N. Tauger** (*Admitted pro hac vice* – CA Bar No. 160552)
Email: pnt@eclipsegrp.com
**Anna M. Vradenburgh** (*Admitted pro hac vice* – CA Bar No. 163212)
Email: amv@eclipsegrp.com
THE ECLIPSE GROUP LLP
2020 Main Street, Suite 600
Irvine, CA 92614
Telephone: 949-851-5000 ext. 110
Facsimile: 949-851-5051

**Devon Zastrow Newman**, OSB #014627
Email: dnewman@schwabe.com
**Catherine B. Brinkman**, OSB #002134
Email: cbrinkman@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

Attorneys for Defendant and Counterclaimant Tenza Trading Ltd.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CALISTA ENTERPRISES LTD,** a Republic of Seychelles Company**,**<br><br>Plaintiff,<br><br>vs.<br><br>**TENZA TRADING LTD.,** a Cyprus Company**,**<br><br>Defendant. | Case No. 3:13-cv-01045-SI<br><br>DEFENDANT AND COUNTERCLAIMANT TENZA'S RESPONSE IN OPPOSITION TO PLAINTIFF AND COUNTERCLAIMANT CALISTA'S MOTION FOR LEAVE TO AMEND COMPLAINT<br><br>(Request for Oral Argument) |



| | |
|---|---|
| **TENZA TRADING LTD.**, a Cyprus Company, <br><br>                    Counterclaim Plaintiff, <br><br>    v. <br><br> **CALISTA ENTERPRISES LTD,** a Republic of Seychelles Company; and **ALEXANDER ZHUKOV,** a Czechoslovakian citizen, <br><br>                    Counterclaim Defendants. | |

TENZA'S RESPONSE IN OPPOSITION TO CALISTA'S
MOTION FOR LEAVE TO AMEND COMPLAINT

ECLIPSE GROUP LLP ATTORNEYS AT LAW
2020 Main Street
Suite 600
Irvine, CA 92614
t: 949.851.5000
f: 949.851.5051

I.      **Introduction**

More than a year after filing its Complaint, after fact and expert discovery have concluded, and after dispositive motions have been filed, Calista now claims a harmless "scrivener's error" as grounds for amending its Complaint to allege a new cause of action. This was no simple transcription error. Allowing amendment at this stage of the proceedings is clearly prejudicial to Tenza. Even if the prejudice could be mitigated through extension of the schedule to permit Tenza to conduct the additional discovery necessary to defend against the new claim, extension of the schedule would only benefit Calista by allowing it more time to continue unlawfully profiting from the infringing websites, perpetuating the irreparable harm to Tenza. Calista's motion should be denied.

II.     **Relevant Procedural History**

Calista filed this action on June 21, 2013, only days after a June 11, 2013, UDRP panel decision ordering transfer of the domains to Tenza issued. Calista has admitted, repeatedly, that the reason it filed its lawsuit was to block the transfer of the domains to Tenza as ordered. *See*, Calista's Motion to Stay (Docket No. 26), p. 2 ("Finally, the special circumstances of this case, including the necessity for Calista to file this lawsuit simply to prevent the transfer of the Domains without proper adjudication, support a stay of the proceedings."); Hearing Transcript, 11/19/2013 (Docket No. 38), 5:8-11 ("The only way for us then, under the UDRP rules, to prevent the domains from being automatically transferred to Tenza is to file the present action for declaratory judgment, and we did that.").

Calista did not provide Tenza with a copy of its lawsuit, though it contended, in a Rule 26 conference on its previously-abandoned-and-now-stayed TTAB cancellation proceeding, that it had filed one. As Tenza was never served with the lawsuit, and Calista never provided a copy,

Page 1 -   TENZA'S RESPONSE IN OPPOSITION TO
           CALISTA'S MOTION FOR LEAVE TO AMEND
           COMPLAINT



Tenza had no basis for believing an action had been filed. In accordance with ICANN procedures, Tenza provided the National Arbitration Forum ("NAF") with a copy of the UDRP panel order and demanded transfer of the domains that were the subject of the UDRP panel order to Tenza. Apparently, either the NAF or Moniker Online Services LLC ("Moniker"), Calista's ISP, notified Calista of Tenza's demand, because Calista immediately responded by providing a copy of the lawsuit, as it should have previously done, to prevent transfer.

As the Court will recall, two months after Calista filed the Complaint, with no effort on the part of Calista to serve the Complaint, Tenza waived service and filed an Answer and Counterclaim. Notwithstanding that the Complaint was framed entirely as one for declaratory relief and cancellation of Tenza's federally-registered trademark, Calista, expressly and specifically, demanded damages in its Prayer for Relief: "Award Plaintiff monetary compensation in an amount to be determined at trial for damages sustained by Plaintiff as a result of Defendant's wrongful actions as alleged herein. . ." (Complaint, p. 18, ¶ viii).

Counsel for the parties[1] participated in two telephonic conferences on September 12 and 18, 2013, pursuant to Fed. R. Civ. P. 26. During one conference, Tenza's counsel asked, specifically, for the basis for Calista's prayer for monetary damages. Attorney Matthew Shayefar stated that § 1125 of the Anti-Cybersquatting Prevention Act ("ACPA") authorized a damage award. Tenza's counsel responded that entitlement to damages was not pled within Calista's § 1125 Count. Mr. Shayefar reiterated, again, that, in Calista's view, damages were authorized pursuant to § 1125. *See*, Declaration of Paul N. Tauger in Support of Opposition to Motion for Leave to Amend (hereafter, the Tauger Decl.), ¶ 3; Declaration of Anna M.

---

[1] Attorney Evan Fray-Witzer had not yet joined Calista's legal team at this time.

Page 2 -   TENZA'S RESPONSE IN OPPOSITION TO
           CALISTA'S MOTION FOR LEAVE TO AMEND
           COMPLAINT



Vradenburgh in Support of Opposition to Motion for Leave to Amend, ¶ 2; Declaration of Devon Zastrow Newman in Support of Opposition to Motion for Leave to Amend, ¶ 2.

The parties proceeded to litigate this matter, taking comprehensive discovery, including three overseas depositions and multiple expert depositions, based on the allegations in the pleadings.

On June 17, 2014, the parties argued Tenza's pending Motion to Dismiss (Docket No. 74) before this Court. Tenza argued that Calista lacked standing to pursue the instant litigation because, though it was the domain name registrant, subsequent discovery had indicated that Calista was not the owner of the domains. Tenza's counsel argued that the ACPA had amended two separate statutes, 15 U.S.C. § 1125 and 15 U.S.C. § 1114 and Calista had filed suit only under the former, and not the latter. Tenza contended that the difference was critical because only § 1114 conferred standing to bring an action on a non-owner <u>registrant</u>. The Court held, correctly, that it would not entertain arguments that had not been raised in the moving papers, notwithstanding that Tenza had only discovered Calista's pleading failure the day before.

Though Calista's failure to plead § 1114 was not considered with respect to Tenza's pending Motion to Dismiss, its import was not lost on either party. Tenza prepared and transmitted a letter to Calista's ISP, Moniker, advising it of Calista's failure to file an action legally competent to preclude the transfer under ICANN rules, and requested immediate transfer of the domains awarded to it by the UDRP panel. *See*, ¶ 6 to the Tauger Decl. Calista, in turn, prepared the instant Motion.[2]

---

[2] In an attempt to interfere with Tenza's efforts to obtain Moniker's compliance with its obligations pursuant to ICANN rules, Calista's counsel, Mr. Fray-Witzer, sent an email to this Court titled, "Emergency Request for Court Intervention," in which he stated, "Shockingly, it

Page 3 -   TENZA'S RESPONSE IN OPPOSITION TO
CALISTA'S MOTION FOR LEAVE TO AMEND
COMPLAINT

ECLIPSE GROUP LLP ATTORNEYS AT LAW
2020 Main Street   t: 949.851.5000
Suite 600   f: 949.851.5051
Irvine, CA 92614

However, as discussed, *infra*, Calista's motion is both factually unjustified and highly prejudicial to Tenza and should therefore be denied on those bases.

### III. Calista's Alleged Factual Ground for Amendment is Not "Scrivener's Error."

The Ninth Circuit provides guidance for when something should be considered a "scrivener's error." In *United States Trustee v. Garvey, Schubert & Barer (In re Century Cleaning Servs., Inc.)*, the court stated that, in the context of a statute, to find that it contains a "scrivener's error," the court must determine that "the literal application of the statute will produce a result demonstrably at odds with the intent of its drafters." 195 F.3d 1053, 1063–64 (9th Cir. 1999) *overruled on other grounds by Lamie v. United States Tr.*, 5420 U.S. 526 (2004), (quoting *Jonston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.3d 613, 619-20 (9th Cir. 1993) (internal citations and quotation marks omitted)). Similarly, in *Natural Res. Def. Council v. United States EPA*, 915 F.2d 1314, 1321 (9th Cir. 1990), again in the context of a statute, the court's analysis begins with the "ordinary presumption is that Congress' drafting of the text is deliberate." In reviewing a court's order, the court in *McCullock v. Holder*, held: "We conclude that the minute entry's addition of '(B)' after '1204(A)(2)' was a mere scrivener's error because the entry contained an '**obvious clerical or typographical error**.'" 345 F. App'x 292, 294 (9th Cir.

---

now is obvious that attempting this highly improper maneuver was Tenza's precise intent." Counsel's contention that Tenza's counsel should have apprised Mr. Fray-Witzer, of justified, legal and ethical strategy, unrelated to this litigation, to his client's detriment, is without support or rationale. Moreover, Mr. Fray-Witzer's statement that, "Tenza's counsel, however, would not explain why he wanted this convoluted mechanism," is <u>false</u>. During the meet-and-confer, Tenza's counsel expressly stated that he did not believe the reference to § 1125 was merely a "scrivener's error." He stated, further, why he believed the Count for this section was intentionally included, representing a misunderstanding of the applicable law by the attorney who drafted the Complaint. Tenza's counsel then stated that, for this reason, he felt it would be error to allow for amendment on Calista's claimed basis and for that reason he insisted on an accurate record. *See*, Tauger Decl., ¶ 5.

Page 4 -   TENZA'S RESPONSE IN OPPOSITION TO
           CALISTA'S MOTION FOR LEAVE TO AMEND
           COMPLAINT



2009) (emphasis added) (citing *Amalgamated Transit Un. v. Laidlaw Transit*, 448 F.3d 1092, 1097 (9th Cir. 2006).

Thus, indicia of a "scrivener's error" include a "presumption [that Calista's] drafting of the text is deliberate," that "literal application [of the language in the pleading] will produce a result that is demonstrably at odds with the intent of its drafters," and that the correction be limited to "an obvious clerical or typographical error." None of these indicia are present here.

### A. Calista's Cause of Action is Not an "Obvious Clerical or Typographical Error."

Calista contends that its § 1125 count is an error, "obvious to any observer," (Motion, p. 3) because Section 1125(2)(D)(5), "does not actually exist." *Id.* This contention fails for a number of reasons.

First, though the cited subsection does not exist, neither does Section 1114(2)(D)**(5)** -- the correct section designation is 1114(2)(D)**(v)**. Moreover, Section 1125**(d)**(1)(A) certainly does exist and expressly provides the specific relief pled by Calista in its Complaint. Moreover, the specific allegations of Calista's § 1125 count reference standards unique and specific to Section 1125.

Paragraph 68 of Calista's Complaint states, "Plaintiff rightfully registered the Domains in good faith, and with no intent to sell the Domains to Defendant or otherwise to cause harm or show bad faith toward Defendant. [emphasis added]." Section 1125(d) is the specific statute under which domain name arbitrageurs, i.e. those who register domain names for the sole purpose of selling them to a trademark owner for profit, are addressed. *See, Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 674 (9th Cir. 2005) (Section 1125(d) action in which, "The issue under the Anticybersquatting Consumer Protection Act was whether Kremer had a "bad faith

Page 5 -   TENZA'S RESPONSE IN OPPOSITION TO
            CALISTA'S MOTION FOR LEAVE TO AMEND
            COMPLAINT



intent to profit" from the use of the trademark in his domain name, such as by making an extortionate offer to sell the BosleyMedical.com site to Bosley"); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009) (Section 1125(d) action in which, "Lahoti then asked for as much as $72,500 to sell the Domain Name to Vericheck even though Lahoti had no interests associated with the 'Vericheck' name.").

Accordingly, to the extent that Calista's citation to § 1125 was an "obvious clerical or typographical error," this was true <u>only</u> with respect to the subsection designation as Calista's express averment that it had, "no intent to sell the Domains to Defendant," is only consistent with Section 1125(d) and cannot be reconciled with any part of § 1114, which, as discussed, *infra*, has different legal elements.

It should be noted that not one of Calista's four counsel noted this "obvious clerical or typographical error" either during the two Rule 26 teleconferences, or at any other conference, until Calista's conferral on the instant motion.  Additionally, the Court's Order of November 19, 2013, denying Calista's Motion to Stay this action (Docket No. 37), also expressly stated, "Calista alleges four claims for relief: (1) declaratory and injunctive relief pursuant to the Anticybersquatting Consumer Protection Act, **15 U.S.C. § 1125(2)(D)(5)** . . .[emphasis added]" Order, p. 4.  Neither the Court nor Calista counsel noted this alleged discrepancy.  Finally, Calista's counsel failed to advise the Court at the hearing on June 21, 2014 of its contention that the pleading was an error, but instead simply argued against Tenza's legal theory that its failure to plead § 1114 deprived Calista of standing as a non-owner registrant.  Only after this hearing did Calista suggest, for the first time, that pleading § 1125 was an error and that Calista had in fact meant to plead § 1114.  Tenza respectfully submits that, if this supposed error was not obvious to any of the five lawyers representing Calista, nor to this Court, it was not "obvious to

Page 6 -    TENZA'S RESPONSE IN OPPOSITION TO
             CALISTA'S MOTION FOR LEAVE TO AMEND
             COMPLAINT

ECLIPSE GROUP
ATTORNEYS AT LAW
2020 Main Street    t: 949.851.5000
Suite 600           f: 949.851.5051
Irvine, CA 92614

any observer," as Calista contends.

    **B.**    **Literal Application of the Language in Calista's Pleading Will <u>Not</u> Produce a Result that is Clearly at Odds with the Intent of its Drafters**

Section 1125(d)(1)(A) provides, in pertinent part:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
>     (i)    has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
>     (ii)    registers, traffics in, or uses a domain name that—
>
>         (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark

Calista's first Count is for, "Declaratory and Injunctive Relief Pursuant to the <u>Anticybersquatting Consumer Protection Act</u> (15 U.S.C. § 1125(2)(D)(5))." [emphasis added]. Section 1125(d) of Title 15 is referred to as the Anti-cybersquatting Consumer Protection Act (hereafter, "ACPA"). *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1029 (9th Cir. 2011). Next, as noted, *supra*, 15 U.S.C. § 1125 is the specific statute that addresses domain name arbitrage; § 1114, on the other hand, does not. 15 U.S.C. 1125 (d)(1)(B) ("bad faith intent" within the meaning of the statute includes, "The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct."); *DSPT Int'l, Inc. v. Nahum,* 624 F.3d 1213, 1221 (9th Cir. 2010) (In a Section 1125 analysis, "[f]actor VI may fairly be read to mean that it is bad faith to hold a domain name for ransom, where the holder uses it to get money from the owner of the trademark rather than to sell goods.").



Finally, Calista's "Requested Relief" (Complaint, p. 18) includes a monetary award, "for damages sustained by Plaintiff as a result of Defendant's wrongful actions as alleged herein." Section 1125(d) expressly authorizes monetary damages: "A person shall be liable in a civil action by the owner of a mark . . ." 15 U.S.C. § 1125(d)(1)(A). Section 1114, on the other hand, is limited to injunctive relief: "The court may grant injunctive relief to the domain name registrant . . .." 15 U.S.C. § 1114(2)(D)(v).

Accordingly, literal application of the language in Calista's Complaint is in line with Calista's expressed objectives, but the proposed amendment, which seeks only to change the reference to § 1114, is not. Allowing Calista's proposed amendment would result in language precluding it from obtaining the damages award it has pled and confirmed it seeks at the Rule 26 conference and in discovery. Specifically, when served with an interrogatory asking Calista to "describe in detail, all damages YOU contend you have sustained from unlawful conduct YOU attribute to Tenza, including the nature of the damage, the DATE the damage was sustained, the dollar amount of the damage, and the specific conduct of Tenza that resulted in the damage.", Calista responded with four alleged bases for damages:

    l) Lost revenues that Calista would have otherwise enjoyed following Tenza's termination of Calista from the PornTube.com Webmaster Program upon discovering Calista's infringements;

    2) Legal fees and other expenses related to Tenza's request to the registrar of the Calista Infringing Sites to transfer the sites to Tenza's control following the UDRP ruling in its favor;

    3) Undermined and decreased value of Calista's Websites and domain names; and

    4) Inability to sell Calista's Websites and domain names because of the "cloud cast over them by Tenza." Tauger Decl., ¶ 7, Ex. B.

Page 8 -    TENZA'S RESPONSE IN OPPOSITION TO
            CALISTA'S MOTION FOR LEAVE TO AMEND
            COMPLAINT



Calista's claimed damages, which, obviously, are not limited to injunctive relief or attorney's fees related to this matter, are inconsistent with a claim under § 1114.  Had § 1114 been plead, Tenza could have moved against the Complaint to strike Calista's damages claim.  As pled, Tenza incurred legal fees to discover the bases of Calista's damages, and, as explained *supra*, Calista maintained it had them.

### IV.     Calista's Motion Should be Denied as it is Brought in Bad Faith and Results in Substantial Prejudice to Tenza.

"Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *United States v. Webb,* 655 F.2d 977, 980 (9th Cir. 1981) (quoting *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973)).  Both bad faith on Calista's part and prejudice to Tenza are present here.

#### A.     Calista's Bad Faith.

As Calista has repeatedly admitted, the reason it brought this action was to block the UDRP panel's order transferring its infringing domains to Tenza.  *See, e.g.,* Hearing Transcript, 11/19/2013 (Docket No. 38 ), 5:8-11 (Explaining why Calista sought to stay its own action: "The only way for us then, under the UDRP rules, to prevent the domains from being automatically transferred to Tenza is to file the present action for declaratory judgment, and we did that."). Similarly, both the tenor and tone of Calista's counsel's "Emergency Request for Court Intervention," of July 15, 2014, make it clear that Calista's present interest in amendment has nothing to do with effective litigation of the instant matter, but is, instead, directed solely to maintaining its *de facto* injunction against the UDRP panel's transfer order to which end it had sought completely improper and inappropriate "Court Intervention".

As discussed, *supra*, if Calista were to prevail on its sundry declaratory relief counts, including its § 1125 Count, it would obtain exactly what wants, i.e. the right and ability to

Page 9 -    TENZA'S RESPONSE IN OPPOSITION TO
            CALISTA'S MOTION FOR LEAVE TO AMEND
            COMPLAINT

continue using its various ***porntube.com trademarks, a declaration that it owns the domains at issue, and the ability to use the term "porntube" without interference. Accordingly, it seeks the instant amendment for what is solely an extra-judicial purpose, unrelated to this litigation, namely to prevent its ISP from transferring the domain names at issue to Tenza, as it is contractually obligated to do pursuant to the UDRP proceeding, to which Calista contractually consented.

Further evidencing Calista's improper motivation in bringing the instant motion is the fact that, if amendment is allowed, Calista will <u>lose</u> any basis for claiming monetary damages; as discussed, § 1125 allows monetary damages, but § 1114 does not. Finally, as discussed, *infra,* the different standards applied by § 1114 will make it more difficult for Calista to prove its case. Calista does not explain why it wishes to forebear monetary damages while undertaking a significantly more onerous burden of proof. It is clear, then, that Calista's interest in amending is restricted solely to its desire to retain the domains at issue for as long as possible, and not its position with regards to prosecution of its Complaint.

### B. Tenza is Substantially Prejudiced if Amendment is Allowed.

Allowing amendment at this stage in the proceeding results in substantial prejudice to Tenza in four specific ways.

#### 1. As the elements required for proof of a § 1114 and § 1125 claim are different, additional discovery would be required.

Section 1114(2)(D)(v) provides four distinct elements that must be proven:

[1] A domain name registrant

[2] whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may,

[3] upon notice to the mark owner,

Page 10 -    TENZA'S RESPONSE IN OPPOSITION TO
             CALISTA'S MOTION FOR LEAVE TO AMEND
             COMPLAINT



[4] file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.

This section requires that a registrant establish that registration or use of the domain name "is not unlawful <u>under this chapter</u>." There is a split of authorities as to whether "under this chapter" means the entire Lanham Act or only the ACPA. *See, e.g., Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 628 n.2 (4th Cir. 2003) (emphasis added) ("The ACPA actually provides that the registrant may sue to declare that the domain name's use by such registrant is 'not unlawful under this Act.' 113 Stat. 1501A–550, § 3004. **'Act' is defined to refer to the Trademark Act of 1946 (the Lanham Act)**. *Id.* Upon codification, the term 'this Act' became 'this chapter,', Chapter 22 of Title 15, which contains the Lanham Act." [emphasis added]); *Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 960 (D. Nev. 2010) ("The Court therefore concludes that to satisfy the ACPA's requirement that a domain name registrant show that its conduct was not unlawful under 'this Act,' **it must show its conduct was not unlawful under only the ACPA, not the entire Lanham Act**."[emphasis added]).

The difference is, of course, critical, as the ACPA identifies a 9 factor framework at 15 U.S.C. § 1125(d)(1)(B)(i), whereas unlawful use pursuant to the entire Lanham Act encompasses a much broader scope, including unfair competition pursuant to 15 U.S.C. § 1125(a) and registered mark infringement pursuant to 15 U.S.C. § 1117.

Moreover, § 1114 uses "registration" and "use" in the disjunctive – it is unclear whether a registrant must show only that either registration OR use is not unlawful, i.e. one or the other, or that registration AND use are not unlawful. Regardless, § 1125(d), by its plain language, addresses only use. *See*, 15 U.S.C. 1125(d)(1)(B)(i) (III)-(VI). As Tenza's contentions regarding Calista's activities have solely been in the context of how Calista <u>used</u> the domains,

Page 11 -   TENZA'S RESPONSE IN OPPOSITION TO
            CALISTA'S MOTION FOR LEAVE TO AMEND
            COMPLAINT

Tenza took no discovery into the process, motivations and mechanisms of Calista's <u>registrations</u> of each of those domains.[3]

Accordingly, should this amendment be allowed, Tenza will be required to conduct significant and onerous additional written and deposition discovery, both as to the broader Lanham Act factors incident to Calista's <u>use</u> of the domain names, as well the circumstances surrounding their registration, including all persons involved in the registration decision and process. Calista's sole employee, owner and previously-designated 30(b)(6) witness, Alexander Zhukov, was deposed in Prague in January and testified at his deposition to having dual residences--one in Hostivice, Czech Republic, and one in Ekaterinburg, Russia. Because Mr. Zhukov's primary language is Russian, Tenza brought to Prague a U.S. court-certified Russian language translator, a U.S.-certified court reporter and a U.S.-certified videographer to the deposition. Travel, alone, took two full days (plus one day to adjust to the change in time zones). Costs and fees incurred by Tenza for this deposition were substantial, and costs for an additional deposition would be similarly substantial and prohibitive. Allowing additional discovery would necessitate additional written discovery, followed by the deposition of Calista pursuant to Fed. R. Civ. P. 30(b)(6). Because of the language challenges, as well as Tenza's requirement for a video record of the deposition, a telephonic deposition would not be sufficient.

Mr. Zhukov also testified that Calista uses other ISPs besides Moniker. Accordingly, it

---

[3] Tenza was not even provided with a comprehensive list of Calista's domains until well into the litigation process and, even then, only under compulsion by the Court. Moreover, as discussed in Tenza's opposition to Calista's pending Motion for Summary Judgment, Calista now claims seventeen domains that contain Tenza's PORNTUBE trademark, rather than the 13 originally identified in the UDRP and Calista's Complaint, and the 14th identified pursuant to the Moniker subpoena and finally admitted in Calista's supplemented discovery responses. Tenza still has no knowledge of the identity of these three additional undisclosed domains, much less the circumstances of their registration and subsequent use by Calista.

Page 12 -   TENZA'S RESPONSE IN OPPOSITION TO
            CALISTA'S MOTION FOR LEAVE TO AMEND
            COMPLAINT

would be reasonable to subpoena Calista's registration records from its other ISP(s) and, possibly, necessary to depose them. Finally, as domain registration presupposes some due diligence on the part of the registrant, Tenza would likely need to retain an additional expert witness who could provide guidance to the trier-of-fact with respect to standards and procedures for domain registration.

### 2.  Tenza has Prepared its Case, Including its Pending Motion for Summary Judgment and its Opposition to Calista's Motion for Summary Judgment in Reliance on Calista's Complaint.

As discussed, *supra*, Calista's Count 1 is consistent with a § 1125 claim, and *inconsistent* with a claim predicated upon § 1114. There was no reason for Tenza to have assumed otherwise. *Weaver v. Nooth*, Civ. No. 07-1763-AC, 2011 WL 1750271 at *5 (D. Or. Mar. 23, 2011) *report and recommendation adopted*, CV 07-1763-AC, 2011 WL 1743255 (D. Or. May 5, 2011) ("Respondent had no reason to believe Petitioner was asserting anything other than the claims alleged in his Petition.")

The addition of a previously un-pled cause of action can constitute judicially-cognizable prejudice. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense."). Moreover, as the Court will recall, Tenza has, from the inception of this litigation, fought against the delays introduced by Calista, starting with its failure to serve its Complaint for two months, its attempt to stay its own lawsuit, and its improper attempt to delay its deposition which necessitated this Court's intervention, and multiple other discovery delays or refusals on Calista's part. Introducing a new legal element – the propriety of the registration of all of these domains – would require Tenza to restart discovery. This is the very definition of



prejudice given that the Court has issued a scheduling order that included a discovery and a dispositive motion cut-off, both now passed. Tenza's right to seek summary adjudication of Calista's proposed § 1114 claim has now passed, and re-setting the cut-offs will only delay resolution of this matter on the merits even further.

Undue delay is a cognizable factor in evaluating prejudice to the non-moving party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Calista argues that its substantive mistake was, "obvious to any observer," yet it is only now, more than a full year after it filed its Complaint, that it seeks to correct it. As a result of its delay, Tenza is faced with the Hobson's choice of either foregoing moving summarily against Calista's new cause of action, or delaying still further a final disposition of a matter that, if resolved in its favor, addresses conduct by Calista that, as a matter of law, resulted in irreparable harm to its intellectual property rights. This constitutes cognizable prejudice. *See, e.g., Mays v. Stobie*, 3:08-CV-552-EJL-CWD, 2010 WL 5110083 (D. Idaho Dec. 7, 2010) (quoting *Advocat v. Nexus Indus., Inc.*, 497 F. Supp. 328, 331 (D. Del. 1980)) ("As a practical matter, any delay in amending a pleading will almost invariably result in some prejudice to the nonmoving party.").

Calista must show good cause for amending its Complaint after the scheduling order deadline. *Phifer v. Sacramento City & Cnty. Hous. & Redevelopment Agency*, 418 F. App'x 603, 604 (9th Cir. 2011). "Good cause" in this context is determined in reference to Calista's diligence in seeking its amendment. *Id., citing, Johnson v. Mammoth Recreations Inc.,* 975 F.2d 604, 607–09 (9th Cir. 1992) (Rule 16(b)'s "good cause" standard applies when a plaintiff seeks to amend a complaint after the scheduling order deadline, and the primary consideration in the good cause determination is the "diligence of the party seeking the amendment"). Calista's failure to address what it contends is, "obvious to any observer," until long after the discovery



cut-off and dispositive motion cut-off clearly negates any contention of diligence and, therefore, good cause.

### 3. Allowing this amendment permits Calista to avoid the legal ramifications of seeking preliminary injunctive relief.

As noted, Calista seeks this amendment because it fears that, without it, its ISP will transfer the infringing domains to Tenza pursuant to the UDRP panel order. It is for this reason that Calista now casts its manifest mistake in pleading the wrong statute as a "scrivener's error." Absent this factual revision, and the mechanism Calista proposes to implement it, Calista would be forced to attempt to enjoin the transfer in this Court, and be subject to satisfying the legal standards for preliminary injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 (2008) (citations omitted) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Moreover, such an injunction would, as a matter of law, be required to be secured by a bond to compensate Tenza should Tenza prevail. Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1036 (9th Cir. 1994) ("[W]e join what appears to be the majority and hold there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond.")

The purpose and effect of this amendment, then, is to grant Calista an on-going *de facto* preliminary injunction without requiring that it meet the legal standards for obtaining one. Moreover, Tenza is seriously prejudiced as this injunction is unsecured in contravention of

Page 15 -   TENZA'S RESPONSE IN OPPOSITION TO
            CALISTA'S MOTION FOR LEAVE TO AMEND
            COMPLAINT

Fed. R. C. P. 65(C), not only leaving Tenza harmed, but irreparably so. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) (internal citations omitted) ("Brookfield has established a likelihood of success on the merits of its trademark infringement claim . . . . Although the district court did not address this issue, irreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim. Preliminary injunctive relief is appropriate here . . . .")

    **4.    Calista seeks this amendment for an improper purpose.**

As discussed, *supra*, Calista's motivation in seeking this amendment is irreconcilable with sworn statements and oral representations made by Calista and its counsel during the prosecution of this case and is brought so Calista can gain the extra-judicial advantage of avoiding the consequences of its contractual obligations pursuant to its agreements with Moniker, ICANN and the National Arbitration Forum under whose auspices the UDRP was conducted. In the context of Fed. R. Civ. P. 15, the proposed amendment is futile, as it has no effect whatsoever on either the relief Calista seeks or its ability to seek it – this Court can provide the injunctive relief requested by Calista pursuant to § 1125(d).

In evaluating prejudice in the context of a motion to amend, the Court may consider the extra-judicial effects of the proposed amendment. *See, e.g., Reyes-Aguilar v. Bank of Am., N.A.*, Case No. 13-cv-05764-JCS, 2014 U.S. Dist. LEXIS 86627, at *43-*45 (N.D. Cal. June 24, 2014). In *Reyes-Aguilar*, the court considered, *inter alia*, the negative, extrajudicial effect on defendant caused by allowing plaintiff to amend its complaint a third time to add new claims: "Defendants argue that [Plaintiff's attempt to amend] is a dilatory tactic that results in an undue windfall for Plaintiffs, incurs further costs of litigation, and unduly prejudices Defendants who continue to lose out on payments to the loan. . . . The Court agrees with Defendants. . . .



[G]ranting leave to amend would result in undue prejudice through continued loss in payments owed to the loan as well as additional time and costs of litigation." *Id.*

## V.  Conclusion.

Calista's proposed amendment is brought in bad faith, is futile as a matter of law and results in substantial prejudice to Tenza.  Federal courts specifically <u>disallow</u> amendment to correct erroneous statute identification in a Complaint when, as here, harm to the defendant would accrue.  *See, e.g., Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("Even citing the wrong statute needn't be a fatal mistake, **provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction**.") (emphasis added)  Here, Calista's proposed amendment results in manifest harm, as it would either compromise Tenza's ability to defend against the added allegation or result in significant delay and major discovery costs and, further, would allow Calista to improperly retain the infringing domains resulting in irreparable harm and on-going injury to Tenza.  As such, Tenza respectfully requests that Calista's Motion for Leave to Amend be denied.

Date: July 17, 2014

Respectfully submitted,

_____
Paul N. Tauger, Admitted *Pro Hac Vice*
Anna M. Vradenburgh, Admitted *Pro Hac Vice*
THE ECLIPSE GROUP LLP
Telephone: 949-851-5000 ext. 110
Facsimile: 949-851-5051

Devon Zastrow Newman, OSB #014627
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone: 503-222-9981
Facsimile: 503-796-2900
Attorneys for Defendant Tenza Trading Ltd.

Page 17 -    TENZA'S RESPONSE IN OPPOSITION TO
             CALISTA'S MOTION FOR LEAVE TO AMEND
             COMPLAINT

