**Thomas Freedman Jr.** (OSB No. 080697) thomas@prllaw.com
**Pearl Law LLC**
552 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel:     (503) 295-6296 | Fax: (503) 295-6344

**Valentin Gurvits** (*pro hac vice*) vgurvits@bostonlawgroup.com
**Matthew Shayefar** (*pro hac vice*) matt@bostonlawgroup.com
**Boston Law Group, PC**
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:     (617) 928-1800 | Fax: (617) 928-1802

**Sean Ploen** (*pro hac vice*) sploen@ploen.com
**Ploen Law Firm, PC**
100 South Fifth Street, Suite 1900
Minneapolis, Minnesota  55402
Tel:     (651) 894-6800 | Fax: (651) 894-6801

**Evan Fray-Witzer** (*pro hac vice*) evan@CFWLegal.com
**Ciampa Fray-Witzer, LLP**
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Tel:     (617) 426-0000 | Fax: (617) 507-8043

Attorneys for Plaintiff and Counter-defendant Calista Enterprises Ltd.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| **CALISTA ENTERPRISES LTD.,**<br>a Republic of Seychelles company,<br><br>   Plaintiff,<br><br>- v. -<br><br>**TENZA TRADING LTD.,**<br>a Cyprus company,<br><br>   Defendant. | Case No. 3:13-cv-01045-SI<br><br>**EXHIBIT E**<br>**TO PLAINTIFF'S FIRST AMENDED**<br>**COMPLAINT** |

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **1**
Exhibit E to Plaintiff's First
Amended Complaint

**TENZA TRADING LTD.,**
a Cyprus company,

    Counterclaim Plaintiff,

- v. -

**CALISTA ENTERPRISES LTD.,**
a Republic of Seychelles company, and
**ALEXANDER ZHUKOV,**
a Czechoslovakian citizen,

    Counterclaim Defendants.

Respectfully Submitted,
Plaintiff Calista Enterprises Ltd.
By its Attorneys,

/s/ Matthew Shayefar
Matthew Shayefar (*pro hac vice*)
Valentin Gurvits (*pro hac vice*)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:    (617) 928-1800
Fax:    (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

/s/ Sean Ploen
Sean Ploen (*pro hac vice*)
Ploen Law Firm, PC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Tel:    (651) 894-6800
Fax:    (651) 894-6801
sploen@ploen.com

Dated:  August 7, 2014

/s/ Evan Fray-Witzer
Evan Fray Witzer (*pro hac vice*)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Tel:    (617) 426-0000
Fax:    (617) 507-8043
evan@CFWLegal.com

/s/ Thomas Freedman Jr.
Thomas Freedman Jr. (OSB No. 080697)
Pearl Law LLC
552 SW 5th Avenue, Suite 1100
Portland, Oregon 97204
Tel:    (503) 295-6296
Fax:    (503) 295-6344
thomas@prllaw.com

**Val Gurvits | Matthew Shayefar | Boston Law Group, PC**
825 Beacon Street, Suite 20 | Newton Centre, MA 02459
617-928-1800 | vgurvits@bostonlawgroup.com | matt@bostonlawgroup.com

Page **2**
Exhibit E to Plaintiff's First
Amended Complaint



**NATIONAL ARBITRATION FORUM**

**DECISION**

Tenza Trading Ltd. v. Calista Enterprises Ltd.
Claim Number: FA1303001491515

## PARTIES

Complainant is **Tenza Trading Ltd.** ("Complainant"), represented by **Anna M. Vradenburgh** of **The Eclipse Group, LLP**, California, USA.  Respondent is **Calista Enterprises Ltd.** ("Respondent"), represented by **Matthew Shayefar** of **Boston Law Group, PC**, Massachusetts, USA.

## REGISTRAR AND DISPUTED DOMAIN NAMES

The domain names at issue are **<largeporntube.com>**, **<goldporntube.com>**, **<kissporntube.com>**, **<boxporntube.com>**, **<pipeporntube.com>**, **<69porntube.com>**, **<royalporntube.com>**, **<bookporntube.com>**, **<cubeporntube.com>**, **<freshporntube.com>**, **<lustporntube.com>**, **<bonusporntube.com>**, and **<directporntube.com>**, registered with **Moniker Online Services LLC.**

## PANEL

The undersigned certify that they have acted independently and impartially and to the best of their knowledge have no known conflict in serving as Panelists in this proceeding.

Hugues G. Richard, David P. Miranda, and Paul DeCicco as Panelists.

**PROCEDURAL HISTORY**

Complainant submitted a Complaint to the National Arbitration Forum electronically on March 25, 2013; the National Arbitration Forum received payment on March 25, 2013.

On March 27, 2013, Moniker Online Services LLC confirmed by e-mail to the National Arbitration Forum that the **<largeporntube.com>**, **<goldporntube.com>**, **<kissporntube.com>**, **<boxporntube.com>**, **<pipeporntube.com>**, **<69porntube.com>**, **<royalporntube.com>**, **<bookporntube.com>**, **<cubeporntube.com>**, **<freshporntube.com>**, **<lustporntube.com>**, **<bonusporntube.com>**, and **<directporntube.com>** domain names are registered with Moniker Online Services LLC and that Respondent is the current registrant of the names.  Moniker Online Services LLC has verified that Respondent is bound by the Moniker Online Services LLC registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On April 12, 2013, the Forum served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of May 2, 2013 by which Respondent could file a Response to the Complaint, via e-mail to all entities and persons listed on Respondent's registration as technical, administrative, and billing contacts, and to postmaster@largeporntube.com, postmaster@goldporntube.com, postmaster@kissporntube.com, postmaster@boxporntube.com, postmaster@pipeporntube.com, postmaster@69porntube.com, postmaster@royalporntube.com, postmaster@bookporntube.com, postmaster@cubeporntube.com, postmaster@freshporntube.com, postmaster@lustporntube.com, postmaster@bonusporntube.com, postmaster@directporntube.com.  Also on April 12, 2013, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response was transmitted to

Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

Respondent submitted a Response, which was determined to be complete on May 2, 2013.

Complainant submitted an Additional Submission, which was determined to be complete on May 7, 2013.

On May 21, 2013, pursuant to Respondent's request to have the dispute decided by a three-member Panel, the National Arbitration Forum appointed Hugues G. Richard, David P. Miranda, and Paul DeCicco as Panelists.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the National Arbitration Forum has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2.

**RELIEF SOUGHT**

Complainant requests that the domain names be transferred from Respondent to Complainant.

**PARTIES' CONTENTIONS**

A. Complainant

Policy ¶ 4(a)(i)

The Complainant holds the following trademark registrations for the PORNTUBE mark:

    i.   United States Patent and Trademark Office ("USPTO") (Reg. No. 3,936,197 filed October 29, 2008, registered March 29, 2011).

   ii.   Canadian Intellectual Property Office ("CIPO") (Reg. No. TMA779,803 filed March 19, 2009, registered October 12, 2010).

  iii.   European Union Office for Harmonization in the Internal Market ("OHIM") (Reg. No. 8,725,401 filed October 29, 2008, registered June 2, 2010).

The PORNTUBE mark was assigned to the Complainant on February 16, 2011. Prior to that, it was continuously and consistently used by EMC Ideas, Inc. from May 2005 through early 2011. The PORNTUBE mark has been used by the Complainant since the assignment.

Therefore, the Complainant states that the Respondent's domain names are confusingly similar to Complainant's PORNTUBE mark.

Policy ¶ 4(a)(ii)

The disputed domain names were registered well after the PORNTUBE mark was granted trademark rights through Complainant's (and its predecessor in title) consistent and continuous use, and after the original filing date with the USPTO in 2008. Complainant registered the <porntube.com> domain name in 2004.

The Respondent is not commonly known by any of the disputed domain names. Respondent operates via an affiliate program through Complainant's business, and improperly registered the disputed domain names using Complainant's mark

without Complainant's permission. Respondent cannot demonstrate any legitimate noncommercial or fair use of the domain names. The resolving website offers listings of third party hyperlinks directing to adult entertainment services, of which Complainant was unaware.

Policy ¶ 4(a)(iii)

The Complainant asserts that the Respondent uses the disputed domain name strictly for commercial gain with the intent to divert consumers, since the Respondent was registered with Complainant's affiliate marketing program. From this, the Complainant argues that the Respondent attempts to link Internet users to different websites that feature services substantially similar or identical to Complainant's services under the PORNTUBE mark, and features links to unrelated adult websites throughout the Internet.

In any event, the Complainant states that the Respondent was well-aware of Complainant's rights in the PORNTUBE trademark, yet intentionally registered thirteen domain names using the PORNTUBE mark.

B. Respondent

Policy ¶ 4(a)(i):

The Respondent asserts that the Complainant's PORNTUBE mark consists of generic and descriptive designations for websites offering streaming adult-themed video content. To this extent, the Respondent has filed a petition for cancellation of the registration with the USPTO. The Respondent states that its domain names are not confusingly similar to Complainant's mark.

Moreover, the Respondent relies on the Complainant's agreement with the owner of the PORNOTUBE trademark where it was agreed that there would be no confusion between the marks PORNTUBE and PORNOTUBE. If there is no confusion between the trademarks subject to that agreement, the Respondent argues that the disputed domain names achieve the same result.

Policy ¶ 4(a)(ii):

Prior to the current dispute, Respondent operated websites that drove traffic to third party "porn tubes," including to Complainant's website through an affiliate marketing program. The Respondent explains that the Complainant's own explicit invitation compelled Respondent to join Complainant's affiliate program, and Respondent was responsible for more than 8% of the traffic visiting Complainant's website through the affiliate program. The Respondent states that this constitutes a *bona fide* offering of services.

Policy ¶ 4(a)(iii):

The Respondent asserts that it does not engage in bad faith by forwarding users to other porn tube websites. The website to which the disputed domain name redirects belongs to Complainant, and even if it did not, the use would not demonstrate an illegitimate service.

Moreover, the Respondent states that it does not disrupt Complainant's business by its use of the disputed domain names and is not a direct competitor of Complainant. Respondent does commercially benefit from its relationship with Complainant, although not as a result of consumer confusion.

Reverse Domain Name Hijacking:

Complainant engages in Reverse Domain Name Hijacking, as it cannot satisfy a single factor under the Policy.

C. Additional Submissions

Complainant

Complainant has established its rights in the PORNTUBE mark through trademark registrations in three different jurisdictions, and Respondent's petition to cancel the registration does not negate Complainant's rights. Complainant's PORNTUBE mark is inherently distinctive.

Therefore, the disputed domain names are confusingly similar to Complainant's mark, which Respondent admits in its Response.

The Complainant asserts that the Respondent is not known by any of the disputed domain names. The Complainant was not aware of the list of domain names that Respondent owned. The Complainant states that it did not own the PORNTUBE trademark prior to February of 2011, therefore any discussion between the operator of the <porntube.com> mark and Respondent is irrelevant.

With regard to the allegation of reverse domain name hijacking, the Complainant states that the Respondent's reverse hijacking claim was brought in bad faith, as Complainant owns three registered trademarks for the PORNTUBE mark.

The Complainant also provides that the Petition for Cancellation taken by the Respondent should not be determinative for the issues of the current proceedings.

Respondent

The Respondent reinforces its argument as to the fact that the Complainant knew of, fostered, encouraged, rewarded and profited from the Respondent's use of the disputed domain names for years.

The Respondent also argues that the Complainant's claim is barred by the doctrine of laches. In this regard, the Respondent emphasizes that this argument should not be mistaken as an admission that the Respondent has engaged in any wrongdoing.

The Respondent then purports to provide a point form list of contentions against the issues raised by the Complainant's additional submissions.

## FINDINGS BY THE MAJORITY OF THE PANEL

The Complainant Tenza Trading Ltd owns and operates an adult entertainment website under the domain name <www.porntube.com>. The Respondent owns and operates the thirteen (13) domain names at issue in the matter at bar.

Complainant uses the PORNTUBE mark to provide entertainment services, including adult entertainment in the form of photographs, videos, film clips, and other multimedia materials. Complainant (or its predecessor in title) first used its mark in interstate commerce in May of 2005, when its predecessor in interest marketed and advertised the services under the mark, and since that time Complainant's marketing efforts have resulted in worldwide sales of services using the PORNTUBE mark.

Complainant's website at its <porntube.com> domain name gets approximately 1.8 million unique visitors per day, and prior to its filing date, Complainant's commissions on sales were more than $2.7 million. One year later, in 2009,

Complainant's commissions on sales exceeded $5 million, and the number of unique visitors to its website nearly doubled.

Complainant's services under the PORNTUBE mark were well-known and well accessed by consumers.

The Complainant operates an affiliate marketing program in association with its trademark and websites, wherein affiliates earn money for traffic directed to the <porntube.com> website. Complainant pays webmasters approximately $80,000 per month, resulting to about 47 million visitors per month. Complainant has paid Respondent in excess of $132,140 over a period of 20 months for its services through the affiliate program.

For the reasons set out below, the majority of Panel (Hugues G. Richard and David P. Miranda) is of the opinion that the disputed domain names should be transferred in favor of the Complainant.

## DISCUSSION BY THE MAJORITY OF THE PANEL

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(2) Respondent has no rights or legitimate interests in respect of the domain name; and

(3) the domain name has been registered and is being used in bad faith.

### Identical and/or Confusingly Similar

As provided for above, the Complainant owns numerous trademarks in multiple jurisdictions with regard to the PORNTUBE mark (U.S. Registration No. 3,936,197; Canadian Registration No. TMA 779,803; Community Trademark Registration No. 008,725,401). From the evidence, it is also clear that the Complainant has established common law right with regard to the PORNTUBE mark.

The Respondent has filed a Petition for Cancellation (*Calista Enters., Ltd v. Tenza Trading Ltd.*, cancellation proceeding no. 92057048 (TTAB Apr. 10, 2013). The Respondent also intends to pursue similar proceedings with regard to the Complainant's other trademark registrations of the PORNTUBE mark. Having regard to that Petition, the majority of the Panel notes that it has the discretion pursuant to Paragraph 18(a) of the *Rules for Uniform Domain Name Dispute Resolution Policy* to suspend or terminate the present proceeding, or proceed to a decision.

In consideration of the Complainant's rights in the PORNTUBE mark, the majority of the Panel will proceed to a decision.  While acknowledging the Respondent's Petition for cancellation of the U.S. Registration, the majority of the Panel notes that the U.S. Registration is on the principal Register; this is at the least an indication that the USPTO, at the time of registration, did not consider the PORNTUBE mark to be descriptive. Moreover, the trademark registrations in Canada and Europe, where similar legislation with regard to descriptiveness exists, are deemed valid. Even if the U.S. Petition for Cancellation was to be successful, this would not affect the validity of the Canadian and Community registrations. Furthermore, that Petition does not dismiss the Complainant's

established common law rights in the PORNTUBE mark, acquired through use since at least 2005. In any event, complainant's numerous trademark registrations were held to be sufficient to demonstrate Complainant's rights under the Policy. See *Honeywell Int'l Inc. v. r9.net*, FA 445594 (Nat. Arb. Forum May 23, 2005).

The majority of the Panel finds that the disputed domains names are confusingly similar to the Complainant's trademark. The PORNTUBE mark is readily apparent in the disputed domain names. The addition of an ordinary descriptive term does not detract from the overall impression of the use of the PORNTUBE mark in the disputed domain names. *See Sony Kabushiki Kaisha v. Inja, Kil*, D2000-1409 (WIPO Dec. 9, 2000) (finding that "[n]either the addition of an ordinary descriptive word . . . nor the suffix '.com' detract from the overall impression of the dominant part of the name in each case, namely the trademark SONY" and thus Policy ¶ 4(a)(i) is satisfied); *see also Am. Online Inc. v. Chinese ICQ Network*, D2000-0808 (WIPO Aug. 31, 2000) (finding that the addition of the numeral 4 in the domain name <4icq.com> does nothing to deflect the impact on the viewer of the mark ICQ and is therefore confusingly similar). Therefore, Policy ¶ 4(a)(i) is met in favor of the Complainant.

## Rights or Legitimate Interests

The majority of the Panel finds that the Complainant has made a *prima facie* case that the Respondent lacks rights and legitimate interest in the disputed domain names under Policy ¶ 4(a)(ii). The burden now shifts to the Respondent to show it does have rights or legitimate interest in the domain names. *See Hanna-Barbera Prods., Inc. v. Entm't Commentaries*, FA 741828 (Nat. Arb. Forum Aug. 18, 2006).

In consideration of the evidence, the majority of the Panel holds that the Respondent has not met that burden. The majority of the Panel notes in view of the evidence that the Respondent's domain names' sole purpose is to re-direct Internet users to commercial websites under an affiliate program. The use of domain names to direct Internet users to a commercial website (including the Complainant's) under an affiliate program is not a *bona fide* offering of goods or services under Policy ¶ 4(c)(i) or a legitimate noncommercial or fair use under Policy ¶ 4(c)(iii). *See Target Brands, Inc. v. Bealo Group S.A.*, FA 128684 (Nat. Arb. Forum Dec. 17, 2002); *see also AltaVista v. Krotov*, D2000-1091 (WIPO Oct. 25, 2000) (finding that use of the domain name to direct users to other, unconnected websites does not constitute a legitimate interest in the domain name).

Furthermore, it is difficult to find a *bona fide* offering when the Respondent uses without permission a domain name confusingly similar to a competitor's mark. *See L.F.P. Inc. v. Hustlertv.com*, FA104134 (Nat. Arb. Forum, March 11, 2002), *citing Am. Online, Inc. v. Fu*, D2000-1374 (WIPO Dec. 11, 2000) (finding that "[i]t would be unconscionable to find a *bona fide* offering of services in a respondent's operation of web-site using a domain name which is confusingly similar to complainant's mark and for the same business.").

Therefore, the majority of the Panel holds in favor of the Complainant with regard to Policy ¶ 4(a)(ii).

## Registration and Use in Bad Faith

The majority of the Panel finds that Policy ¶4(a)(iii) is also met in favor of the Complainant. The Respondent's registration and use of the disputed domain names are in bad faith for two reasons.

The majority of the Panel holds that the Respondent registered the disputed domain names in bad faith under Policy ¶ 4(a)(iii) as shown by its actual knowledge of the Complainant's rights in the PORNTUBE mark. The evidence reveals that the Respondent was aware of the Complainant's use of the PORNTUBE mark. *See Yahoo! Inc. v. Butler*, FA 744444 (Nat. Arb. Forum Aug. 17, 2006) (finding bad faith where the respondent was "well-aware of the complainant's YAHOO! mark at the time of registration).

Moreover, the Respondent uses the disputed domain names to confuse consumers and to attract Internet traffic to its website, in order to receive commercial profit from third parties whose websites are linked to the Respondent's domain names. This demonstrates bad faith. The fact that the Complainant's website is among those third party websites is irrelevant as to the present inquiry.

Therefore, the majority of the Panel holds in favor of the Complainant under Policy ¶ 4(a) (iii).

**Reverse Domain Name Hijacking**

Having found that the Complainant has satisfied Policy ¶ 4(a)(i), the majority of the Panel holds that the Complainant has not engaged in reverse domain name hijacking. *See World Wrestling Fed'n Entm't, Inc. v. Ringside Collectibles*, D2000-1306 (WIPO Jan. 24, 2001) ("Because Complainant has satisfied [all of] the elements of the Policy, Respondent's allegation of reverse domain name hijacking must fail"); see also Gallup, Inc. v. PC+s.p.r.l., FA 190461 (Nat. Arb. Forum Dec. 2, 2003) (finding no reverse domain name hijacking where complainant prevailed on the "identical/confusingly similar" prong of the Policy).

## DISSENTING OPINION

I respectfully dissent and would suspend the proceeding pursuant to paragraph 18(a) of the Rules.  That Rule states:

> (a) In the event of any legal proceedings initiated prior to or during an administrative proceeding in respect of a domain-name dispute that is the subject of the complaint, the Panel shall have the discretion to decide whether to suspend or terminate the administrative proceeding, or to proceed to a decision.

Earlier this year the panel in *CRM Info Tech, LLC, d/b/a CRMIT.COM v. c/o CRMIT.COM; c/o CRMPLUSPLUS.COM* considered the applicability of Rule 18(a) and surveyed several decisions where UDRP panels deferred to ongoing extra-UDRP litigation in lieu of their reaching a decision on the merits. The list of cases is recounted below:

> *Salba Corp. N.A. v. X Factor Holdings*, FA 1443427 (Nat. Arb. Forum June 25, 2012) (holding that a UDRP arbitration should not proceed where there is pending litigation involving the same issues and requesting similar relief);

> *Your Baby Can, LLC v. Edmonds*, FA 1439429 (Nat. Arb. Forum May 29, 2012) (dismissing the complaint based on concurrent court proceedings that the complainant filed against the respondent that directly relates to the relationship between the parties);

> *The Gap, Inc. v. G.A.P Adventures Inc.*, FA 1419226 (Nat. Arb. Forum Feb. 13, 2012) (refusing to make a decision on the merits of the dispute under the UDRP when litigation involving the parties' various claims to trademark rights was active and relating to how those rights might affect, among other more significant issues, ownership of the disputed domain name);

*Bluemile, Inc. v. McCockin*, FA 1411110  (Nat. Arb. Forum Nov. 28, 2011) (finding that it was appropriate to have the issue be revisited and resolved within the court system where there was ongoing litigation in the U.S. District Court in Ohio relating to the disputed domain name where, despite the respondent not being a named defendant in the case, the complainant alleged that a representative of the defendant transferred the disputed domain name to the respondent in an attempt to circumvent the court order); and

*Acumen Enters., Inc v. Morgan*, FA 1381503 (Nat. Arb. Forum May 17, 2011) (finding that the dispute should be dismissed given that the complainant had filed a lawsuit in the U.S. District Court for the Northern District of Texas requesting the same relief requested of the Panel, and where the Panel noted that the relief of transfer of the domain name sought before the U.S. Court was essentially the same as the relief sought in the UDRP proceeding).

*CRM Info Tech, LLC, d/b/a CRMIT.COM v. c/o CRMIT.COM; c/o CRMPLUSPLUS.COM*, FA 1472279 (Nat. Arb. Forum January 16, 2013)

These cases and others, including *CRM Info Tech* itself, instruct that when during the pendency of a UDRP proceeding there is ongoing litigation that considers an essential UDRP issue, the UDRP case should be suspended or terminated.

About the time Complainant filed its Complaint with the National Arbitration Forum, Respondent filed its Petition for Cancellation with the Trademark Trial and Appeal Board ("TTAB") regarding Complainant's USPTO registration for PORNTUBE. *See Calista Enters., Ltd. v. Tenza Trading Ltd., cancellation proceeding No. 92057048* (TTAB Apr. 10, 2013). Respondent's Petition, as well as its UDRP papers, set out several arguments which support the position that

Complainant lacks trademark rights in the PORNTUBE mark because such mark is wholly generic or descriptive, despite the mark also being registered with several registries outside the United States. Respondent's contentions seem genuine, are reasonable and there is no indication that Respondent filed its Petition merely to delay the instant proceeding. Importantly, whether or not Complainant has rights in the PORNTUBE mark is a crucial consideration in deciding the case now before the Panel.

I do not argue with the Majority regarding their finding that Complainant's various trademark registrations are sufficient to support a conclusion that Complainant has rights in a mark for the purposes of the Policy ¶4(a)(i), and  would still not argue even if the PORNTUBE mark was not registered with the USPTO, since the mark is also registered elsewhere around the world.  However, the fundamental issue of whether or not Complainant's mark is generic or descriptive, which is now squarely before the TTAB, is critical to the Panel's inquiry regarding Respondent's rights or interests under Policy ¶4(a)(ii) and also to its inquiry regarding Respondent's bad faith under Policy ¶4(a)(iii). If Complainant's mark is generic or descriptive and has no secondary meaning, then the mark cannot be trademarked.  If PORNTUBE is not and never was a trademark, then Respondent cannot be acting in bad faith since Respondent could not have contemplated Complainant's non-existent trademark right when registering the at-issue domain name. Likewise, if the mark is generic or descriptive and has no secondary meaning; Complainant may not have priority rights as to the registration of a domain name containing what, under U.S. law would amount to merely descriptive terms. There may also be important implications from the TTAB's future findings regarding the applicability of one or more of the Policy ¶ 4(c) factors to respondent's claim of rights or interests in respect of the domain name.

Would the Majority's decision be the same if prior to the commencement of the instant UDRP action the TTAB had cancelled Complainant's USPTO registration for PORNTUBE, finding the mark to be generic and descriptive and without secondary meaning? Unless the answer to this question is an unequivocal "yes," which I believe it is not, I submit that any decision on merits by the Panel should at least be deferred until the TTAB weighs in. For the reasons stated above I would suspend the proceeding accordingly.

## DECISION OF THE MAJORITY OF THE PANEL

Having established all three elements required under the ICANN Policy, the majority of the Panel concludes that relief shall be **GRANTED**.

Accordingly, it is ordered that the **<largeporntube.com>**, **<goldporntube.com>**, **<kissporntube.com>**, **<boxporntube.com>**, **<pipeporntube.com>**, **<69porntube.com>**, **<royalporntube.com>**, **<bookporntube.com>**, **<cubeporntube.com>**, **<freshporntube.com>**, **<lustporntube.com>**, **<bonusporntube.com>**, and **<directporntube.com>** domain names be **TRANSFERRED** from Respondent to Complainant.

_____
Hugues G. Richard, Esq.
Arbitrator


Hugues G. Richard,

Presiding Panelist


David P. Miranda, Esq.
Arbitrator

David P. Miranda

Panelist

_____

Paul Michael  DeCicco, Esq.
Arbitrator

Dissenting, Paul DeCicco

Panelist

Dated: June 6, 2013